IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELENA DEL CAMPO, MIRIAM CAMPOS, LISA JOHNSTON and ASHORINA MEDINA<br><br>Plaintiffs,<br><br>v.<br><br>GEORGE KENNEDY, AMERICAN CORRECTIVE COUNSELING SERVICES, INC., DON R. MEALING, BRUCE D. RAYE, LYNN R. HANSEY aka R.D. DAVIS,<br><br>Defendants. | No. C-01-21151 JW (PVT)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MEALING'S MOTION TO COMPEL RESPONSES TO INTERROGATORY AND DOCUMENT REQUESTS** |

**I.    INTRODUCTION**

On December 11, 2001, Plaintiff Elena Del Campo filed a complaint alleging, *inter alia,* violations of the Fair Debt Collection Practices Ac, 15 U.S.C. §1692 *et seq.* ("FDCPA").[1] The case was stayed from October 8, 2002 through September 15, 2005 based on a potential global class settlement. The stay was lifted when the settlement was disapproved. On February 1, 2006, the Del Campo lawsuit was consolidated with *Medina v. Mealing*, C-03-2611, brought by Plaintiffs Miriam Campos, Lisa Johnston and Ashorina Medina. On May 1, 2006, Plaintiffs filed a Consolidated

---

[1] The holding of this court is limited to the facts and particular circumstances underlying the present motion.

1  Complaint. Defendant George Kennedy is the District Attorney of Santa Clara County. Defendant
2  American Corrective Counseling Services, Inc. ("ACCS") is a private company that operates a Bad
3  Check Restitution Program under contracts with district attorneys in California. The program is
4  designed to return lost monies to the victim and provide rehabilitation for the offender. Defendant
5  Don Mealing (for purposes of this motion "Defendant") is the founder and former CEO and
6  President of ACCS. Plaintiffs allege that ACCS unlawfully threatens to prosecute program
7  participants and attempts to collect fees not allowed under the statute.

8  Defendant's Motion to Compel information about, and production of, Plaintiffs' bank
9  records for the past ten years is currently before the court. By Order dated November 14, 2006, the
10 Court vacated the hearing date for this motion, finding it suitable for determination without oral
11 argument. For the following reasons, the motion is granted in part and denied in part as described
12 herein.

## II.   DISCUSSION

Specifically at issue are: 1) a single interrogatory seeking the account number and other information about all checking accounts Plaintiff has held for the past 10 years; and 2) three document requests seeking, for the last 10 years: a) all bank records; b) all Bank statements; and c) all documents relating to bad checks. (Reese Decl. Exhs. A, B.) Defendant claims the documents are relevant to show the notice Plaintiffs received prior to being placed in the diversion program and that Plaintiffs' histories of writing bad checks are relevant to show whether the checks were written with intent to defraud. Plaintiffs object to the discovery on the grounds that it violates their right to privacy by seeking financial information not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs also object that ten years is overbroad.

### A.   Relevance

Discovery is relevant if it "appears reasonably calculated to lead to the discovery of admissible evidence" relating to the claims or defenses of any party. Fed. R. Civ. P. 26(b)(1). "Relevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998). Under the liberal discovery principles of the Federal Rules, those opposing discovery are required to carry a heavy burden of showing why discovery should be denied.

2

1 *Blankenship v. Hearst Corp.*, 519 F. 2d 418 (9th Cir. 1975); *Gray v. First Winthrop Corp.*, 133
2 F.R.D. 39 (N.D. Cal. 1990).

3 In their Opposition, Plaintiffs point out many issues to which Plaintiff's bank records are not
4 relevant. Defendant, however, need only assert a single claim or defense to which the records are
5 relevant. Defendant asserts three defenses to which the records are potentially relevant.

6 Defendant first asserts that Plaintiffs' check writing habits are relevant to refute the
7 allegations in the complaint that ACCS falsely represented that Plaintiffs had committed a crime and
8 falsely stated that they could be prosecuted. Defendant argues that if Plaintiffs have histories of
9 writing bad checks, it is relevant to show the intent to defraud necessary to commit the crime.
10 Additionally, a history of bounced checks could support the statement that a bad check writer could
11 be prosecuted. Plaintiffs argue that later acquired evidence of intent is irrelevant because the
12 violation of the FDCPA is judged based on the knowledge the debt collector has at the time the letter
13 was sent. Plaintiffs cite *Gradisher v. Check Enforcement Unit*, 201 F.Supp.2d 907, 917 (W.D Mich.
14 2002.) While Plaintiff is free to argue that any later acquired evidence should be excluded, their
15 expectation of winning that argument is not sufficient to defeat Defendant's broad rights to
16 discovery.[2]

17 Defendant also argues that the bank records are relevant to show whether Plaintiff received
18 notice of the bad check and the amount of time Plaintiff had to make good on the debt before being
19 contacted by ACCS. This is relevant to Plaintiff's argument that ACCS deprived her of property
20 (the course fees) without due process and sufficient notice.

