IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELENA DEL CAMPO ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN CORRECTIVE COUNSELING SERVICES, INC. ET AL., <br><br> Defendants. | No. C-01-21151 JW (PVT) <br><br> **ORDER GRANTING APPLICATION FOR ORDER TO SHOW CAUSE; CERTIFYING FACTS TO DISTRICT COURT AND REQUIRING PLAINTIFFS' COUNSEL TO APPEAR BEFORE JUDGE WARE** |

I. **INTRODUCTION AND FACTUAL BACKGROUND**

On May 15, 2007, the court held a hearing on Defendant American Corrective Counseling Services' Application for an Order to Show Cause Regarding Contempt for Plaintiff's alleged use of confidential documents in another litigation.[1]  For the following reasons, the Application is Granted.

**A.    The Litigation**

Plaintiffs assert in this class action complaint that private entity Defendant American Corrective Counseling Services ("ACCS"), violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") by operating a Bad Check Restitution Program in connection with the District Attorney. Plaintiffs allege that ACCS unlawfully threatens to prosecute program participants and attempts to collect fees not allowed under the statute. ACCS was the umbrella corporation for allegedly independent companies: ACCS Administration Inc. ("Admin"), Fulfillment

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

Unlimited, Inc. ("FUI"), and Fundamental Performance Strategies ("FPS").  Admin provided all of the staff for ACCS and FUI.  FUI printed and mailed the form letters sent by ACCS in the restitution program.  FPS provided consulting services to Admin and FUI and was a partnership of two one-man corporations, one belonging to Defendant Mealing (former CEO and President of ACCS), and one to Defendant Lynn Hasney (former Vice President of ACCS, and President of Admin).  In November of 2004, ACCS was sold and the other companies became inactive.

### B. The Protective Order

The parties negotiated for several weeks about the terms of the protective order governing the use of confidential information.  (Irving Decl. ¶ 3.)  Defense counsel insisted on a provision limiting the use of confidential materials to the present litigation.  (*Id.*)  Indeed, this provision was a "key sticking point" in the negotiations.  (Jenkins Letter, Irving Decl. Exh. D.)  In December of 2006 the parties stipulated to the Northern District's Model Stipulated Protective Order.  The court entered the stipulated protective order on January 3, 2007.  The order provides, in relevant part:

> 7.1   Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.

(Stipulated Protective Order, Docket # 290.)

### C. The Motion to Dispute Confidentiality Designations

On February 5, 2007, Plaintiffs filed a Motion to Dispute Confidentiality Designation of Documents.  The documents in question were:

1) agreements between Defendants revealing cost and scope of work performed;

2) employment agreements of Defendant Lynn Hasney and Paul Fischer, former CEO of ACCS; and

3) Weekly Mailing Reports, detailing the number and type of form letters mailed by county.

### D. The Motion to Shorten Time

On February 5, 2007, Plaintiffs also filed a Motion to Shorten Time for the Motion to Dispute Confidentiality.  Plaintiff based the motion to shorten time on the need for different

plaintiffs, represented by the same counsel, to use the documents in connection with cross-motions for summary judgment in *Hamilton v. American Corrective Counseling Services, Inc. et. al.*, a case pending in the Northern District of Indiana (the "Hamilton Case"). On February 9, 2007, this court denied the motion to shorten time, finding that Plaintiffs had only asserted harm to different plaintiffs in a different suit pending in a different court. The court found that the Hamilton Plaintiffs needed to seek relief from the Hamilton Court to get documents to use in connection with the Hamilton action.

### E. Alleged Violation of the Protective Order

On February 8, 2007, while the motion to shorten time was still pending,[2] the Hamilton Plaintiffs served an opposition to the Hamilton Defendants' motion for summary judgment that attached, and referred to, the documents sought to be de-designated in this court.[3] (Irving Decl. ¶ 11, Exh. I.) The opposition was served upon Lucetta Pope, Esq, counsel for ACCS in the Hamilton Litigation. Ms. Pope does not represent any party in the Del Campo litigation and is not among the categories of persons to whom disclosure is permitted under the protective order. (Irving Decl. ISO Opp. to Motion to De-designate ¶ 4 and Irving Decl. Exhs. M, N.)

