Paul Arons, State Bar #84970
LAW OFFICE OF PAUL ARONS
685 Spring Street, #104
Friday Harbor, WA 98250
Tel:  (360) 378-6496
Fax: (360) 378-6498
lopa@rockisland.com


Deepak Gupta, D.C. Bar #495451
(*pro hac vice*)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
Tel:  (202) 588-1000
Fax: (202) 588-7795
dgupta@citizen.org

(Additional counsel on signature page)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ELENA DEL CAMPO, et al. on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>AMERICAN CORRECTIVE COUNSELING SERVICES, INC., et al.<br><br>             Defendants. | Civ. No. 01-21151 JW<br><br>CLASS ACTION<br><br>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ADOPT A DISCOVERY MANAGEMENT PLAN<br><br>Date: October 30, 2007<br>Time: 10:00 a.m.<br>Courtroom 5 |
| AND CONSOLIDATED ACTION | Civ. No. 03-2611 JW |

I.  INTRODUCTION

Plaintiffs are moving for adoption of a discovery management plan.  Regardless of how blame for the delay should be apportioned, a discovery management plan is long overdue.

MEMO. IN SUPPORT OF MOT. TO ADOPT DISCOVERY MANAGEMENT. PLAN Civ. No. 01-21151: Page 1

1

2

## II. PROCEDURAL BACKGROUND

### A. General Procedural Background

Plaintiffs will outline the procedural history of this action to explain why almost

seven years after it was first filed, there is no discovery management plan in place.

Elena del Campo initiated this class action lawsuit on December 11, 2001.  On

June 21, 2002, Judge James Ware denied the first of several motions that defendants

filed to stay the litigation, and referred the parties to Magistrate Judge Patricia V.

Trumbull for development of a discovery management plan.  The parties were unable to

agree on a plan, but before this matter was resolved, Judge Ware issued a stay of the

entire lawsuit, in light of a proposed nationwide settlement in a class action filed in United

States District Court in Iowa.  This stay remained in effect for almost three years.

On June 4, 2003, three new plaintiffs, Ashorina Medina, Lisa Johnston and Miriam

Campos filed a second class action lawsuit against the same parties and additional

defendants.  The action was assigned to Judge Ronald M. Whyte.  Due to the initial hold

on discovery, and subsequent rulings staying discovery, the parties in this action never

attempted to formulate a discovery management plan.  This action was effectively on

hold from November 2003, when defendants filed a Motion to Dismiss, until September

2005, when the action was reassigned to Judge Ware as a case that was "related" to *del

Campo,* which was the first filed action.

In August 2005, after the proposed Iowa settlement fell through, plaintiff

successfully moved to lift the stay in *del Campo.*  Del Campo and the Medina plaintiffs

then filed a motion to consolidate the two actions, which was granted on February 1,

2006.  Plaintiffs successfully moved to file an amended complaint, adding a new plaintiff

Lois Artz.  Plaintiffs filed the Amended Consolidated Complaint on May 1, 2006, and were

met with three separate motions to dismiss, the last two of which were decided on

December 5, 2006.  In January 2007 defendant ACCS filed an interlocutory appeal of

Judge Ware's order denying that it was entitled to sovereign immunity pursuant to the

Eleventh Amendment.  On June 29, 2007, ACCS again sought to stay the litigation,

1  pending a decision on its interlocutory appeal.  The other defendants later joined that

2  motion, even though they were not participating in the appeal.  In response to ACCS'

3  subsequent motion to this Court to stay a pending discovery motion until the motion to

4  stay the litigation was decided, this Court continued a discovery hearing from August 21,

5  2007 to November 6, 2007.[1]   On September 13, 2007, without holding a hearing, Judge

6  Ware denied defendants' motion to stay the litigation.

   **B.    The Parties' Efforts to Reach Agreement on a Discovery Management**
7  **       Plan**

8        The parties have not been able to agree to a discovery management plan because

9  they cannot agree on the amount and scope of discovery that is necessary.  In 2002,

10 counsel for plaintiff del Campo and defendants attempted to negotiate a discovery

11 management plan.  Defendants agreed to expand the number of interrogatories that

12 could be served to fifty, but refused to agree to expand the number of depositions beyond

13 the ten depositions allowed for by the federal rules.  Shortly after the reached this

   impasse, *del Campo* was stayed for three years.

