IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELENA DEL CAMPO ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN CORRECTIVE COUNSELING SERVICES, INC. ET AL., <br><br> Defendants. | No. C-01-21151 JW (PVT) <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR ADOPTION OF A DISCOVERY PLAN; GRANTING MOTION TO DE-DESIGNATION DOCUMENTS; AND GRANTING IN PART MOTION FOR SANCTIONS** |

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs assert in this class action complaint that private entity Defendant American Corrective Counseling Services ("ACCS"), violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") by operating a Bad Check Restitution Program in connection with the District Attorney.[1]  Plaintiffs also sued District Attorney George Kennedy, but the trial court dismissed all claims against him.  Plaintiffs allege that ACCS unlawfully threatens to prosecute program participants and attempts to collect fees not allowed under the statute.  ACCS was the umbrella corporation for allegedly independent companies: ACCS Administration Inc.

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

1  ("Admin"), Fulfillment Unlimited, Inc. ("FUI"), and Fundamental Performance Strategies ("FPS").
2  In November of 2004, ACCS was sold and the other companies became inactive. Plaintiffs have
3  also sued Admin, FUI, FPS, and various individuals including Don Mealing, President of ACCS,
4  and Lynn Hasney, Vice President of ACCS and President of Admin.

5  This case was stayed in October of 2002, pending a global settlement. In September of
6  2005, after the global settlement was disapproved, the stay was lifted.

7  On July 10, 2007, Plaintiffs filed a Motion to remove all confidentiality designations made
8  by ACCS. On July 18, 2007, ACCS successfully moved to continue the hearing on the motion until
9  after Judge Ware decided a pending motion to stay the entire litigation. On July 12, 2007, Plaintiffs
10 filed a Motion for Sanctions for over-designation. On September 25, 2007, Plaintiffs filed a Motion
11 for Adoption of a Discovery Plan. All three motions were eventually set for hearing on October 30,
12 2007. On October 25, 2007, the Court vacated the hearing date after determining that all three
13 motions were suitable for adjudication without oral argument.

14 **II.    DISCUSSION**

15     **A.    The Motion to Dispute Confidentiality Designations**

16 Plaintiffs have moved to removed the "Confidential" designation from all documents that
17 ACCS produced in December of 2006. The documents were numbered from 5000 to 7674 and
18 ACCS states that numbers 5000 to 6976 had been produced previously in 2002, without a protective
19 order. Plaintiffs claim that Defendants have failed to adequately support any of the designations.
20 On February 9, 2007, Plaintiffs' counsel, Mr. Aarons, wrote to Defense counsel, Mr. Jenkins,
21 seeking to resolve the issue of the apparently unjustified designations. Mr. Aarons detailed that
22 documents designated as confidential included, *inter alia,* a law review article, parts of the publicly
23 accessible website, promotional materials, documents previously disclosed without limitation, and
24 public records from Santa Clara county. (Aarons Decl. Exh. 1.) Defendants did not respond.

25        1.    <u>Waiver Arguments</u>

26           a.    Waiver by Production Without Protective Order in this Litigation

27 Plaintiffs argue that ACCS has waived the confidentiality of all documents produced in this
28 litigation without a protective order. Plaintiffs claim that they agreed to keep the documents

2

1 confidential for thirty days to allow ACCS time to get a protective order. Plaintiffs provide no
2 citation for this alleged agreement. Plaintiffs further claim that, by failing to enter a protective order
3 within thirty days, ACCS waived confidentiality for these documents.

4      ACCS disputes that it agreed to only thirty days to enter a Protective Order. ACCS provides
5 a letter dated August 28, 2002 that confirms the agreement. The letter states: "Our agreement is that
6 plaintiff will not disseminate document designated 'confidential' to individuals, including other
7 counsel, outside of the subject litigation (or the Related Cases), until Judge Trumbull rules on the
8 use of a protective order." (Jenkins Decl. Exh. A.) Plaintiffs do not address this letter in the reply
9 brief. In light of the letter confirming the agreement to treat documents as confidential until a
10 protective order is entered, Plaintiffs have not proven waiver by production in this case without a
11 protective order.

