1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10       SAN JOSE DIVISION

11  | ELENA DEL CAMPO ET AL., | No. C-01-21151 JW (PVT) |
12  |                         |                        |

ELENA DEL CAMPO ET AL.,

        Plaintiffs,

  v.

AMERICAN CORRECTIVE COUNSELING
SERVICES, INC. ET AL.,

        Defendants.

No. C-01-21151 JW (PVT)

**ORDER RE: MOTION TO COMPEL
DISCOVERY AND ORDER GRANTING
MOTIONS FOR LEAVE TO FILE
EXCESS PAGES FOR MOTION AND
REPLY BRIEF**

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs assert in this class action complaint that private entity Defendant American Corrective Counseling Services ("ACCS"), violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") by operating a Bad Check Restitution Program in connection with the District Attorney.[1]  Plaintiffs also sued District Attorney George Kennedy, but the trial court dismissed all claims against him.  Plaintiffs allege that ACCS unlawfully threatens to prosecute program participants and attempts to collect fees not allowed under the statute.  ACCS was the umbrella corporation for allegedly independent companies: ACCS Administration Inc.

---

[1]    The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

("Admin"), Fulfillment Unlimited, Inc. ("FUI"), and Fundamental Performance Strategies ("FPS"). In November of 2004, ACCS was sold and the other companies became inactive. Plaintiffs have also sued Admin, FUI, FPS, and various individuals including Don Mealing, President of ACCS, and Lynn Hasney, Vice President of ACCS and President of Admin.

This case was stayed in October of 2002, pending a global settlement. In September of 2005, after the global settlement was disapproved, the stay was lifted.

On July 10, 2007, Plaintiffs filed a Motion to remove all confidentiality designations made by ACCS. On November 6, 2007, the Court granted the Motion to remove all confidentiality designations, granted the Motion to adopt a discovery plan and granted in part the Motion for sanctions. On November 5, 2007, Plaintiffs filed the motion presently before the court, to compel further responses to thirty-five requests for production of documents and thirty interrogatories. Plaintiffs also filed requests for leave to file excess pages for the memorandum and reply briefs in support of the motion. Due to the number of discovery matters involved in the motion, the court Grants the Motions for leave to file excess pages.

Five issues are central to the disputes between the parties over the discovery involved: 1) the timeliness of the motion; 2) the propriety of various issue-related discovery; 3) the organization of discovery responses; 4) the use of Rule 33(d) in responding to interrogatories; and 5) ACCS' responsibilities to provide a privilege log for any documents withheld under claim of privilege. The following order provides substantial guidance on these five central issues. It is the hope of the Court that, with the following guidance, the parties will be able to resolve the remaining discovery disputes. Accordingly, the December 11, 2007 hearing date is CONTINUED to January 29, 2008 and the parties are Ordered to meet and confer to resolve this discovery dispute in light of the guidance provided.

**II.    DISCUSSION**

    **A.    Timeliness of Motion**

ACCS has objected that this motion to compel is improper because it is untimely and because Plaintiffs failed to adequately meet and confer. Plaintiffs propounded the discovery at issue in June of 2006. (Exhs. 1 and 2 to Motion). ACCS provided initial responses in August of 2006. After

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   some meet and confer and extensions of time to respond, ACCS provided supplemental responses in

2   December of 2006.  (Exhs.  3 and 4 to Motion.)  ACCS counsel, Mr.  Jenkins, explains that February

3   and March of 2007 were spent on appellate issues and that ACCS was expecting a stay of the

4   litigation until after the appeal process was completed.  (Jenkins Decl. in opp. to mtn for fees at ¶

5   12.)  The stay of proceedings pending appellate proceedings was denied in September of 2007.

6   (Docket #396).  Although Plaintiffs had not engaged in any substantive meet and confer since

7   February of 2007, the procedural posture of this case renders the delay reasonable and the delay does

8   not constitute a waiver of the right to move to compel.

9       **B.    Issues Open for Discovery**

10          1.    <u>Class Certification and Alter-Ego Discovery</u>

11          The parties dispute whether discovery of class certification and alter-ego liability is

12   appropriate at this time.  At a Case Management Conference on October 30, 2007, Judge Ware

13   directed the parties to proceed with a summary judgment on the issue of liability before adjudication

14   of the issue of class certification.  Judge Ware directed the parties to filed cross-motions for

15   summary judgment on liability, to be heard on March 5, 2008.  Plaintiffs contend that Judge Ware

16   resisted ACCS' efforts to restrict discovery on these issues.  (Arons Decl.  ¶ 2.)  ACCS contends that

17   Judge Ware expressed no opinion on the issues and merely stated that discovery issues are referred

18   to the undersigned Magistrate Judge.  (Jenkins Decl.  in opp. to mtn. to compel discovery at ¶¶ 7-8.)

19          Judge Ware referred all discovery disputes to the undersigned Magistrate Judge.  There has

20   been no Order limiting or bifurcating discovery in this case.  Moreover, if discovery into these issues

21   is delayed, it will not start for at least six months.   In light of the delay already suffered in this case,

22   this court finds it appropriate to proceed with discovery on the issues of class certification and alter-

23   ego liability.  Nonetheless, the liability summary judgment motions scheduled for March of 2008 are

24   not irrelevant to the question of undue burden.  ACCS may assert the upcoming summary judgment

25   motions on liability as a factor that makes the burden of responding to specific discovery requests

26   undue.  ACCS is cautioned, however, that to properly resist discovery on the basis of undue burden

27   it  must meet the burden under Federal Rule of Civil Procedure 26(c), governing the issuance of

28   protective orders.  Rule 26 empowers the Court to "make any order which justice requires to protect

3

a party . . . from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(7).  The burden of proof is on the moving party to make a clear showing of particular and specific need for the protective order.  *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  ACCS if further cautioned that an insufficient assertion of undue burden will subject it to further sanctions.

