1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ELENA DEL CAMPO, et al., | ) | Case No.: C 01-21151 JW (PVT) |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING PLAINTIFFS'** |
| v. | ) | **MOTION TO INTERVENE AND TO** |
| | ) | **MODIFY THE STIPULATED** |
| | ) | **PROTECTIVE ORDER ON THE** |
| AMERICAN CORRECTIVE | ) | **CONDITION THAT PLAINTIFFS** |
| COUNSELING SERVICES, INC., et al., | ) | **OBTAIN LEAVE TO RE-OPEN** |
| | ) | **DISCOVERY IN THE OTHER** |
| Defendants. | ) | **JURISDICTIONS; FURTHER ORDER** |
| _____ | ) | **RE PENDING DISCOVERY** |

**INTRODUCTION**

Plaintiffs in Florida and Indiana (collectively "plaintiffs") move to intervene and to modify

the January 3, 2007 stipulated protective order to gain access to certain discovery they anticipate

will be produced by defendant American Corrective Counseling Services, Inc. ("ACCS") in the

above-captioned action. Defendant ACCS opposes the motion. On April 8, 2008, the parties

appeared for hearing. Having reviewed the papers and considered the arguments of counsel and for

the reasons set forth below, plaintiffs' motion to intervene and to modify the January 3, 2007

protective order is granted on the condition that plaintiffs obtain leave from the Florida and Indiana

courts to re-open discovery in those jurisdictions.[1]

_____

[1]     The holding of this court is limited to the facts and particular circumstances underlying
the present motion.

ORDER, *page 1*

1

2                                    **BACKGROUND**

3          Defendant ACCS is a private entity which operates the bad check diversion program on

4    behalf of the Santa Clara County District Attorney's Office.  It manages the accounting and clerical

5    functions of the program, including recovering restitution, returning restitution to aggrieved

6    merchants and conducting financial accountability classes.  California Penal Code Section 1001.60

7    is the statutory authority that allows the District Attorney's Office to operate the bad check diversion

8    program and partner with a private entity, such as ACCS.  In addition to providing restitution and

9    attending a financial accountability class, the statute also requires that program participants pay

10   certain administrative fees and bank charges.  Among the various administrative fees charged to

11   program participants, banks may also charge a returned item fee.  Under the statute, the maximum

12   fee allowed for a returned item is $10.

13         Plaintiff Elena Del Campo wrote a check to Fry's Electronics in Palo Alto, CA.  The check

14   did not clear and she received a letter, ostensibly on Santa Clara County District Attorney's Office

15   letterhead, informing her that she had violated the law by writing a bad check but could opt to

16   participate in the bad check diversion program and pay $265.02.  Instead, Del Campo sent a check

17   for the actual amount of the bad check which had totaled $95.02.  Later, Del Campo received two

18   additional letters stating that she still owed further payment and that she risked criminal prosecution

19   of the matter.

20         On December 11, 2001, Del Campo filed a putative class action complaint against ACCS and

21   certain of its officers, including Don R. Mealing and Lynn R. Hasney, alleging violations of the Fair

22   Debt Collection Practices Act and various state law claims.  Specifically, Del Campo complained

23   that ACCS sought from program participants remittance of certain bank fees regardless of whether

24   the merchant had been charged any such bank fees.  On June 4, 2003, plaintiffs Ashorina Medina,

25   Maria Campos and Lisa Johnston filed another complaint against ACCS alleging claims similar to

26   those set forth in the Del Campo complaint.  On October 8, 2002, the Del Campo case was stayed

27   pending a global settlement.  The global settlement unraveled and the stay was lifted on September

28   15, 2005.  On February 1, 2006, the court consolidated the two California cases into one action and

on May 1, 2006, plaintiffs filed a consolidated complaint.  ("California Action").  Discovery in the newly consolidated action resumed in early 2006.  On June 13, 2008, plaintiffs' motion for class certification is scheduled for hearing.

