1
2
3
4
5
6
7
8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12

13  ELENA DEL CAMPO, ET AL.,           )        Case No.: C 01-21151 JW (PVT)
                                       )
14              Plaintiffs,            )        **ORDER GRANTING DEFENDANT AMERICAN**
                                       )        **CORRECTIVE COUNSELING SERVICES,**
15        v.                           )        **INC.'S MOTION TO COMPEL**
                                       )
16  AMERICAN CORRECTIVE                )
    COUNSELING SERVICES, INC., ET AL., )
17                                     )
                Defendants.            )
18  _____ )

19                      **INTRODUCTION**

20          Defendant American Corrective Counseling Services, Inc. ("ACCS") moves to compel

21  further production of documents and further interrogatory responses from plaintiffs Elena Del

22  Campo, Ashorina Medina and Lisa Johnston.  (collectively "plaintiffs").  Additionally, defendant

23  ACCS moves to waive any objections by plaintiff Miriam Campos.  Plaintiffs oppose the motion.

24  On April 29, 2008, the parties appeared for hearing.  Having reviewed the papers and considered the

25  arguments of counsel and for the reasons set forth below, the court grants defendant ACCS's motion

26  to compel.[1]

27

28       _____
            [1]        The holding of this court is limited to the facts and particular circumstances underlying
         the present application.

                      ORDER, *page 1*

1

**BACKGROUND**[2]

2      In the consolidated complaint filed on May 1, 2006, plaintiffs alleged the following claims

3 against defendant ACCS: (1) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692

4 *et seq.*; (2) violations of the Civil Rights Act, 42 U.S.C. § 1983; (3) violations of Sections 1 and 7 of

5 Article I of the California Constitution; (4) a violation of the California Business & Professions

6 Code § 17200 *et seq.*; (5) conversion; (6) fraudulent misrepresentation; and (7) negligent

7 misrepresentation.

8      Don Mealing is the founder and former CEO and President of ACCS and a named co-

9 defendant in the action.  He had previously moved to compel production of plaintiffs' financial

10 information and bank records for the past ten years.  On November 17, 2006, the court granted in

11 part and denied in part co-defendant Mealing's motion to compel.  ("November 17, 2006 Order").

12 In sum, the court found that under the liberal discovery principles of the Federal Rules, the bank

13 records were relevant because the proposed discovery related to at least one of the following three

14 defenses asserted by defendant Mealing: (1) if a plaintiff has a history of writing bad checks, the

15 discovery sought is relevant to show the intent to defraud necessary to commit the crime and a

16 history of bounced checks could support the statement that a bad check writer could be prosecuted;

17 (2) bank records are relevant to show whether plaintiffs received notice of the bad check and the

18 amount of time plaintiff had to make good on the debt before they were contacted by ACCS; and (3)

19 bank records are relevant to the defense that the bad check restitution program should be exempt

20 from the FDCPA.  The court limited the scope of the discovery to five years from 2000 through the

21 end of 2005.  In footnote 2, the court noted that its decision did not bear on the ultimate admissibility

22 of later acquired evidence of plaintiffs' check writing habits.  Rather, plaintiffs' financial

23 information and bank records was discoverable under co-defendant Mealing's broad rights of

24 discovery.

25      Plaintiffs appealed the discovery order to the district court.  On February 8, 2008, the district

26 court reversed the magistrate judge's order and found that a bad check writer's history to defraud is

27

28

---

      [2]      Because the factual background has been set forth at length in the court's prior orders, only an abbreviated recitation of the facts most relevant to this particular motion are included here.

not relevant under the FDCPA because (1) it is the debt collector's knowledge of whether recipients could be prosecuted at the time the letters were sent and (2) the debt collector's intent to take legal action at that time. ("February 8, 2007 Order"). "Whether or not a particular individual could have been prosecuted based on their notice of the bad checks or the amount of time they had to make good on the debt before being contacted by ACCS, is not relevant to the FDCPA issues in this case." The district court also found that since it had previously determined the bad check restitution program was not exempt under the FDCPA as a matter of public policy, plaintiffs' check-writing practices were not relevant on those grounds either.

On September 19, 2006, defendant ACCS served plaintiffs with its first set of document requests and interrogatories. The discovery sought, *inter alia,* information related to personal identifying information, financial information and bank records, correspondence received from the bad check restitution program, prior convictions for violations of section 476a of the California Penal Code (the criminal statute for drawing a bad check with intent to defraud) and crimes of moral turpitude. Plaintiffs Elena Del Campo, Lisa Johnston and Ashorina Medina objected to the discovery requests on the grounds that defendant ACCS was seeking private financial information not reasonably calculated to lead to the discovery of admissible evidence and the discovery sought intended to harass and burden palintiffs. Plaintiff Miriam Campos, however, did not serve any objections or responses whatsoever.