21 Finally, Defendant also argues the records are relevant to the defense that the Bad Check
22 Restitution Program should be exempt from the FDCPA. Defendant argues that if Plaintiffs were
23 recidivist bad check writers prior to entrance in the program, then they are appropriate subjects for
24 the program. Similarly, if Plaintiffs did not write any bad checks after the program, it would be
25 evidence that the program is effective. Accordingly, evidence of recidivism could support

---

27 [2]The Court expresses no opinion as to the ultimate admissibility of later acquired evidence of Plaintiffs' check writing habits. The court merely notes that Defendants claims the evidence is relevant
28 and Plaintiffs dispute that claim.

3

1 Defendant's argument that the Bad Check Restitution Program ought, as a public policy matter, to be
2 exempt from the FDCPA.

3 Because the discovery sought is reasonably calculated to lead to the discovery of admissible
4 evidence  relating to Defendant's defenses to this litigation, it is relevant.

**B.     Privacy**

6 Plaintiffs object to the discovery, claiming it violated their privacy.  Federal courts
7 adjudicating federal questions apply Federal common law, as opposed to state privilege, to resolve
8 evidentiary questions.  *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 190 (C.D. Cal.
9 2006).  State privileges are not applied, even when state and federal claims are presented together.
10 *Id., citing Religious Tech. Ctr. v. Wollersheim,* 971 F.2d 364, 367 n. 10 (9th Cir. 1992).  Although
11 there is no federal common law privilege akin to the right of privacy,  federal courts generally treat
12 financial information as private.  *Charles O. Bradley Trust v. Zenith Capital LLC*, 2006 WL 798991
13 (N.D. Cal. Mar 24, 2006); *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995) ("Federal
14 courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to
15 discovery requests.").  However, given that this lawsuit is about bad checks, any privacy concern is
16 outweighed.  Moreover, any  intrusion can be limited by production under strict orders not to
17 disclose the information to anyone or use the information as necessary to defend this lawsuit.  *See A.*
18 *Farber and Partners, Inc.*, 234 F.R.D. at 191.

**C.     Breadth**

20 Defendant seeks bank records from July 1996 to the present.  Plaintiffs challenge the
21 relevance of the ten years worth of bank records for a case that involves checks written between
22 2001 and 2003.  Defendant asserts that the 5 years before and the 3 years after are relevant to show
23 Plaintiffs' habits and to show whether the program is effective and therefore should be exempt from
24 the FDCPA.

25 Ten years is overbroad.  Defendant's interest in showing an intent to defraud can be met with
26 a single year prior to the lawsuit date.  Similarly, a lack of recidivism can be shown with the two
27 years after the relevant time period.  This time frame balances the Defendant's need for information
28 with the Plaintiffs' right to privacy by protecting their current banking information.  Accordingly,

4

1   the motion is granted as to records from 2000 through the end of 2005.[3]

### D.  Waiver of Objections to Requests for Production of Documents

Defendant asserts that Plaintiffs' failure to either provide documents or objections in a timely manner waived their right to make any objections to the document requests.  The document requests were served on July 25, 2006, making responses due August 28, 2006.  Fed. R. Civ. P. 34(b) (responses due 30 days plus 3 days for mail.)  Plaintiffs did not serve any response until August 30, 2006.  Plaintiffs claim the delay was due to a calendaring error.  As Defendant asserts,  this is not good cause to for relief from the waiver of all objections.  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 73 (9th Cir. 1992.)   Accordingly, even though there is no showing of prejudice from the two day delay,  Plaintiffs have waived all objections .

Nonetheless, a court always has discretion to limit discovery if the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii). In this case, the overbreadth of the time frame makes the burden of responding to the discovery greater than its likely benefit.  The burden of producing any records from the start of 2000 to the end of 2005 is not greater than the likely benefit.

## III.  CONCLUSION

For the foregoing reasons, It Is Hereby Ordered that:

1.  Defendant's Motion to Compel Discovery is granted in part as to the time period from the start of 2000 to the end of 2005;

2.  The Motion to Compel Discovery is denied in part as to information or records from before 2000 and after 2005;

3.  Absent specific Court Order, Defendants are precluded from disclosing  the interrogatory responses or contents of documents produced for any purpose other

---

[3] After Defendant receives the bank records from 2000 to 2005, upon a showing of good cause, Defendant can move for bank records covering a greater time period.  Defendant is cautioned, however, that a specific showing of good cause will be necessary to further invade Plaintiffs' privacy.

5

than to defend this lawsuit;

4. The parties shall meet and confer to agree upon a protective order to govern all confidential documents produced in this litigation. The parties are referred to the Sample Stipulated Protective Order available at www.cand.uscourts.gov; and

5. Plaintiffs shall respond to the interrogatory and document requests, as described within this order, no later than December 8, 2006.

IT IS SO ORDERED.

Dated: November 17, 2006

*Patricia V. Trumbull*

PATRICIA V. TRUMBULL
United States Magistrate Judge