On February 17, 2007, counsel for the Hamilton Plaintiffs, Mr. O. Randolph Bragg (also counsel in this case), served a subpoena on his co-counsel in both cases, Mr. Arons. Defendants moved to quash the subpoena in the Hamilton Court, arguing that the subpoena was improper because the discovery cut-off had passed and because Plaintiffs were violating this Court's Protective Order. Magistrate Judge Nuechterlein granted the motion to quash, finding that the discovery was improper and that it did not have to reach the question of whether the Protective Order in this case was violated. Judge Nuechterlein noted:

> the facts surrounding this particular subpoena suggests it was a clever attempt to circumvent this Court's clearly established deadlines. One of plaintiff's counsel subpoenaed documents in the possession of another one of plaintiffs' counsel. Oddly,

---

[2]The Civil Local Rules provide a party three court days in which to oppose a motion to shorten time. Civ. L.R. 6-3(c).

[3]Under the Indiana federal court rules, papers are served until briefing is complete and then the moving party files all the papers together.

3

> the subpoenaed party, Paul Arons, appeared telephonically at the hearing to defend the validity of the subpoena. While the documents may indeed be helpful to establishing the existence of a material fact, this Court cannot allow this clever and blatant abuse of the Federal Rules of Civil Procedure simply to run around this Court's clearly established deadline.

Irving Decl., Ex. A at 3. The Hamilton Plaintiffs objected to the order quashing the subpoena and the court stayed the filing of the cross-motions for summary judgment pending the resolution of that objection. (Arons Supp. Decl. ¶ 4.) On April 13, 2007, the District Court Judge Miller overruled the objection to the Magistrate Judge's Order quashing the subpoena. (Reply Exh. Q.)

### F.    Ruling on Motion to De-Designate

On March 22, 2007, this court ruled on the motion to de-designate, finding some of the documents not confidential, and some partially confidential. Specifically, the March 22, 2007 Order: 1) granted the motion to de-designate as to the Agreements Between Defendants Revealing Cost and Scope of Work Performed; 2) granted the motion in part as to the employment agreements between Admin and Defendants Lynn Hasney and Paul Fischer, finding only the salary and benefit information was confidential; and 3) denied the motion as to the weekly mailing reports FUI produced to ACCS of how many form letters it mailed each week.

## II.    LEGAL STANDARDS

### A.    Legal Standards for Contempt

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993). Criminal contempts are designed to punish and to vindicate the authority of the court; civil contempt sanctions are designed to either compel future compliance with a court order or to compensate the injured party for losses sustained. *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827-29 (1994). In this case, Defendants are seeking compensation for the money spent to quash the subpoena and bring this contempt motion. Plaintiff's disregard of court orders, however, also raises the issues of punishing Plaintiffs and vindicating the power of the court. Accordingly, both civil and criminal contempt are potentially available. The analysis of what process was due turns upon whether the contempt was criminal or civil in nature.

4

Criminal contempt is a crime and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires. *Bagwell*, 512 U.S. at 826, *citing Cooke v. United States*, 267 U.S. 517, 537 (1925) (rights to notice of charges, assistance of counsel, summary process, and to present a defense); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911) (privilege against self-incrimination, right to proof beyond a reasonable doubt). For "serious" criminal contempts involving imprisonment of more than six months, these protections include the right to jury trial. *Id.* at 826-27. In contrast, civil contempt can be found upon normal notice and, although favored, an evidentiary hearing is not required.

The Ninth Circuit held that contempt is not appropriate if the action "appears to be based on a good faith and reasonable interpretation of the [court's order]." *In re Dual Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993) (citation omitted). The court also held that "substantial compliance" with the court order is a defense to civil contempt, and is not vitiated by "a few technical violations" where every reasonable effort has been made to comply. *Id.*

**B.  Procedure for Magistrate Judge in Contempt Proceedings**

Magistrate Judges's contempt authority is spelled out in 28 U.S.C. § 636(e)(6). Absent action in the presence of the Magistrate Judge, in a civil consent action, or a criminal misdemeanor case, a Magistrate Judge must certify contempt to the district court. The statute provides:

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6).

**III.  DISCUSSION**

Plaintiffs justify their use of the confidential documents, claiming: 1) substantial compliance; 2) a good faith effort to comply; and 3) the use of the documents was merely a technical violation causing no harm.

//

5

### 1. Substantial Compliance

Plaintiffs first argue that "there is no longer any issue as to" the documents that were de-designated after Plaintiffs used them. Plaintiffs are mistaken in their assertion that later de-designation of documents retroactively excuses the improper use of the documents while still designated as confidential. As Defendants point out, one of the primary purposes of the court's contempt power is to ensure that parties do not anoint themselves with the power to adjudge the validity of orders to which they are subject. *United States v. United Mine Workers of America*, 330 U.S. 258, 290 n. 56 (1947). Plaintiffs cannot now say that because they were right partially right about the designation, they were right to disregard the protective order. *See United States v. Ayers*, 166 F.3d 991, 996 (9th Cir. 1999)(contempt cannot be avoided by arguing that order was in error.)