14      Plaintiffs filed their Consolidated Complaint on May 1, 2006.  Between July 2006

15 and November 2006, the parties again attempted to reach agreement on a discovery

16 plan.  The parties disputed both the amount of discovery that was necessary, the scope

17 of permissible discovery, and other issues.  One of the sticking points was defendants'

18 desire to conduct discovery concerning plaintiffs' banking and check writing practices,

19 despite the fact that in the actions underlying the lawsuit, defendants are routinely

20 threaten check writers with criminal prosecution despite knowing nothing about their

21 banking and check writing practices.  Judge Ware subsequently ruled that this area of

22 inquiry was irrelevant and not discoverable.

23      Plaintiffs sought to restart discussions to reach an agreement on a discovery

24 management plan in June 2007, by forwarding another proposed plan.  Counsel for

25 American Corrective Counseling Services, Inc. chose not to participate in these

26      1. In light of plaintiffs' counsel' unavailability on that date, the parties agreed to move the
   hearing up one week, to October 30, 2007.

   MEMO. IN SUPPORT OF MOT. TO ADOPT DISCOVERY MANAGEMENT. PLAN Civ. No. 01-21151:
   Page 3

discussions.  Counsel for the other defendants did participate, and the parties exchanged several drafts of a proposed discovery management plan.  The participating defendants have taken the position that plaintiffs should be held to the numerical discovery limitations in the federal rules, regardless of the scope of the litigation.  ACCS has not expressed a position.  Plaintiffs believe that the non-ACCS parties and plaintiffs have made a substantial effort to agree on a discovery management plan and cannot agree on a mutually acceptable plan.

## III.  PLAINTIFFS SHOULD BE PERMITTED TO CONDUCT DISCOVERY THAT IS APPROPRIATE TO THE SCOPE OF THE LITIGATION

This is a putative class action in which plaintiffs will seek certification of a class of all persons to whom defendants sent written demands for payment of dishonored checks, ostensibly pursuant to the authority of California statutes authorizing "bad check diversion programs."  In a similar lawsuit filed against these same defendants in Indiana, *Hamilton v. American Corrective Counseling Systems, Inc.*, Civ. No. 05-434 (N.D. Ind.), the district court certified a statewide class.  When Elena del Campo filed her action in December 2001, she tolled the statute of limitations for claims arising in December 1997 or later.  At this point, this means the Court may certify a class that spans ten years.  Plaintiffs estimate that this class may include a million or more Californians, and that potential actual damages may easily exceed $15,000,000.00.

When this lawsuit was filed in 2001, defendants were operating programs in ten California counties.  That number may have quadrupled since then.  In deciding class certification, to meet typicality and commonality requirements, plaintiffs may have to establish that defendants' practices in each California county were materially the same, that absent class members in each county have been subjected to the same collection practices, and that the representative plaintiffs have been treated the same as absent class members.  Defendants, however, will not concede that their practices in each California county were materially the same.  Defendants also claim that in each county, the district attorney's office is integrally involved in day-to-day ACCS operations relating

to law enforcement issues, while plaintiffs believe that ACCS is merely a high-volume check collector operating under the auspices of a government agency. Thus, issues relating both to class certification, and to underlying liability may require discovery from individual district attorneys.