12                         b.     <u>Waiver by Failure to Object to Use</u>
13      Plaintiffs assert that, in September of 2002, Plaintiffs filed some of the documents in
14 opposition to Defendants' motion for summary judgment and ACCS did not attempt to have the
15 documents sealed. If Plaintiffs had been specific about which documents had been filed without
16 objection, this would be sufficient basis to find waiver. Without specific identification of the
17 documents, however, the Court cannot find waiver.

18            2.     <u>Documents Defendants Do Not Defend</u>
19      ACCS raises no defense as to the confidential designation of 1,674 documents. These
20 documents shall be deemed de-designated.[2]

21            3.     <u>Documents Defendants Attempt to Defend</u>
22                         a.     Business Proposals
23      ACCS defends its designation of "business proposals" as confidential because a competitor
24 (if there were one) could use the materials to better compete. ACCS provides no identification of

---

[2] Defendant argues that it de-designated these documents as a "deep compromise" "in order to avoid court intervention." The Court notes that Defendant did not make this concession until after the motion had been filed, thus Court intervention was already in progress. Moreover, the Court is skeptical that the decision not to argue that documents such as law review articles are not confidential show any "deep compromise."

3

1 which documents for which they assert this justification. The Court assumes that pages 5012-5018,
2 described as "proposal booklet with picture of check stamped "NSF" on cover," and pages numbered
3 5019-5044, described as "Booklet entitled "a proposal for prosecuting attorneys," fall into this
4 category.
5     ACCS provides no specifics as to how a competitor could benefit. ACCS provides no
6 information about how it has tried to keep this documents confidential. Plaintiffs argue
7 convincingly that these same documents are available through public records requests and similar
8 documents are available on the ACCS website. Accordingly, ACCS has not made the necessary
9 showing to have any business proposal documents remain confidential and they shall be de-
10 designated.

11                     b.      Company Policies and Procedures

12     ACCS argues, again without specifically identifying documents, that its internal procedures
13 and policies are valuable. ACCS also argues that intake and prosecution criteria could be used by
14 offenders to write bad checks under the dollar threshold for prosecution. Plaintiffs argue that ACCS
15 has known since 2002 that district attorneys have been disclosing these documents pursuant to
16 requests under the California Public Records Act and have done nothing to prevent the disclosures.
17 In the motion for a discovery plan, however, Plaintiffs argue that ACCS has wrongfully tried to stop
18 District Attorneys from producing documents pursuant to the public records requests. Accordingly,
19 this argument is not persuasive.
20     The Court has identified document numbers 7016-7017, 7041, 7058-7-060 as intake criteria.
21 Although ACCS has identified a specific harm from disclosure, it has failed to offer any evidence
22 that it has maintained the secrecy of these documents. Accordingly, no documents in this category
23 shall remain confidential.

24                     c.      Teaching and Class Materials

25     ACCS  argues that these materials are copyrighted and only given to qualified students.
26 ACCS, however, provides no authority for the proposition that copyright renders documents
27 "confidential."   Moreover, ACCS has provided no information as to the efforts to keep the materials
28 confidential. Plaintiffs argue convincingly that ACCS filed the 2004 version of the workbook

4

(document No. 7491) in Hamilton without protective order.  Accordingly,  ACCS has not shown they have kept these materials secret and they shall be de-designated.

### d. Financial and Commercial Information

The documents in this category include revenues, expenses, assets and liabilities, and employee bonus plans.  This type of information is often treated as confidential.  ACCS, however, does not provide a clear indication of the documents that it seeks to maintain as confidential.  The Court has identified documents with numbers 5512-5524, 5525-5537, 5538-5550, 5551, 5598-5599, 6783-6785, and 7655-7673 as fitting within financial information.  ACCS again provides no argument as to maintenance of the secrecy of these documents.  Plaintiffs assert that ACCS produced "annual Financial Statements, including the Combined 2002-2003 statement (Doc. No. 7655)" in Hamilton without any protective order. (Aarons Decl. ¶ 6.)  Plaintiffs also assert that document number  5551, the 2002 ACCS Revenue summary, and document number 6783, employee incentives have been publicly filed without any request for sealing.  Accordingly, these documents have not been maintained as secret.