### 2.    Issues Added in Amended Consolidated Complaint

The discovery at issue in this motion was propounded in 2006, prior to Plaintiff's filing of the Amended Consolidated Complaint now governing this litigation.  ACCS contends that its responses were reasonable in light of the pleadings on file at the time discovery was propounded. Without addressing whether this contention is accurate, the court notes that Rule 26(e) imposes on every party to duty to "seasonably to amend" discovery responses that are incomplete or incorrect. Fed. R. Civ. P. 26(e).  To the extent that changes in the pleadings are responsible for ACCS responses being inadequate, it is time for ACCS "seasonably to amend" those responses.

### C.    Organization of Discovery Responses

Plaintiffs contend that ACCS has not met its obligations under Rule 34 to produce documents either as kept in the ordinary course of business or organized to correspond with the document requests.  ACCS argues that it has produced the documents as kept in the ordinary course of business.  Brett Stohlton, Chief Operating Officer of ACCS, declares that the documents previously produced in another litigation were produced in the same manner as previously produced and that the documents produced for the first time "were produced in the same manner that those documents were kept in the ordinary course of ACCS' business."  (Stohlton Decl.  ¶¶ 5-6.)  Absent any evidence that this declaration is untrue, ACCS has complied with its obligations under Rule 34.[2]

### D.    Use of Rule 33(d) in Responding to Interrogatories

Plaintiffs object to ACCS' attempt to answer certain interrogatories by a general reference to documents produced.  Rule 33 provides for response to interrogatories by reference to documents only in a very specific manner:

---

[2]As ACCS notes, Plaintiffs have already been compensated for the effort of indexing the documents produced in the form of sanctions ordered on November 6, 2007.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d). ACCS' responses are not in compliance with this rule. If ACCS intends to use the Rule 33(d) process, it must: 1) show that the burden is "substantially the same" for Plaintiffs to find the information; and 2) specify the records to be reviewed in detail sufficient to allow Plaintiffs to identify the documents "as readily as" ACCS could. ACCS is cautioned that an improper use of Rule 33(d) will result in sanctions.

### E. Privilege Logs

Plaintiffs contend that ACCS has waived any objections as to privilege by failing to produce a privilege log in a timely manner. Rule 26 (b)(5) requires a party to claim privilege expressly and "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Additionally, the advisory comments to the 1993 Amendments to Rule 26(b)(5) state:

> A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.

Fed. R. Civ. P. 26(b)(5) 1993 Advisory committee notes. Thus, failure to produce an adequate privilege log can amount to a waiver of the privileges asserted. *See Cunningham v. Connecticut Mut. Life Ins.*, 845 F. Supp. 1403 (S. D. Cal. 1994).

ACCS argues that certain requests are so poorly drafted that it would be unfair to require ACCS to prepare a privilege log. ACCS cites Request number 12, seeking summaries or reports quantifying ACCS' activity in collecting checks, such as number of letters mailed and amount of

5

money recovered.  ACCS argues that this request could be construed so broadly as to require all attorney-client reports because the request states that it includes "reports generated for ACCS' internal use, and reports generated for any other purpose."  There is nothing objectionable in this request.  ACCS has a duty to investigate whether it has responsive documents.  If it has reports about ACCS' business practices for which it claims attorney-client privilege, it must support that claim with a privilege log.

In contrast, Request number 13, which seeks all documents related to collection efforts, is impermissibly broad.  ACCS' argument that this request calls for all attorney-client privileged documents because all privileged documents in this litigation could fit within the definition of "related to collection efforts."  It would be an unfair and undue burden to force ACCS to create a privilege log containing every letter between attorney and client.  Accordingly, this Request is narrowed to exclude letters between ACCS and its counsel of record.  Similarly, Request number 31, seeking any analysis of the impact of ACCS' collection efforts on the criminal justice system, is narrowed to exclude work product relating to ACCS' public policy arguments.

The Court declines to find a waiver due to the current failure to produce a privilege log. However, ACCS is now on notice of the circumstances for which a privilege log must be produced. Failure to timely produce a privilege log as outlined in this order may result in a waiver of any privileges not properly asserted.

A proper assertion of privilege should contain the following for each document, communication or information withheld:

> 1. the date; 2. author;  3.  primary addressee;  4. secondary addressee(s);  persons copied and recipient (and the relationship of that person(s) to the client and/or author of the document);  5. type of document or nature of the communication;  6. Client (i.e., party asserting privilege); 7. Attorneys; 8. Subject matter of document or privileged communication; 9. Purpose of document or privileged communication (i.e., legal claim for privilege); and 10. Whether the document or communication is work product or attorney-client privilege.

*Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992).

//

//

//

**III.**    **CONCLUSION**

For the foregoing reasons, It Is Hereby Ordered that:

1.    Plaintiffs' Motions for leave to file excess pages are GRANTED;

2.    The December 11, 2007 hearing date for Plaintiffs' Motion to Compel is CONTINUED to January 29, 2008;

3.    The parties shall take the guidance in this order and meet and confer in a genuine effort to resolve the remaining disputes without resort to further court intervention; and

4.    The parties shall file a joint statement of the issues remaining in dispute, if any, no later than January 8, 2008 and shall file separate briefs in support of their respective positions no later than January 15, 2008.

IT IS SO ORDERED.

Dated:    December   5,   2007

_____
PATRICIA V. TRUMBULL
United States Magistrate Judge

United States District Court
For the Northern District of California

7