On January 3, 2007, the parties stipulated to a protective order which was later entered by the court.  The stipulated protective order restricts the use of "Confidential" and "Highly Confidential" documents to a "Receiving Party," which is defined thereon as "a [p]arty that receives Disclosure or Discovery Material from a Producing Party."  ("stipulated protective order").  Section 7.1 of the stipulated protective order further states that "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation."

In or around November 2007, plaintiffs in the California Action moved to compel further interrogatory responses and further production of documents.  On February 12, 2008, the court granted plaintiffs' motion and ordered further production of documents.  Based on past productions, plaintiffs anticipate that many of the documents produced will be designated either "Confidential" or "Highly Confidential."  Indeed, on March 22, 2007, the court granted in part and denied in part plaintiffs' motion to de-designate certain documents and on November 6, 2007, the court granted plaintiff's motion to de-designate in excess of two thousand pages which had been designated "Confidential."  Moreover, the court imposed monetary sanctions on the defendant ACCS for its overly broad designations.

Plaintiffs Lydia Rosario and Audra Phillips have alleged similar claims, including violations of the Fair Debt Collection Practices Act and various state law claims, against defendants ACCS, Mealing and Hasney in Florida.  ("Florida Action").  The Florida Action was filed on April 30, 2001 and discovery was closed on October 31, 2005.  The parties filed additional summary judgment motions in or around March 31, 2008.  A class has not been certified.  Additionally, there is some overlap of counsel for the plaintiffs and defendants in the California and Florida Actions.

Plaintiffs Maria Hamilton and Damon Wright have also alleged similar claims, including violations of the Fair Debt Collection Practices Act and various state law claims, against defendants ACCS, Mealing and Hasney in Indiana.  ("Indiana Action").  The Indiana Action was filed on July

19, 2005 and received class certification on February 14, 2005.  Discovery was closed on October

16, 2006 and the parties submitted cross-motions for summary judgment on April 23, 2007.

On March 11, 2008, plaintiffs in the Indiana and Florida Actions filed their motion to

intervene and to modify the January 3, 2007 stipulated protective order in this action.  On March 25,

2008, defendants ACCS, Mealing and Hasney filed their opposition and on March 28, 2008,

plaintiffs filed their reply.

# DISCUSSION

## I.      Plaintiffs' Motion to Intervene and Modify the Stipulated Protective Order

"On timely motion, the court may permit anyone to intervene who: has a claim or defense

that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  "In

exercising its discretion the court must consider whether the intervention will unduly delay or

prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(2).  "[A] Rule 24(b)

intervention [is] the proper method to modify a protective order . . . . [and it] permits limited

intervention for the purpose of challenging a protective order."  *Beckman Industries, Inc. v.*

*International Ins. Co.,* 966 F.2d 470, 472 (9th Cir. 1992)(internal citations omitted); *and Foltz v.*

*State Farm Mut. Auto Ins.,* 331 F.3d 1122, 1134 (9th Cir. 2003).  *See also, Grove Fresh*

*Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 896 (7th Cir. 1994); *United Nuclear Corp. v.*

*Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir. 1990).

Under Rule 24(b), permissive intervention to litigate a claim on the merits includes the

following requirements: (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a

common question of law and fact between the claim or defense of the moving party and the main

action.  *Id.* at 473.  However, a party seeking to intervene to modify a protective order need not

show an independent jurisdictional basis if "[t]he district court retained the power to modify the

protective order."  *Id.  See also, San Jose Mercury News, Inc. v. United States Dist. Ct., No. Dist.*

*(San Jose)* 187 F.3d 1096, 1100 (9th Cir. 1999).  "[T]he importance of access to documents prepared

for similar litigation involving the same parties satisf[ies] the commonality requirement of 24(b)."

*Id.* at 474.