On March 25, 2008, defendant ACCS filed its motion to compel further document requests and further interrogatory responses. On April 9, 2008, plaintiffs filed their opposition and on April 15, 2008, defendant ACCS filed its reply.[3]

On July 7, 2008, plaintiffs' motion for class certification is scheduled to be heard in the district court.

---

[3]     Plaintiffs filed their opposition to the motion to compel approximately nine hours late and moved for an extension of time to file their opposition (after they had already filed their untimely opposition). Defendant ACCS opposed the motion.

In light of a delay which occurred mostly between the hours of midnight and 9AM, the court granted plaintiffs' motion for an extension of time on the grounds that there was no significant prejudice to the defendant.

**DISCUSSION**

**I.      Bank Records and Financial Information**

Document request nos. 1, 2, 3 and 11 and interrogatory no.12 seek discovery related to plaintiffs' financial information and bank records.[4]

**A.      February 8, 2007 Order Does Not Preclude Further Discovery**

As an initial matter, defendant ACCS argues that the February 8, 2007 Order does not preclude further discovery of plaintiffs' financial information because that ruling was a narrow one. Specifically, the district court ruled that plaintiffs' check-writing practices were not relevant to the defenses cited by co-defendant Mealing to alleged violations of the FDCPA.  The order did *not* address whether plaintiffs' financial information and bank records may be relevant to state law claims, other defenses or even plaintiffs' adequacy to act as class representatives.

Plaintiffs counter that the issues in this motion have been addressed by the February 8, 2007 Order and this motion is a thinly-veiled motion for reconsideration.  Even so, defendant ACCS has not met any of the requirements needed to warrant a motion for reconsideration.  "The district court rejected all arguments advance [*sic.*] by Mealing, holding that the plaintiffs' banking history was

---

[4]      Document Request No. 1:
All bank records from August 1, 1996 through July 31, 2006 relating to all bank accounts owned or jointly owned by YOU, or in which YOU were or are an authorized user.

Document Request No. 2:
All bank statements from August 1, 1996 through July 31, 2006 relating to bank accounts owned or jointly owned by YOU, or in which YOU were or are an authorized user.

Document Request No. 3:
All documents from August 1, 1996 through July 31, 2006 relating to insufficient funds, overdraft protection, dishonored checks, returned checks, post-dated checks, or balance owing in connection with any bank account owned or jointly owned by YOU, or in which YOU were or are an authorized user.

Document Request No. 11:
All documents concerning activity in your checking account(s) for the past 10 years.

Interrogatory No. 12:
How many checks have you drawn in the past 10 years which were dishonored?  For each check, state: (a) the date the check was drawn; (b) the amount of the check;(c) the county in which you passed the check; (d) the name of the payee; and (e) the name of the payor.

1  irrelevant to whether ACCS' letters contained false representations, including false representations

2  that the check writer would be prosecuted for failing to fully comply with the demands in ACCS'

3  form letters." Plaintiffs assert that defendant ACCS seeks the information merely to harass and

4  embarrass the plaintiffs.

5       In the February 8, 2007 Order, the district court relied on the FDCPA to deny co-defendant

6  Mealing's motion to compel plaintiffs' bank records.  The court noted that the bank records were not

7  relevant because the FDCPA depends on the debt collector's intent at the time the letters were sent

8  and whether the debt collector intended to take legal action at that time.  Moreover, any arguments

9  relating to relevance based on an exemption to the FDCPA were moot because the court had

10 previously ruled that it was unavailing as a defense.  Given the recent arguments by defendant

11 ACCS that the proposed discovery here is relevant to certain of the state law claims, other defenses

12 and may bear on the adequacy of class representatives which were not referenced in the February 8,

13 2007 Order, defendant ACCS is not precluded from seeking the discovery based on the prior order.

14   **B.    Relevance**

15      Under the Federal Rules of Civil Procedure,

16          [p]arties may obtain discovery regarding any matter, not privileged,
            that is relevant to the claim or defense of any party, . . . Relevant
17          information need not be admissible at the trial if the discovery appears
            reasonably calculated to lead to the discovery of admissible evidence.
18

19 Fed. R. Civ. P. 26(b)(1).  As emphasized in the Advisory Committee's Notes, the language of Rule

20 26(b) "make[s] clear the broad scope of examination and that it may cover not only evidence for use

21 at trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to

22 the discovery of evidence."  Fed. R. Civ. P. 26 advisory committee notes on 1946 amendments.

23      A court, however, has discretion to limit discovery if:

24          (i) the discovery sought is unreasonably cumulative or duplicative, or
            is obtainable from some other source that is more convenient, less
25          burdensome, or less expensive;

26          (ii) the party seeking discovery has had ample opportunity by
            discovery in the action to obtain the information sought; or
27
            (iii) the burden or expense of the proposed discovery outweighs its
28          likely benefit, taking into account the needs of the case, the amount in
            controversy, the parties' resources, the importance of the issues at
            stake in the litigation, and the importance of the proposed discovery in

1    resolving the issues.