Plaintiffs next assert that they substantially complied because they "made it clear at all times that the documents would not be filed, absent court action." (Opp. at 2: 2-3). The record does not support this assertion. In the letter accompanying the opposition using the documents, Plaintiffs stated: "If defendants are successful in blocking use of these documents as of the filing deadline for the summary judgment motions, plaintiffs will not file the documents and will delete the references to the documents in the summary judgment memoranda." (Arons Letter, Irving Decl. Exh. I). Plaintiffs explain that "blocking" meant successfully opposing the motion to challenge confidentiality and winning a Motion to Quash the subpoena in the Hamilton Court. (Opp at 5 n. 10). Thus, Plaintiffs used the documents and required Defendants to prevent the filing of the documents by both successfully opposing a motion to de-designate here and by successfully moving to quash the subpoena. Indeed, even after this court found some of the documents properly designated as confidential, Plaintiffs still sought to use those documents in *Hamilton* through the sham subpoena. (Reply Exh. P). The court declines to find Plaintiffs recognition that Defendants could, after substantial expense, preclude further violation of the protective order equivalent to substantial compliance with the protective order.

Plaintiffs argue that their conduct should be found appropriate as was the conduct in *Dual Deck.* In that case, the court found it impossible not to "use" any information learned through discovery in the sense that lawyers cannot compartmentalize their minds and avoid using any

6

knowledge.  Plaintiffs argument that their conduct was analogous to that in *Dual Deck* misses the mark.  In order to be analogous to *Dual Deck*, Defendants would have to object to counsel's representation of the Hamilton Plaintiffs.  Nothing in *Dual Deck* authorizes or forgives Plaintiffs' conduct in attaching confidential documents to an opposition to summary judgment.  Plaintiffs argument appears to be that because they did not file the documents, they substantially complied with the order.  The Protective Order, however, is not limited to public filings, it states:

> A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation.

(Protective Order ¶ 7.1)

Plaintiffs used the documents in connection with another case, thus they did not substantially comply with the protective order.

Moreover, Plaintiffs cannot show that every reasonable effort was made to comply with the Protective Order.  Instead, Plaintiffs made every attempt to have the protective order modified and the documents de-designated.  But, when those attempts failed, they knowingly violated the protective order.  This is not a situation where compliance was impossible and the party made the best efforts it could at full compliance.  Instead, Plaintiffs chose not to comply because they saw an advantage in non-compliance.  *See United States v. Ayres*, 166 F.3d 991, 996 (9th Cir. 1999)(contempt appropriate where party violated a court order and did not show he could not comply).

### 2. Good Faith Reasonable Interpretation

Plaintiffs argue that they reasonably interpreted the Protective Order as allowing them to respond to a lawful subpoena.  This argument fails for two reasons: 1) they used the documents before they issued the subpoena; and 2) the subpoena was not valid.

Plaintiff served their opposition to summary judgment in the Hamilton case on February 8, 2007.  Plaintiffs did not serve themselves with the subpoena until February 17, 2007.  Thus, even if the subpoena were valid, it did not exist at the time of use.  Moreover, the subpoena was not valid as it was issued several months after the close of discovery and served upon essentially the same party who issued it.  As Defendants argue, the restriction to use in the present litigation would be

7

1  meaningless if a lawyer could obtain use in other litigations by the subterfuge of subpoenaing
2  himself.  In short, the subpoena was an attempted end-run around the discovery cut-off in Hamilton
3  and the protective order here.

4    Moreover, Plaintiffs knew they could not use the designated documents without violating the
5  protective order.  This is why Plaintiffs asked Defendants to "agree to modify the protective order to
6  allow confidential documents to be used in *Hamilton*" (Arons Letter, Irving Decl. Exh. C.)[4] And
7  Defendants specifically informed them in writing, by two separate letters dated January 24, 2007,
8  that use in Hamilton was not allowed under the protective order.  (Irving Decl. Exhs. D, E.)
9  Nonetheless Plaintiffs used the documents on February 8, 2007.