There are disputes concerning ACCS' relationships with merchants. The actual bank charges incurred by each merchant when a customer's check is dishonored are directly relevant to actual damages. It is unlikely that defendants have any admissible evidence concerning the charges that merchants, such as Safeway or Walmart, pay to their banks for dishonored checks. Additionally, ACCS claims that it is not a debt collector because it does not have any contractual relationship with merchants. Although plaintiffs dispute that a contract with a merchant is an element in determining whether defendants are "debt collectors" covered by the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, that is the claim that ACCS makes, and there is strong evidence this claim is contrary to fact. Thus, it will be necessary to obtain information from at least some major merchants for whom ACCS collects checks, relating both to bank charges and to their relationship to ACCS.

The relationship between the various defendants is also a critical issue requiring discovery. From information disclosed so far, after ACCS was first sued in 2000, Don Mealing and Lynn Hasney decided to split ACCS into several different companies. They created one company, ACCS Administration, Inc., to act as the nominal employer of everyone who worked at ACCS. They created another corporation to perform the massive daily printing and mailing tasks to Fulfillment Unlimited, Inc. They created a consulting company, Fundamental Performance Strategies, to which all ACCS profits were transferred, and they created a one-person corporation, Inc. Fundamentals, which was the major partner in Fundamental Performance Strategies, and which plaintiffs contend is nothing more than Don Mealing, reincarnated in corporate form. Defendants dispute any implication that there was a lack of corporate separateness, or that the

1  companies were created to hide assets and diffuse potential liability.  Additional discovery
2  relating to alter ego issues will be needed.

3        Finally, as the result of an expensive lobbying effort funded by ACCS, the FDCPA
4  was amended in 2006 to create a new, conditional, exemption for check diversion
5  companies like ACCS.  Paradoxically, defendants argue that this *new, conditional*
6  exemption means that check diversion companies have always been exempt from the
7  FDCPA.  District attorney associations, whose members receive revenue from ACCS and
8  its competitors, participated heavily in the lobbying effort, and plaintiffs anticipate that
9  defendants will attempt to proffer their testimony in this action.  Already, in ACCS'
10  pending appeal of the denial of its Eleventh Amendment immunity claim, the California
11  District Attorneys' Association has filed an amicus brief.  Therefore, plaintiffs anticipate
   that it may be necessary to obtain information from these entities.

12        Discovery can become expensive, and plaintiffs have no desire to conduct any
13  more than is necessary to prepare their case.  However, given the scope of the issues,
14  the number of different actors with relevant information, and the potential financial stakes,
15  extensive discovery will clearly be needed.  The fact that particular discovery is permitted
16  by the proposed discovery plan does not necessarily mean that it will take place.
17  However, it is better to plan for more than is required, than to have to come back to this
18  Court each time another deposition must be taken, or another interrogatory served.

19  **IV.  CONCLUSION**

20        Wherefore, for the reasons stated above, plaintiffs respectfully request that this
21  Court adopt the discovery management plan attached as Exhibit 1 to plaintiffs' motion.

22  DATED:  September 25, 2007                    LAW OFFICES OF PAUL ARONS

23                                                By s/ Paul Arons
                                                  PAUL ARONS
24                                                Attorneys for Plaintiffs

25

26

MEMO. IN SUPPORT OF MOT. TO ADOPT DISCOVERY MANAGEMENT. PLAN Civ. No. 01-21151:
Page 6

Additional Plaintiffs' Counsel

O. Randolph Bragg, Ill. Bar #06221983
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington, Suite 900
Chicago, IL 60602
(312) 372-8822

Ronald Wilcox, State Bar #176601
LAW OFFICE OF RONALD WILCOX
2160 The Alameda, 1st Flr., Suite F
San Jose, CA 95126
Tel:  (408) 296-0400
Fax: (408) 296-0486

Lester A. Perry (2571)
Hoole & King
4276 South Highland Drive
Salt Lake City, Utah 84124
Telephone: (801) 272-7556
Fax: (801) 272-7557

mpaMotDiscoveryMgmtPlan.doc

MEMO. IN SUPPORT OF MOT. TO ADOPT DISCOVERY MANAGEMENT. PLAN Civ. No. 01-21151:
Page 7