Moreover, the burden is on ACCS to show that each document has been maintained in secrecy.  ACCS has not made this showing for any documents, in this category or any other.  Accordingly, no documents  shall remain designated as confidential.

### B. **The Motion for Attorneys' Fees**

Plaintiffs seek to recover the costs and fees incurred to move to de-designate the documents.  The protective order  provides:

> 5.1 Exercise of Restraint and Care in Designating Material for Protection.
> Each Party or non-party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. A Designating Party must take care to designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.
>
> Mass,  indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g.,to unnecessarily encumber or retard the case development process, or to impose unnecessary expenses and burdens on other parties),expose the Designating Party to *possible* sanctions.

5

(1/3/07 Protective Order § 5.1)(emphasis added.)  The Federal Rules of Civil Procedure provide:

> If a party . . . fails to obey an order to provide or permit discovery . . . or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . .
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the *reasonable* expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2).  The failure to obey a protective order's prohibition against indiscriminate designations is covered by Rule 37.  *Humphreys v. Regents of University of California*, 2006 WL 3302444 (N.D.Cal. Nov 14, 2006) at * 2 (noting that improper designation "places an enormous burden on both the parties and, through the overuse of sealed filings, on the Court."); *see also* Fed.R.Civ.P. 37(b) Advisory Committee Notes, (1970 Amendment) ("The scope of Rule 37(b)(2) is broadened by extending it to include any order 'to provide or permit discovery,' including orders issued under Rules 37(a) and 35. Various rules authorize orders for discovery-e.g., Rule 35(b)(1), Rule 26(c) as revised, Rule 37(d). [citation omitted]. Rule 37(b)(2) should provide comprehensively for enforcement of all these orders.").

      ACCS' massive overdesignation of documents warrants sanctions.  ACCS' belated recognition that the confidential designation of over 1,500 documents could not be supported does not render its behavior substantially justified and does nothing to undermine the justification for sanctions.  ACCS' actions in indiscriminately designating documents had the result of improperly shifting the cost of review of confidentiality to Plaintiffs.  Sanctions are necessary to correct this unfair burden.  Moreover, ACCS compounded its error by failing to meet and confer prior to the bringing of this motion.

      ACCS opposes the motion for fees because it was not made as soon as practicable after Plaintiffs knew it was appropriate. Civ. L. R. 7-8(a).  The protective order, however, provides: "a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed." (Stipulated Protective Order ¶ 6.1) Because the burden of reviewing documents for confidentiality properly rests with the producing

6

party, it would be inequitable to allow ACCS to shift this burden to Plaintiffs simply because the Plaintiffs were exercising their right under the protective order to challenge the designation at a later time.

Defendants also argue that the motion was brought in bad faith and lacks merit. The motion has great merit, as shown by the de-designation of almost all the documents. Moreover, there is no evidence of bad faith in bringing the motion.

Plaintiffs seek thirty-four hours at $400 per hour of Mr. Aarons' time. The Ninth Circuit recently this rate for Mr. Aarons. *Defenbaugh v. JBC Assocs.*, 04-16866 (9th Cir. 2006). Accordingly, the Court accepts that Mr. Aaron's time should be recompensed at $400 an hour, but the number of hours sought is excessive. First, Mr. Aarons did not provide a detailed account of how the time was spent and the court can not determine that all of the time spent had to be spent by an attorney at Mr. Aarons' level. Second, Mr. Aarons seeks 6.3 hours for responding to a motion to postpone the hearing on this motion, pending resolution of a motion to stay the litigation. For the purposes of this case, it was not reasonable for Plaintiffs to oppose that motion.

ACCS' behavior warrants substantial sanctions and Plaintiffs have improperly been forced to spend substantial time to de-designate improperly designated documents. Accordingly, $10,050, representing 25 hours at $400 per hour and $50 in costs, is an appropriate sanction.