Plaintiffs in the Florida and Indiana Actions argue that there is commonality of law and fact

between the California, Florida and Indiana Actions.  All of the cases involve alleged violations of the Fair Debt Collection Practices Act and relate to the collection of certain administrative fees from program participants in bad check diversion programs operated by defendants ACCS, Mealing and Hasney on behalf of local prosecutors.  Moreover, the ACCS programs operate under the imprimatur of enforcement authority but lack any actual oversight whatsoever.  Notwithstanding the close of discovery in the Florida and Indiana Actions, plaintiffs argue that discovery from the California Action is relevant for summary judgment motions recently filed in the Florida Action and, depending on the outcome of submitted cross-motions for summary judgment, for proving damages in the Indiana Action.  Plaintiffs further argue that the courts in Florida and Indiana should determine whether any discovery produced in the California Action is relevant to the collateral cases there and that the close of discovery should not preclude their efforts to conduct further investigation in their respective cases.  Indeed, plaintiffs argue that defendants in the collateral cases have not objected to plaintiffs' use of non-confidential discovery obtained from the California Action.  Plaintiffs next argue that their motion is timely and documents expected to be produced will reflect standardized procedures, form letters and collection efforts of ACCS throughout the country.

Defendants counter that the parties undertook extensive efforts to negotiate the terms of the stipulated protective order in light of defendants' specific concerns that discovery from the California Action would be used in other actions pending against them.  The parties later adopted the model stipulated protective order available from Northern District of California website in part, because the stipulated protective order expressly states that protective materials may be used "only for prosecuting, defending or attempting to settle this litigation."  Defendants further counter that plaintiffs' motion should be denied because allowing them access to discovery does not avoid duplicative discovery, the motion is untimely and defendants risk prejudice.  Moreover, plaintiffs' past efforts to obtain or to use discovery after the discovery cut-off in the Indiana Action have been repeatedly denied and  plaintiffs in the Florida Action have made no efforts to obtain leave for further discovery there.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.      Plaintiffs' Motion to Intervene is Timely

In determining the timeliness of a motion to intervene, the court considers three factors, including (1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay. *See, e.g., Martinez v. City of Oxnard,* 229 F.R.D. 159, 162 (C.D. Cal. 2005).  Here, plaintiffs have moved to intervene prior to the discovery cut-off in the present action.  Indeed, the parties are still conducting discovery. Defendants in the present action are the same defendants as in both of the collateral actions.  As such, defendants are familiar with the discovery already produced in the collateral actions and the discovery expected to be produced in the present action.  Additionally, plaintiffs in the collateral actions have agreed to be bound by the terms of the stipulated protective order here.  Therefore, the risk of prejudice to the defendants here is not substantial.  Finally, the court finds that plaintiffs' motion to intervene is timely.  Although the present action was stayed from October 8, 2002 through September 15, 2005 and discovery was resumed in or around early 2006, plaintiffs expect that defendants will be producing a significant amount discovery shortly.  As recently as February 12, 2008, the court ruled on a discovery motion in the present action and granted plaintiffs' motion to compel further production of documents.  Therefore, plaintiffs have moved to intervene during the course of document production and prior to the discovery cut-off in the present action.  Additionally, defendant ACCS's motion to compel further discovery is scheduled to be heard on April 29, 2008. Accordingly, plaintiffs' motion to intervene is timely.

### B.      A Common Question of Law and Fact Exists Among the Three Actions

The court also finds that the discovery sought by plaintiffs is "roughly" relevant to the collateral proceedings as there is significant overlap of facts, parties and issues among the various actions.  *Foltz v. State Farm,* 331 F.3d at 1132.  (" . . . collateral litigant must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein . . . [and] [s]uch relevance hinges 'on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings.").  First, the present action and the two collateral actions all allege that defendant ACCS violated the Fair Debt Collection Practices Act by charging program participants or prospective program participants certain bank fees

1    regardless of whether merchants had been charged such fees themselves.  Second, plaintiffs are all

2    program participants or prospective program participants in bad check diversion programs and

3    defendants ACCS, Mealing and Hasney are the same defendants in all of the actions.  Regardless of

4    any findings here however, collateral courts in the Florida and Indiana Actions would determine the

5    "ultimate admissibility" of any discovery procured here.  *Foltz v. State Farm,* 331 F.3d at 1133.