2    Fed. R. Civ. P. 26(b)(2).

3                    **1.      Adequacy of Class Representatives**

4        Defendant ACCS argues that plaintiffs' financial information and bank records are relevant

5    in evaluating the honesty and trustworthiness of the class representatives because those

6    characteristics bear on their adequacy to serve as class representatives under Rule 23(a)(4).

7        Plaintiffs contend that the discovery does not bear on their adequacy to act as class

8    representatives.  In referring to the requirements of Rule 23(a)(4), plaintiffs point out that there is

9    not an "implicit rectitude requirement."  Indeed, courts have noted that it is the debt collector's

10   conduct, and not the debtor's conduct, which is at issue.

11        In determining whether to appoint representative parties on behalf of members of a class, the

12   court considers the following: (1) the class is so numerous that joinder of all members is

13   impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses

14   of the representative parties are typical of the claims or defenses of the class; and (4) the

15   representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P.

16   23(a).

17        Although honesty and trustworthiness are not determinative factors in finding that the class

18   representatives will fairly and adequately protect the interests of the class, such factors may be

19   considered by the court. *Savino v. Computer Credit, Inc.,* 164 F. 3d 81, 87 (2d Cir. 1998).  Courts

20   have found that where the proposed class representative "lacks the 'honesty, conscientiousness, and

21   other affirmative personal qualities' required of a class representative," the proposed class

22   representative is not adequate.  *Hall v. National Recovery Sys., Inc.,* Not Reported in F.Supp., 1996

23   WL 467512 (proposed class representative had been adjudicated guilty with respect to several

24   worthless checks and falsely testified at deposition).  *See also Weisman v. Darneille,* 78 FRD 669

25   (S.D.N.Y. 1978)(proposed class representative who had been previously convicted on statute he

26   sought to rely and falsely testified at deposition was not adequate).

27        Another court has reasoned:

28        adequacy of representation is perhaps the most significant of the prerequisites to a
          determination of class certification.  Adequacy of representation is the key to the

1    integrity of class action litigation, not only in pragmatic terms of the efficiency and
     thoroughness of the proceedings, but far more importantly in relation to the fair and
2    just resolution of the dispute. . . . [T]he Court must be especially sensitive to insuring
     that the due process rights of the absent parties are protected, since they will be bound
3    by any final judgment.  Any infirmities of representation will thus result in a defect of
     constitutional dimensions.

4

5    *Folding Cartons, Inc. v. American Can Co.,* 79 FRD 698, 701 (N.D. Ill. 1978).

6          Indeed, some of the cases cited by plaintiffs note that, "courts have looked to factors such as

7    [the proposed class representatives'] honesty, conscientiousness, and other affirmative personal

8    qualities." *Jane B. v. New York City Dept. Of Social Svcs.,* 117 FRD 64, 70-71 (S.D.N.Y. 1987).

9    Moreover, "it is self-evident that a Court must be concerned with the integrity of individuals it

10   designates as representatives for a large class of plaintiffs." *In re Computer Memories Securities*

11   *Litig.,* 111 FRD 675, 682 (N.D. Ca. 1986).  However, "questions of integrity are but one factor the

12   Court must consider in making the adequacy determination." *Id.*   A prior conviction is not per se

13   disqualifying.  *Byes v. Telecheck Recovery Services, Inc.,* 173 FRD 421, 427 (E.D. La.

14   1997)(internal citations omitted).  *See also Walters v. Reno,* 145 F. 3d 1032, 1046 (9th Cir.

15   1998)(potential class representatives in class action against INS not precluded from representing

16   class on the basis that they committed document fraud).  "Generally, unsavory character or

17   credibility problems will not justify a finding of inadequacy unless related to the issues in the

18   litigation." *Id.*   That a proposed class representative may have written several bad checks "does not

19   make her incapable of fairly and adequately protecting the interests of the class." *Blair v. Equifax*

20   *Check Svcs., Inc.,* Not Reported in F.Supp.2d, 1999 WL 116225 *3.  The same court did note,

21   however, that the history of financial responsibility of the proposed class representative did have

22   "some remote relevance." *Id.*

23         As such, the discovery is relevant and defendant ACCS's motion to compel document

24   request nos. 1, 2 , 3 and interrogatory no. 12 is granted in part and denied in part.  The discovery is

25   limited in scope to five years from 2000 through 2005.

26                    **2.    State Law Claims**

27         Defendant ACCS next argues that the discovery is relevant to certain of its defenses to the

28   state law claims asserted in the consolidated complaint.  For example, unclean hands and failure to

1  mitigate are defenses to California's unfair competition law.  Also, there are equitable defenses to

2  conversion.