    3.    Technical Violation Causing No Harm

11   Plaintiffs argue that service on ACCS counsel in Hamilton, but not counsel for ACCS in this
12  litigation, is only a technical violation that caused no harm.  Plaintiffs assert that Ms. Judy Fox,
13  counsel for Hamilton Plaintiffs, but not Del Campo Plaintiffs, was not served with the documents.
14  (Opp. at 5:12-13).  Plaintiffs do not, however, provide any declaration to that effect.  Moreover, they
15  neither state that Ms. Fox has never seen the documents in question nor that they have not shown the
16  documents to anyone else, including their clients.  Finally, Plaintiffs did not file a certificate of
17  service as required by the Northern District of Indiana.  Accordingly, it is not clear from the record
18  before the court exactly who has seen the documents.

19   Even assuming, *arguendo*, that only Ms. Pope saw the information, ACCS has still been
20  harmed.  Plaintiffs' improper use of the confidential documents forced Defendants to bear the
21  expense of moving to quash the subpoena that served as an end run around the  protective order in
22  this case.  Additionally, the improper use of the confidential documents increased Defendant's
23  difficulty in briefing the summary judgment motion because they did not know what evidence
24  Plaintiffs would file at the end of the process.  Finally, Defendants claim harm in the form of the cost

---

[4] In the interests of complete accuracy the court notes that Plaintiffs do not admit in their letter that the protective order prohibits the intended use.  Plaintiffs state in that letter that the terms of the Protective Order "do not expressly provide for the use of confidential documents in other litigation." Plaintiffs claim in that letter that they do not believe either the court or the parties meant to preclude use in the Hamilton Case. This issue, however, appears to have been hotly contested during the negotiation of the protective order.  (Irving Decl. ¶ 3, Exhs. D, E.)

8

1  of litigating this contempt motion.

2  Accordingly, Plaintiffs argument that no purpose would be served by contempt is unavailing.
3  Contempt could serve two purposes:  1) to compensate Defendants for moving to quash; and 2) to
4  punish Plaintiffs for their cavalier attitude toward court orders.

## IV. CONCLUSION

For the foregoing reasons, It Is Hereby Ordered that the Application for an Order to Show Cause is Granted and the following facts are certified to the District Court:

1. The Protective Order governing discovery in this case specifically limits the use of confidential documents: "7.1 Basic Principles.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order."

2. Plaintiffs asked Defendants to "agree to modify the protective order to allow confidential documents to be used in *Hamilton*" (Arons Letter, Irving Exh. C.)

3. Defendants specifically informed Plaintiffs in writing, twice, that use in Hamilton was not allowed under the protective order.  (Irving Decl. Exhs. D, E.)

4. Plaintiffs' counsel sought to have a motion to de-designate the documents heard on shortened time in order to use the documents to oppose summary judgment in the Hamilton Case.

5. The motion to shorten time was denied.

6. After this court denied Plaintiffs' request for shortened time, Plaintiffs' counsel referred to and attached confidential documents to an opposition to summary judgment in the Hamilton Litigation.

7. After Plaintiffs used the documents, one attorney subpoenaed them from his co-counsel in an attempt to justify violating the protective order.

9

8. Magistrate Judge Nuechterlein granted the motion to quash the subpoena, stating "This Court cannot allow this clever and blatant abuse of the Federal Rules of Civil Procedure simply to run around this Court's clearly established deadline." (Irving Decl. Exh. A.)

9. Due to Indiana Court Rules, the documents were not filed at the same time they were served, and have never been publicly filed.

10. Lucetta Pope, Esq, counsel for ACCS in the Hamilton Litigation, does not represent any party in the Del Campo litigation and is not among the categories of persons to whom disclosure is permitted under the protective order.

11. At least one person not allowed to see the documents was served when the opposition was served upon Lucetta Pope.

12. Plaintiffs' counsel did not file a proof of service and the record does not indicate who else was served with the Opposition attaching the confidential documents.

13. Plaintiffs' unauthorized use of the documents in the *Hamilton* Litigation caused Defendants to: a) file a motion to quash the subpoena; b) file an opposition to objections to the Magistrate Judge's Order quashing the subpoena; and c) file this motion for an order to show cause re: contempt.

14. Plaintiffs are ordered to appear before Judge Ware on his next available hearing date on September 17, 2007 to show cause why either should not be adjudged in contempt of court.

IT IS SO ORDERED.

Dated: June 27, 2007

*Patricia V. Trumbull*
PATRICIA V. TRUMBULL
United States Magistrate Judge

10