**C.     The Motion for a Discovery Plan**

Plaintiffs seek modifications to the limits on discovery presumptively imposed by the Federal Rules of Civil Procedure. Plaintiffs correctly assert that this is a complex putative class action that requires more than discovery than the average case. Defendants oppose any additional discovery. Additionally, Defendants seek, and Plaintiffs oppose, advance notice on requests for public records and delay in production of documents sought by third party subpoenas.

1.     Procedural Posture of Motion

In a June 21, 2002 Order, Judge Ware referred the parties to the undersigned Judge for the development of a discovery management plan. Then the case was stayed and the motion was not renewed until September 25, 2007. The hearing was set for October 30, 2007, making Plaintiff's reply brief due October 16, 2007. On October 18, 2007, Plaintiffs filed the reply brief and a motion

1  for an extension of time to file the already late reply brief.  Because the late reply brief did not
2  prejudice Defendants, the motion for extension of time is granted.  Plaintiffs are cautioned, however,
3  that no further untimely requests for extensions will be granted.

        2.       <u>Depositions</u>

              a.       Number of Depositions

6  Plaintiffs assert that the ten deposition limit in the Federal Rules of Civil Procedure is too
7  small given the complexity of this case.  This is a putative class action seeking to certify a state-wide
8  class going back as far as 1997.  There are five Plaintiffs and eleven Defendants remaining in the
9  suit.  Plaintiffs argue that they more depositions to establish typicality and commonality among
10 plaintiffs in the between ten and thirty different counties in which ACCS has contracts with the
11 District Attorneys.  This discovery is necessary, at least in part, because Defendants will not
12 stipulate that practices are the same in all counties.

13 Additionally, Defendants asserted in *Hamilton*, and thus may assert here, that a sale in
14 November of 2004 of ACCS means that any evidence of practices before 2004 is not applicable to
15 post-sale practices.  Accordingly, Plaintiff need discovery of both the old and new owners.
16 Moreover, Plaintiffs will need to depose some merchants in order to investigate: 1)  whether ACCS
17 has contracts directly with merchants, which ACCS denies; and 2) whether the merchants are
18 charged the bad check fees that ACCS is purporting to collect from participants on behalf of the
19 merchants.   Finally, Plaintiffs will need to take discovery as to the alter ego liability of the various
20 entities ACCS split itself into (Admin, FUI, and FPS)

21 Plaintiffs seek to depose each remaining eleven Defendants; seven merchants; ten current or
22 former employees; and two representatives of the two District Attorney professional organizations
23 involved in lobbying for the 2006 FDCPA amendment.  Plaintiffs also seek to depose an undisclosed
24 number of district attorneys.  Thus, Plaintiffs seek a total of over thirty depositions.

25 Defendants seek to limit Plaintiffs to ten depositions, each not to exceed seven hours, and to
26 require an individualized showing for each additional deposition sought.  Given the breadth and
27 complexity of this case, this limitation is unwarranted.  It would be inefficient to require an
28 additional motion for each additional deposition sought.  Additionally, it would be prejudicial to

8

1  require Plaintiffs to choose the take ten depositions to take before they know whether they will be
2  granted more. ACCS' reliance on *Archer Daniels Midland Co v. Aon Risk Services, Inc.* 187
3  F.R.D. 578, 587 (D. Minn,. 1999) as support for the exhaust first, ask for more later argument is
4  misplaced. In that case, the court found that no justification for additional discovery had yet been
5  shown. Accordingly, the case is inapposite here, where the complexity clearly warrants more than
6  ten depositions.

7  Nonetheless, Plaintiffs' sought discovery is overbroad at this time. Accordingly, Plaintiffs
8  shall be allowed to take the following depositions: the eleven remaining defendants; two merchants;
9  five former employees; and five district attorneys from districts known to have had a contract with
10 ACCS. Upon a specific showing of good cause, Plaintiffs may obtain more depositions.

    b.   Deposition of Defendants Hasney and Mealing

12  Defendants seek to prevent the depositions of Defendant Mealing (President of ACCs), and
13  Defendant Hasney (VP of ACCS, President of Admin), claiming that Plaintiffs agreed they would be
14  deposed in the Hamilton case only and not in this case. ACCS claims that, in exchange for this
15  agreement, it waived the seven hour limitation and allowed Plaintiffs to ask questions in the
16  Hamilton depositions about issues relating to Del Campo. Plaintiffs dispute that they made any such
17  agreement. Plaintiffs assert that they agreed only that deposition transcripts from Hamilton
18  depositions could be used in this action. Plaintiffs point out that Defendants did not memorialize the
19  alleged agreement on the record during the Hamilton depositions or by letter. Defendants argue that
20  the agreement can be divined from the deposition transcript because Mealing answered a few
21  questions about California and Hasney did not. This argument is not persuasive because Defendants
22  are arguing that the agreement covered both of them.