6    ("The disputes over the ultimate discoverability of specific materials covered by the protective order

7    must be resolved by the collateral courts.").

8              **C.        Defendants Are Not Prejudiced by Plaintiffs' Motion to Intervene**

9              With respect to any countervailing reliance interest by any of the parties opposing

10   modification of the stipulated protective order, "'reliance will be less with a blanket [protective]

11   order, because it is by nature overinclusive.'" *Foltz v. State Farm,* 331 F.3d at 1132. (internal

12   citations omitted).  The stipulated protective order here is a blanket one and defendants' reliance is

13   less than if there had been a 'good cause' showing to protect against "annoyance, embarrassment,

14   oppression or undue burden or expense" for specific discovery pursuant to Rule 26(c).  *Id.*

15   Therefore, defendants would suffer no significant prejudice if the court allowed plaintiffs to

16   intervene and to modify the stipulated protective order.

17             Notwithstanding the above, discovery has closed in both of the collateral actions.  Therefore,

18   plaintiffs shall be required to obtain leave of the courts in the Indiana and Florida Actions to re-open

19   discovery in those jurisdictions prior to using any discovery obtained from the present action.  In the

20   event, either or both of the collateral actions allow plaintiffs to re-open discovery, plaintiffs in the

21   collateral actions are bound by the terms of the stipulated protective order.  Moreover, any discovery

22   produced pursuant to this order shall be designated "Attorneys' Eyes Only."  Accordingly, plaintiffs'

23   motion to intervene is granted on the condition that plaintiffs first obtain leave of the courts in the

24   Indiana and Florida Actions to re-open discovery.

25   **II.       Other Pending Discovery Issues**

26             **A.        Telephone Recordings**

27             Plaintiffs complain that defendant ACCS has not produced all responsive telephone

28   recordings required by the order dated February 12, 2008.  ("February 12, 2008 Order").  Defendant

1   ACCS responds that it has employed a certain methodology to identify any responsive telephone

2   recordings and that at present, plaintiffs' complaints are merely speculative.  In an effort to address

3   plaintiffs' various concerns however, defendant ACCS offers to allow plaintiffs to depose persons

4   designated as knowledgeable about the methodology used to identify any responsive telephone

5   recordings.  Accordingly, plaintiffs shall depose those persons designated by defendant ACCS in the

6   Northern District of California.

7       **B.      Documents**

8       Plaintiffs further complain that defendant ACCS has destroyed certain documents knowing

9   that the discovery was relevant to the pending action.  For example, plaintiffs allege that prior

10  versions of certain form letters may be important to their motion for class certification.  Defendant

11  ACCS responds that much of the sought-after information is available from other existing sources.

12  Again, in an effort to allay any of plaintiffs' concerns regarding any intentional destruction of

13  documents, defendant ACCS has offered to designate persons to testify about all document

14  destruction issues and policies which affect this action.  Accordingly, plaintiffs shall depose those

15  persons designated by defendant ACCS in the Northern District of California.  The parties shall meet

16  and confer regarding scheduling the specific dates and times of the two proposed depositions

17  identified above.

18                              **CONCLUSION**

19      For the foregoing reasons, plaintiffs' motion to intervene and to modify the January 3, 2007

20  stipulated protective order is granted on the condition that plaintiffs obtain leave from the courts in

21  the Indiana and Florida Actions to re-open discovery.  Any discovery obtained from the California

22  Action for use in other jurisdictions shall be subject to the January 3, 2007 stipulated protective

23  order entered here.  Moreover, any discovery shall be designated "Attorneys' Eyes Only."

24      Plaintiffs shall depose persons designated by defendant ACCS in the Northern District of

25  California on the following topics: (1) methodology for identifying responsive telephone recordings;

26  and (2) all document destruction issues and policies in the present action.  The parties shall meet and

27

28

1    confer to determine mutually convenient dates and times for the proposed depositions.

2         IT IS SO ORDERED.

3    Dated:      *April 11, 2008*

4                                              _____
                                              PATRICIA V. TRUMBULL
5                                              United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28