3         As discussed above however, the discovery sought is relevant to whether class

4  representatives will adequately represent the class.  Therefore, the court need not determine whether

5  the information is relevant to any defenses to state law claims.

6         **C.      Privacy**

7         Defendant ACCS argues that any objections based on a right to privacy lack

8  merit.  Any concerns regarding plaintiffs' privacy should be assuaged by the stipulated protective

9  order which has been entered by the court.  Indeed, recorded telephone conversations produced by

10 the defendant were rife with sensitive financial information yet plaintiffs insisted that the

11 information would be designated "Confidential" and remain protected pursuant to the stipulated

12 protective order.

13        As discussed in paragraph IIB of the November 17, 2006 Order, "[a]lthough there is no

14 federal common law privilege akin to the right of privacy, federal courts generally treat financial

15 information as private."  *citing Charles O. Bradley Trust v. Zenith Capital LLC,* 2006 WL 798991

16 (N.D. Cal. Mar. 24, 2006); *Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995)("Federal

17 courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to

18 discovery requests.").

19        Having found that the discovery is relevant, plaintiffs' privacy concerns are outweighed here.

20 Pursuant to the stipulated protective order however, plaintiffs may elect to designate the discovery to

21 minimize any intrusion.

22 **II.     Prior Misdemeanor Convictions**

23        Interrogatory no. 7 relates to misdemeanor convictions for drawing a bad check with intent to

24 defraud.

25        As noted above, courts have found that the honesty and trustworthiness of proposed class

26 representatives are factors in determining their adequacy to represent the class.  Prior convictions for

27 drawing a bad check with intent to defraud therefore is relevant especially since it pertains to

28 purported acts at issue here.  Therefore, defendant's motion to compel is granted.  To avoid

1  remoteness, the scope is limited to crimes committed within the past ten years.

2  **III.     Moral Turpitude**

3       Interrogatory no. 8 inquires into whether plaintiffs have ever been convicted of a crime

4  involving moral turpitude.

5       Crimes of moral turpitude also potentially bear on the honesty and trustworthiness of

6  proposed class representatives.  Therefore, the discovery is relevant.  Accordingly, defendant

7  ACCS's motion to compel interrogatory no. 8 is granted.  The scope of the discovery is limited to

8  the past ten years.

9  **IV.     Prior Bad Checks**

10       Interrogatory no. 12 inquires into any prior bad checks drawn by plaintiffs in the past 10

11 years, including the date the check was drawn, the amount of the check, the name of the payee and

12 the name of the payor.

13       As noted above, whether plaintiffs may have drawn bad checks in the past does not preclude

14 the possibility that they may adequately serve as class representatives.   Indeed, not all dishonored

15 checks are criminal.  *Federal Trade Commission v. Check Investors, Inc.,* 502 F.3d 159, 169 (3rd

16 Cir. 2007) (not all dishonored checks are criminal).  Nonetheless, the discovery does bear on the

17 potential adequacy of the class representatives.  Accordingly, defendant ACCS's motion to compel

18 interrogatory no. 12 is granted.  The scope is limited to five years from 2000 through 2005.

19 **V.     Plaintiff Miriam Campos Has Waived Her Objections**

20       Defendant ACCS also moves to waive any objections by plaintiff Miriam Campos. On

21 September 19, 2006, defendant ACCS served plaintiff Miriam Campos with requests for production

22 and written interrogatories.  To date, she has not served any written responses.

23       Plaintiffs state that she has lost contact with counsel and they seek to defer any ruling

24 pending a determination of whether plaintiff Miriam Campos will continue as a plaintiff in the

25 matter.  Alternatively, plaintiffs propose that the court issue an order to show cause to plaintiff

26 Miriam Campos on why she should not be compelled to serve discovery.  In the event, she fails to

27 appear, the court may dismiss her claims pursuant to Rule 37(b)(2)(A)(v).

28       A responding party must serve a written response to discovery requests within 30 days of

1   being served unless stipulated otherwise or ordered by the court.  Fed R. Civ. P. 33(b)(2) and

2   34(b)(2)(A).  A failure to timely object waives any objections.  *See, e.g.,* Fed R. Civ. P. 33(b)(4).

3            Plaintiff Miriam Campos has not served any written responses whatsoever.  Accordingly, she

4   has waived all objections.

5                                      **CONCLUSION**

6            For the foregoing reasons, defendant ACCS's motion to compel is granted.  Plaintiffs

7   (including plaintiff Lisa Johnston) shall produce the discovery set forth above no later than May 23,

8   2008.  Plaintiff Miriam Campos has waived all objections.

9            IT IS SO ORDERED.

10  Dated: *May 9, 2008*

11                                      _____
                                        PATRICIA V. TRUMBULL
12                                      United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28