23  Defendants also argue that Mealing's deposition went for twelve hours, which they would
24  not have agreed to absent an agreement barring a second deposition in this litigation. Mealing is a
25  central witness in this case and the court would have allowed a deposition beyond 7 hours absent
26  agreement of the parties. Accordingly, this argument is not persuasive.

27  In the absence of any evidence, the Court will not enforce an alleged agreement prohibiting
28  the depositions of key witnesses in this case. Accordingly, the discovery management plan does not

9

bar the depositions of Hasney and Mealing. However, as Plaintiffs concede an agreement for use of the Hamilton depositions of Hasney and Mealing in this case, Plaintiffs shall limit the questions to those not asked and answered in the Hamilton depositions.

### 3. Third Party Subpoenas

Plaintiffs seek a plan that allows subpoenas to any merchant who refers bad checks to ACCS in California, any District Attorney in California that allowed ACCS to operate, and the National District Attorneys' Association, the California Association of District Attorneys and the American Collectors Association. Defendants object that there is no need to put this in the plan, except to deem objections to particular subpoenas waived. Defendants' point is well taken and the Discovery Plan does not contain a special allowance for subpoenas.

Defendants seek to impose a requirement of fourteen days' notice to the opposing counsel before issuing Rule 45 subpoenas. Defendants claim such notice is necessary to allow time to meet and confer and move to quash if necessary. Plaintiffs claim this is a tactic to allow Defendants time to convince third parties not to comply or to destroy documents before a duty to preserve the documents is created by the issuance of a subpoena. Defendants have not shown any justification for requiring advance notice. In order to allow adequate time to meet and confer and move to quash, no party may issue any Rule 45 subpoena calling for production in fewer than twenty-one days.

### 4. Public Records Requests

Defendants seek to require Plaintiffs to tell them within three days of serving any request for public records from any District Attorneys. Defendants assert this is necessary because otherwise Plaintiffs will not tell them and they will not be able to ask for copies. Plaintiffs assert that this is a tactic to be able to convince the District Attorneys not to comply with the public record requests. The letters ACCS has been sending District Attorneys justifies this concern. (Aarons Decl. Exhs. 5-8.) Moreover, Plaintiffs convincingly argue that public records requests are an investigatory tool and they are under no obligation to share their investigation with Defendants. Accordingly, the Discovery Plan does not contain any requirement to notify the opposing party or a public records request.

//

**III. CONCLUSION**

For the foregoing reasons, It Is Hereby Ordered that:

1. Plaintiffs' Motion to remove all confidentiality designation is GRANTED and all documents are hereby de-designated;

2. Plaintiffs' Motion for Sanctions is Granted and, no later than November 27, 2007, Defendants shall pay Plaintiffs $10,050, representing 25 hours at $400 per hour and $50 in costs; and

3. Plaintiffs' Motion for Adoption of a Discovery Plan is Granted and the following Plan shall apply:

    a. Plaintiffs shall be allowed to take the following depositions: the eleven remaining defendants; two merchants; five former employees; and five district attorneys from districts known to have had a contract with ACCS.

    b. Plaintiffs may depose Defendants Mealing and Hasney, but may not ask questions that were asked and answered in the Hamilton depositions;

    c. No party may issue any Rule 45 subpoena calling for production in fewer than twenty-one days; and

    d. No notification must be given of Public Records Requests.

IT IS SO ORDERED.

Dated:   November   5,   2007

*Patricia V. Trumbull*
PATRICIA V. TRUMBULL
United States Magistrate Judge

11