1   Paul Arons, State Bar #84970
2   Sharon Grace, State Bar #83527
    LAW OFFICE OF PAUL ARONS
3   685 Spring Street, #104
    Friday Harbor, WA 98250
4   Tel:  (360) 378-6496
    Fax: (360) 378-6498
5   lopa@rockisland.com

6
    Deepak Gupta (*pro hac vice*)
7   PUBLIC CITIZEN LITIGATION GROUP
    1600 20th Street, NW
8   Washington, DC 20009
    Tel:  (202) 588-1000
9

10  Attorneys for Plaintiffs

                    UNITED STATES DISTRICT COURT
11          FOR THE NORTHERN DISTRICT OF CALIFORNIA
                          SAN JOSE DIVISION
12

13

| | |
|---|---|
| ELENA DEL CAMPO, et al. on behalf of themselves and all others similarly situated, | Civ. No.  C01-21151 JW |
| | CLASS ACTION |
| Plaintiffs, | PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; SUPPORTING MEMORANDUM |
| v. | |
| AMERICAN CORRECTIVE COUNSELING SERVICES, INC., et al., | Date: July 7, 2008 Time: 9:00 a.m. Courtroom 8 |
| Defendants. | |
| AND CONSOLIDATED ACTION | Civ No.  C03-2611 JW |

Page

# TABLE OF CONTENTS

**INTRODUCTION** ......... 1

**ISSUES TO BE DECIDED** ......... 3

**FACTS**

    A.  Facts Relating to Defendants ......... 3

    B.  Facts Relating to Plaintiffs ......... 5

    C.  Facts Common to Putative Class Members ......... 6

**STATUTORY FRAMEWORK** ......... 6

    A.  The Federal Fair Debt Collection Practices Act,
        15 U.S.C. §§1692 et seq. ......... 6

    B.  California's Unlawful Business Practices Act,
        Bus. & Prof. Code §§17200 et seq. ......... 7

    C.  California's Check Diversion Statute,
        Penal Code §§1001.60 et seq. ......... 8

**THE PROPOSED CLASSES** ......... 9

**ARGUMENT** ......... 9

**I.  THE PROPOSED CLASSES MEET THE REQUIREMENTS
    FOR CERTIFICATION** ......... 9

    A.  Standards for Class Certification ......... 9

    B.  Plaintiffs Satisfy the Requirements Set Forth in Rule 23(a) ......... 10

        1.  Each Class or Subclass Is so Numerous that
            Joinder of all Parties Is Impracticable ......... 10

        2.  There Are Questions of Law and Fact Common to the
            Class and Subclasses ......... 11

        3.  Plaintiffs' Claims Are Typical of the Claims of the Class ......... 15

        4.  Named Plaintiffs and Class Counsel Will Fairly and
            Adequately Represent the Interests of the Class
            and Subclasses ......... 16

Page

II. PLAINTIFFS REQUEST THE COURT TO CERTIFY A
    HYBRID CLASS ACTION, WITH THE ISSUES OF
    INJUNCTIVE AND DECLARATORY RELIEF, LIABILITY
    AND STATUTORY DAMAGES CERTIFIED PURSUANT TO
    RULE 23(b)(2), AND ACTUAL DAMAGES CERTIFIED
    PURSUANT TO RULE 23(b)(3)                                    18

    A. The Issues of Injunctive and Declaratory Relief,
       Liability and Statutory Damages May Be Certified
       uder Rule 23(b)(2)                                        18

    B. Plaintiffs Meet the Requirements for Rule 23(b)(3)
       Certification Limited to Class Members Who Have
       Actual Damages                                            21

       1. Common Questions of Law or Fact Predominate            21

       2. A Class Action Is Superior to other Available
          Methods to Resolve this Controversy                    22

X. CONCLUSION                                                    23

Page

# TABLE OF AUTHORITIES

**Federal Cases**

*Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541 (N.D.Cal. 2005)     12, 16, 18, 21

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)     10, 17, 22

*Amone v. Aveiro*, 226 F.R.D. 677 (D.Haw. 2005)     11

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)     12, 16

*Arnold v. United Artists Theater Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994)     19, 20

*Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982)     7

*Ballard v. Equifax Check Servs.,* 186 F.R.D. 589 (E.D.Cal. 1999)     12, 21, 23

*Betts v. Reliance Collection Agency,* 659 F.2d 1000, 1005 (9th Cir. 1981)     10

*Borcherdine-Dittloff v. Transworld Systems, Inc.*, 185 F.R.D. 558 (W.D. Wis. 1999)     18

*Bracamonte v. Eskanos & Adler,* 2004 U.S. Dist. LEXIS 8520 (N.D.Cal. 2004)     13

*Cacace v. Lucas*, 775 F.Supp. 502 (D.Conn. 1990)     7

*Del Campo v. Kennedy*, 491 F.Supp.2d  891, 903 (N.D.Cal. 2006)     13

*Del Campo v. Kennedy*, 2007 U.S. Dist. LEXIS 12387, (February 8, 2007)     14

*Ditty v. CheckRite* 182 F.R.D. 639, 642 (D. Utah 1998)     18

*Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (N.D.Cal. 2003)     11

*East Texas Motor Freight System Inc. v. Rodriguez*, 421 U.S. 395, 52 L.Ed.2d 453, 97 S.Ct. 1891 (1977)     17

*Evans v. United States Pipe & Foundry*, 696 F.2d 925 (11th Cir. 1983)     11

*Gammon v. G.C. Services Ltd. Partnership*, 162 F.R.D. 313 (N.D.Ill. 1995)     19

*Gay v. Waiters and Dairy Lunchmen's Union*, 549 F.2d. 1330 (9th Cir. 1977)     10

| | **Page** |
|---|---|
| *General Tel. Co. v. EEOC*,  446 U.S. 318, 330, 64 L.Ed.2d 319, 100 S.Ct. 1698 (1980) | 11 |
| *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 149, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) | 16, 19 |
| *Gradisher v. Check Enforcement Unit, Inc*., 203 F.R.D. 271 (W.D. Mich. 2001) | 3, 14 |
| *Guerra v. Sutton,* 783 F.2d 1371 (9th Cir. 1986) | 19 |
| *Hamilton v. Am. Corrective Counseling Serv*., 2007 WL 541817, 2007 U.S. Dist. LEXIS 11488 (N.D.Ind., Feb. 14, 2007) | 2, 10, 18, 23 |
| *Hanlon v. Chrysler Corp, supra*, 150 F.3d 1011 (9th Cir. 1998) | 12, 13, 17 |
| *Hanon v. Dataproducts Corp*., 976 F.2d 497 (9th Cir. 1992) | 16 |
| *Haynes v. Logan Furniture Mart. Inc*., 503 F.2d 1161, 1165 (7th Cir. 1974) | 23 |
| *Hunt v. Check Recovery Services,* 241 F.R.D. 505, (N.D.Cal. 2007) | 18, 21 |
| *Irwin v. Mascott,* 96 F.Supp.2d 968 (N.D.Cal. 1999) | 12, 18, 21 |
| *Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998) | 12, 16 |
| *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F.Supp. 278 (C.D.Cal. 1992) | 7 |
| *Liles v. Am. Corrective Counseling Servs.,*  131 F.Supp.2d 1114 (S.D. Iowa 2001) | 14 |
| *Liles v. American Corrective Counseling Services, Inc.,* 231 F.R.D. 565 (S.D.Iowa 2005) | 10, 22, 23 |
| *Littledove v. JBC & Assocs.,* 2001 U.S. Dist. LEXIS 139 (E.D.Cal. Jan. 11, 2001) | 18 |
| *Mantolet v. Bolger,* 767 F.2d 1416 (9th Cir. 1985) | 10, 21 |
| *Molski v. Gleich,* 318 F.3d 937, 950 (9th Cir. 2003) | 19 |
| *Moody v. Albemarle Paper Company,* 474 F.2d 134 (4th Cir. 1973) | |
| *Newman v. Checkrite, California Inc.*, 912 F.Supp. 1354 (E.D.Cal. 1995) | 7, 18 |
| *Peterson v. Wells Fargo Bank,* 556 F.Supp. 1100 (N.D.Cal. 1981) | 7 |
| *Probe v. State Teachers' Retirement System,* 780 F.2d 776 (9th Cir. 1986) | 19 |

|  |  | Page |
|---|---|---|
| 1 | *Schwarm v. Craighead*, 233 F.R.D. 655 (E.D.Cal. 2006) | 2, 3, 10, 12, 16. 21, 23 |
| 2 | *Schwarm v. Craighead,* ___ F.Supp.2d ___. | |
|  | 2008 U.S. Dist. LEXIS 36622, 2008 WL 1970341 | |
| 3 | (E.D.Cal. May 2, 2008) | 3, 12 |
| 4 | *Simon v. World Omni Leasing*, 146 F.R.D. 197 (S.D.Ala. 1992) | 22 |
| 5 | *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) | 18 |
| 6 | *U.S. v. Nat'l Fin. Servs.,* 98 F.3d 131, 137-39 (4th Cir. 1996) | 14 |
| 7 | *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) | 10 |
| 8 | | |
| 9 | **State Cases** | |
| 10 | *Barquis v. Merchants Collection Ass'n of Oakland Inc.*, | |
| 11 | 7 Cal.3d 94, 101 Cal.Rptr. 744 (1972) | 7 |
| 12 | *Fletcher v. Security Pacific National Bank*, 23 Cal.3d 442, 454, | |
|  | 153 Cal.Rptr. 28 (1979 | 8 |
| 13 | *People v. McKale*, 25 Cal.3d 626, 159 Cal.Rptr. 811 (1979). | 7 |
| 14 | | |
| 15 | **Federal Statutes** | |
| 16 | Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. | 7 |
| 17 | 15 U.S.C. section 1692(e) | 7, 15 |
| 18 | 15 U.S.C.§ 1692e(5) | 14 |
| 19 | 15 U.S.C.§ 1692e(11) | 3 |
| 20 | 15 U.S.C. §1692f | 7 |
| 21 | 15 U.S.C. §1692g | 3, 7, 15, 16 |
| 22 | 15 U.S.C. sections 1692k(a) | 10 |
| 23 | 15 U.S.C. sections 1692k(b) | 10 |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

|  |  | Page |
|---|---|---|
| **Federal Rules** | | |
| Rule 23(a). | | 10, 24 |
| Rule 23(a)(1). | | 10-12 |
| Rule 23(a)(2). | | 10, 12 |
| Rule 23(a)(3). | | 10, 17 |
| Rule 23(a)(4). | | 10, 18 |
| Fed.R.Civ.P. 23(b) | | 10 |
| Fed.R.Civ.P. 23(b)(2) | | 19-21, 24 |
| Fed.R.Civ.P. 23(b)(3) | | 22, 24 |
| | | |
| **California Statutes** | | |
| Unlawful Business Practices Act, Bus. & Prof. Code §§17200 et seq. | | 7 |
| Bus. & Prof. Code §§ 17203 | | 7 |
| Bus. & Prof. Code §§ 17204 | | 7 |
| Government Code § 7480(b) | | 2 |
| Penal Code § 476a | | 8 |
| Bad Check Diversion Act, Penal Code §§ 1001.60-1001.67 | | 1, 8, 12 |
| Penal Code § 1001.60 | | 1, 8 |
| Penal Code § 1001.61 | | 8 |
| Penal Code § 1001.62 | | 8 |
| Penal Code § 1001.64(a) | | 9 |
| Penal Code § 1001.64(b) | | 9 |
| Penal Code § 1001.64(c) | | 9 |
| Penal Code § 1001.65(a) | | 9 |
| Penal Code § 1001.65(b) | | 9 |

                                                                                    **Page**

**Miscellaneous Authorities**

Newberg and Conte, 1 *Newburg on Class Actions* § 3.6 (4th ed. 2002)        11

3 *Newberg on Class Actions* §7.22                                          11

W. Schwarzer, *Federal Civil Procedure Before Trial,* § 10:5 (2006)         19

Wright, Miller & Kane, 7AA *Federal Practice and Procedure*
§ 1784.1, at 348 (3d ed. 2005)                                              20

To all parties and their attorneys of record:  Named plaintiffs Elena del Campo, Ashorina Medina, Lisa Johnston and Lois Artz  will move the Court for class certification on July 7, 2008 at 9:00 a.m., in Courtroom 8 of the United States District Court, San Jose Division, located at 280 S. First St., San Jose, CA.

Plaintiffs request the Court to certify this lawsuit to proceed as a hybrid class action pursuant to Fed.R.Civ.P., Rules 23(b)(2) and 23(b)(3), with the issues of declaratory and injunctive relief, liability and statutory damages certified under Rule 23(b)(2), and the issue of actual damages certified under Rule 23(b)(3).

## INTRODUCTION

This is a putative class action challenging the debt-collection practices of American Corrective Counseling Services, Inc. (ACCS) in connection with its operation of  proprietary "Bad Check Diversion Programs."  The suit is brought under the Fair Debt Collection Practices Act (FDCPA), the California Unfair Business Practices Act, the common law, and the right to privacy under the California Constitution.  ACCS, a private corporation, contracts with over two dozen district attorneys (DA's) throughout California, to operate check collection programs. In its debt collection conduct ACCS operates much the same as any other debt collector, except that ACCS uses the authority of the district attorneys as a hammer.  It is ACCS' conduct of its collection programs that has generated this litigation.  California criminalizes writing checks "willfully, with intent to defraud" and with knowledge that insufficient funds are available.  Cal. Penal Code § 476a(a).  The California legislature has authorized district attorneys to create bad check diversion programs that "may be conducted by the [DA] or by a private entity under contract."  Cal. Penal Code §§ 1001.60-1001.67, §1001.60.  ACCS business is the promotion and operation of these programs, and its income comes from the fees it charges check writers.  ACCS terms its collection operation a "check restitution" program and shares a small portion of the fees it collects with the DA in each county in which it contracts.

Once the DA approves the ACCS' form letters, check intake criteria and prosecution review criteria, ACCS runs virtually every aspect of the check program.  –Major merchants, such

1   as Target and Safeway,  and other debt collectors send ACCS batches of unpaid checks for

2   collection.  ACCS inputs the data and generates standard form letters sent to check writers.

3          ACCS collects checks aggressively and markets its program as having the "DA Brand."

4   When Elena del Campo wrote a $95.02 check $ that did not clear, ACCS sent her a letter entitled

5   "Official Notice," on the Santa Clara County DA's letterhead, purporting to be from the DA's

6   office, warning that his office had received "an INCIDENT REPORT *alleging that you have*

7   *violated Penal Code 476(a) of the California State Statute: Passing a Worthless Check.*"

8   *Emphasis in original*.  It claimed that "*YOU MAY AVOID A COURT APPEARANCE if you agree*

9   *to enroll* [in the bad check program]" (*emphasis in original*) and demanded, after adding in

10  ACCS' various fees, $265.02 in payment.  Letters and scripted phone calls continue until ACCS

11  obtains full payment, or terminates its collection effort.  For many DA's, after collection efforts

12  have been exhausted, ACCS  reviews the check to determine if the check meets narrowly defined

13  criteria for sending the check writer's file to the prosecutor.  During this process, ACCS may

14  request the check writer's bank records purportedly pursuant to Cal. Gov. Code § 7480(b).[1]

15         Four courts that have considered the question of class certification in cases against ACCS

16  and similar "check diversion" companies—cases that are materially indistinguishable from this

17  one—have held that class certification is appropriate.  *See Hamilton v. American Corrective*

18  *Counseling Services, Inc*., 2007 WL 541817 (N.D. Ind. 2007); *See Schwarm v. Craighead*, 233

19  F.R.D. 655 (E.D. Cal. 2006); *Liles v. American Corrective Counseling Services, Inc*., 231 F.R.D.

---

22         1.  Gov. Code § 7480(b) provides in relevant part that certain financial records shall be furnished:

23         When any *police or sheriff's department or district attorney in this state certifies* to a bank, credit union, or savings association in writing that a crime report has been filed that involves the alleged fraudulent use of drafts, checks, access cards, or other orders drawn upon any bank, credit union, or savings association in this state, the *police or sheriff's department or district attorney may request* a bank, credit union, or savings association to furnish, and a bank, credit union, or savings association shall furnish, a statement setting forth the following information with respect to a customer account specified by the police or sheriff's department or district attorney for a period 30 days prior to, and up to 30 days following, the date of occurrence of the alleged illegal act involving the account: . . .. *Emphasis added.*

1 | 565 (S.D. Iowa 2005) ; *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271 (W.D. Mich.

2 | 2001[2]

3 | ### ISSUES TO BE DECIDED

4 | Whether the Court should grant hybrid class certification under Fed.R.Civ.P., Rule

5 | 23(b)(2) on the issues of declaratory and injunctive relief, liability, and statutory damages, and

6 | certify the issue of actual damages under Fed.R.Civ.P., Rule 23(b)(3).

7 | ### FACTS

8 | **A. Facts Relating to Defendants**

9 | ACCS' promotes and operates a check restitution programs in states throughout the

10 | country, including California.  It uses standardized demand letters and uniform operating

11 | procedures.  In California ACCS' letters are printed on district attorney letterhead, and  ACCS

12 | seeks the same categories of fees from check writers.  In its letters, ACCS states that the check

13 | writer's two basic options are to "participate" in the program, or face prosecution. None of the

14 | letters  contain  language mandated by the Fair Debt Collection Practices Act, 15 U.S.C.

15 | §§1692e(11) and 1692g.  *See* Exhibits 1 through 15 to this motion, the letters sent to named

16 | plaintiffs, and Exhibit 16-A through 16-C, a collection of initial notices produced by ACCS in

17 | this action.

18 | In its initial "Official Notice," ACCS demands the check amount, a $35.00 "admin fee", a

19 | "program fee" ranging from $75.00 to $175.00 depending on the jurisdiction and time period

20 | when the letter was sent, and a "returned item" fee of $10.00.[3]  *See for example,* Exhibits 1, 6, 9,

21 | and 15.[4] Each initial "Official Notice" warns that a report has been made accusing the recipient

22 |

23 |

24 | 2.  In *Schwarm,* where the debt collector operated a restitution program very similar to the ACCS program, the court recently granted partial summary judgment against the defendant. *Schwarm v. Craighead,* ___ F.Supp.2d ___, 2008 U.S. Dist. LEXIS 36622, 2008 WL 1970341 (E.D.Cal. May 2, 2008).

25 |

26 | 3. Starting in 2007,  bank fees were no longer requested in some counties.

27 | 3. The Exhibits to the Amended Consolidated Complaint ["Cons. Cmplt."] accompany this motion with the same exhibit numbers for the Court's convenience.

28 |

1    of violating Penal Code §476a, passing a worthless check, and threatens the recipient with court

2    proceedings, and a criminal record, unless the check writer pays the check amount, all fees, and

3    attends the ACCS class. If the recipient fails to accede to pay, ACCS sends follow up letters

4    stating the unless the check writer complies the DA will file a "report" in municipal court

5    (Exhibit 2), or pursue criminal prosecution (Exhibit 3, 7, 8 and 10), or arrest and prosecution

6    (Exhibit 5 and 13); or that the DA is now initiating prosecution proceedings against the recipient

7    (Exhibit 14.)  None of ACCS' letters advise the recipient that the letter is from a debt collector

8    who is attempting to collect a debt.  ACCS follows up its letter by having ACCS' collectors

9    begin calling the check writer.  Exhibit 18, ACCS Operational Flow Chart.  If the check fits

10   within prosecution criteria, ACCS requests the check writer's bank records.  *See* Exhibit 19,

11   ACCS "REQUEST FOR INFORMATION" form letter, requesting plaintiff Elena del Campo's

12   bank records; ACCS Response to del Campo Interrogatory No. 19, dated 3/17/08;[5] and Exhibit

13   18, ACCS Operational Flow Chart.

14          According to ACCS, defendants attempted to collect 909,646 checks written in California

15   from 1998 through 2007.  Exhibit 17, ACCS Response to del Campo Interrogatory No. 31.

16   During the same period California check writers paid more than the face amount of 340,768 of

17   these checks, while 288,755 people paid the class fee that defendants demanded on these checks.

18   *Id*., ACCS Response to del Campo Interrogatory Nos. 32 and 33.

19          Plaintiffs allege that defendant Don R. Mealing was employed as the president of ACCS

20   through November 2004.  Amended Consolidated Complaint, filed 12/22/06 (Cons. Cmplt.), ¶ 5.

21   He founded and controlled ACCS and actively participated in the operations of ACCS.  *Id*.

22   Mealing created ACCS to operate bad check restitution programs in California and throughout

23   the United States; and that he designed, developed, and implemented the bad ACCS check

24   restitution program.  *Id*.  Mealing, acting in concert with defendant Lynn R. Hasney, created the

25   other corporate defendants in this action in furtherance of ACCS' check restitution business.  *Id*.

26   _____

27          5.  The relevant ACCS' interrogatory answers accompany this motion as Exhibit 17.

28

1    Mealing and defendant Lynn R. Hasney have had ultimate authority to adopt, approve and

2    modify the business practices of the corporate defendants.  *Id.*  Defendant Lynn R. Hasney is or

3    was employed by ACCS as executive vice president of operations, and that she actively

4    participated in the operations of ACCS through November 2004.  *Id.* ¶ 6.  Each of the other

5    corporate or partnership defendants—Inc. Fundamentals, Fundamental Performance Strategies,

6    Fulfillment Unlimited, Inc., and ACCS Administration—are owned and controlled by defendants

7    Mealing and/or Hasney with their principal place of business located in San Clemente,

8    California.  *Id.* ¶ 7.  These entities are alter egos of defendants Hasney or Mealing, and were

9    engaged in the operation of the collection business at issue in this lawsuit. *Id.* ¶¶ 8-10.[6]

10    **B.  Facts Relating to Plaintiffs**

11    The plaintiffs allege that Elena del Campo, Ashorina Medina, Lisa Johnston and Lois

12    Artz each wrote at least one check for personal, family or household purposes, that was

13    dishonored, and ACCS mailed each of them dunning letters on district attorney letterhead that

14    demanded the check amount, a $35.00 "admin fee," a $10.00 "returned item fee," a "program

15    fee" ranging from $125.00 to $140.00.  Cons. Cmplt. ¶¶ 28, 37-38, 43, 54, 63-64; Exhibits 1, 11

16    and 15.  ACCS' demand letters threatened each plaintiff with criminal prosecution, court

17    appearances, and criminal records, among other things, if they failed to accede to ACCS'

18    demands.  The initial letter failed to advise plaintiffs of their rights under the FDCPA, and none

19    of the letters advised plaintiffs that ACCS is a debt collector attempting to collect a debt and that

20    any information obtained will be used for that purpose.

21    As alleged in the Consolidated Complaint, in response to the ACCS  letters she received

22    in 2001,  plaintiff del Campo mailed payment for the check amount only, which ACCS accepted

23    as a partial payment.  Cons. Cmplt. ¶31.   ACCS remitted half of del Campo's payment to the

24    merchant and applied half to its own fees.  *Id.* ¶32.  Ashorina Medina paid $210 to ACCS, which

25    ACCS accepted as partial payment, and remitted half to the merchant and applied half to its own

26    _____

27    6. With the exception of Inc. Fundamentals, these business entities ceased to exist after
defendants Hasney and Mealing sold ACCS to new owners in November, 2004.

28

fees. *Id*. ¶ 46-47.  Lisa Johnston made a series of partial payments which ACCS applied half to its own fees and remitted half to the merchant. *Id*. ¶¶ 56-58.  Lois Artz paid ACCS the check amount, plus all fees ACCS demanded,  and completed the financial management course. *Id*. ¶¶ 65-67.

### C.  Facts Common to Putative Class Members

ACCS has mailed or will have mailed each putative class member at least one form dunning letter printed on district attorney letterhead that is the same as or substantially similar to the letters ACCS mailed to named plaintiffs.  In its first letter, entitled "Official Notice" ACCS has demanded or will demand payment of a dishonored check, plus a "program fee," an "admin fee," and a "returned item fee."[7]  ACCS also has a standard practice of imposing other fees, including, but not limited to, fees for permitting the class member to make payments, for paying late, or for failure to attend class when scheduled.  ACCS' letters state that paying its fees, and attending its diversion class, is the way to avoid criminal prosecution  ACCS' letters do not advise each class member that ACCS is a debt collector seeking to collect a debt, and that all information obtained will be used for that purpose.  ACCS' letters have failed or, unless modified, will fail to advise class members of their rights under the FDCPA.  Hundreds of thousands of  class members have paid or will pay fees that plaintiffs have alleged are unlawful  Thus, each potential class member has been or will be the victim of ACCS' alleged federal FDCPA violations, state unlawful business practices under Cal. Bus. & Prof. Code sections 17200 et seq., and may be victims of defendants' negligent or fraudulent representations.  By obtaining the class member's private banking information unlawfully, ACCS violates the class members' state constitutional right to privacy.

### STATUTORY FRAMEWORK

### A.  The Federal Fair Debt Collection Practices Act, 15 U.S.C. §§1692 et seq.

Congress enacted the FDCPA, in part, "to eliminate abusive debt collection practices by

---

7.  ACCS revised its letters in 2007.  It appears that in some counties, the "Official Notice" no longer includes a returned item fee.  *See* Exhibit 16.

1   debt collectors."  15 U.S.C. § 1692(e).  The Act applies to protect consumers from unscrupulous

2   collectors, whether or not there is a valid debt.  *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777

3   (9th Cir. 1982).  If a consumer establishes one violation, there is  liability under the FDCPA.

4   *Cacace v. Lucas*, 775 F.Supp. 502, 505 (D.Conn. 1990).  Specifically in relation to this case, the

5   FDCPA prohibits debt collectors from making false representations in their collection demands,

6   prohibits collecting charges in excess of the face amount of the check, in the absence of express

7   contractual or statutory authorization, and requires certain warnings or advisements of rights in

8   dunning letters.  15 U.S.C. §§ 1692e, f and g.  In the absence of agreement, whether charges are

9   permissible within the meaning of the FDCPA turns on state law.  *Newman v. Checkrite,*

10  *California Inc.*, 912 F.Supp. 1354, 1367 (E.D.Cal. 1995).

11      **B.  California's Unlawful Business Practices Act, Bus. & Prof. Code §§17200 et seq.**

12          The California Unlawful Business Practices Act prohibits unfair competition.  Bus. &

13  Prof. Code §§ 17200 et seq.  Unfair competition encompasses "unlawful business practices,"

14  which includes anything that can properly be called a business practice and at the same time is

15  forbidden by law.  *Barquis v. Merchants Collection Ass'n of Oakland Inc.*, 7 Cal.3d 94, 101

16  Cal.Rptr. 744 (1972).  It includes all wrongful business conduct in whatever context such activity

17  may occur.  *People v. McKale*, 25 Cal.3d 626, 159 Cal.Rptr. 811 (1979).  If plaintiffs show that

18  defendant violates a federal or state statute as a business practice, plaintiffs prove an unlawful

19  practice under Sections 17200 et seq.  *Peterson v. Wells Fargo Bank*, 556 F.Supp. 1100, 1104-

20  1105 (N.D.Cal. 1981).  *See also, Kelley Blue Book v. Car-Smarts, Inc.*, 802 F.Supp. 278, 288-

21  289 (C.D.Cal. 1992).  Debt collection practices that violate the FDCPA are unlawful business

22  practices.  *Newman v. Checkrite*, 912 F.Supp. at 1375 n.31.

23          Injunctive relief is available under Bus. & Prof. Code §§ 17203 and 17204 for violations

24  of the FDCPA of the type alleged in this action, *Newman v. Checkrite*, 912 F.Supp. at 1375.

25  Under section 17203, the Court has the discretion to order class certification.  *Fletcher v.*

26  *Security Pacific National Bank*, 23 Cal.3d 442, 454, 153 Cal.Rptr. 28 (1979).

27

28

1    **C.  California's Check Diversion Statute, Penal Code §§1001.60 et seq.**

2         Defendants identify Penal Code §§ 1001.60, *et seq.*, the Bad Check Diversion Act

3    ["BCDA"], as authority for the restitution program they operate, including the fees they charge

4    and the demands they make.  To deal with the problem of *criminal* bad check writing the

5    California Legislature authorized the creation of a bad check diversion program within each

6    county's district attorney's office, but only "[u]pon the adoption or a resolution by the board of

7    supervisors declaring that *there are sufficient funds available to fund the program*."  Penal Code

8    § 1001.60.  The bad check diversion programs apply only to persons who write bad checks

9    within the meaning of Section 476a—that is those persons having the required specific intent to

10   defraud the merchant at the time the check is written.  *Id.*

11        To protect check writers from being referred to criminal diversion erroneously, the

12   California the Legislature has enacted safeguards.  The Bad Check Diversion Act sets forth clear

13   statutory prerequisites.  On receipt of a bad check case the district attorney has the sole authority

14   to refer the case to a diversion program, after he or she determines that "the case is one which is

15   appropriate to be referred to the bad check diversion program."  Penal Code §§ 1001.61 and

16   1001.62.  Section 1001.60 defines  "writing a bad check" as writing a check where "there is

17   probable cause to believe there has been a violation of Section 476a.  If probable cause exists, to

18   determine whether the case is appropriate for referral to a bad check diversion program, "the

19   district attorney *shall consider*" the criteria set forth in Penal Code § 1001.62.  This criteria

20   includes, but is not limited to:  (a) The amount of the bad check; (b) any prior criminal record or

21   previous diversion; (c) the number of bad check grievances against the person previously

22   received by the district attorney; (d) whether there are other bad check grievances currently

23   pending against the person; and, (e) the strength of the evidence, if any, of intent to defraud the

24   victim.

25        For a check writer to successfully avoid prosecution for criminal bad check writing,

26   satisfaction of two conditions is mandatory:  (1) the check writer must complete a class or

27   classes—to wit, the diversion program—conducted either by the district attorney *or a private*

28   *entity under contract with the district attorney*; and (2) the check writer must make full

1   restitution to the victim.  Penal Code §§ 1001.64(a) and (b); *emphasis added*.  The district

2   attorney may also require the check writer to pay a collection fee of $35 and a bank fee in the

3   amount *actually incurred* by the merchant of up to a maximum of $10.  *Id*., §§ 1001.64(c),

4   1001.65(a) and (c).  These are the only fees permitted, unless a check writer has been convicted

5   of violating Penal Code § 476a.  Penal Code §1001.65(a).

6                           **THE PROPOSED CLASSES**

7            In this motion plaintiffs seek an order certifying one umbrella class and two subclasses of

8   consumers for the claims for relief under the FDCPA and state tort claims.  Named plaintiffs

9   Elena del Campo, Ashorina Medina, Lisa Johnston and Lois Artz would each serve as a class

10  representative for the umbrella class and each subclass.  The proposed classes are defined as:

11           **Umbrella class:**  All persons to whom ACCS mailed at least one demand letter

12  purporting to be from a district attorney's office in California, attempting to collect a dishonored

13  check, which was not returned as undeliverable.

14           Sub-class 1: [FDCPA class]:  All members of the umbrella class, from whom ACCS after

15  December 11, 2000 attempted to collect, or collected money for a check written for personal,

16  family, or household purposes,.

17           Sub-class 2: [CUBPA class]:  All members of the umbrella class from whom ACCS

18  attempted to collect, or collected money, after December 11, 1997.

19           Sub-class 3:  [Misrepresentation class]:  All members of the umbrella class from whom

20  ACCS collected money after December 11, 1999.

21           Sub-class 4: [Bank records class]:  All members of the umbrella class whose bank records

22  ACCS obtained after December 11, 1999.

23                                **ARGUMENT**

24  **I. THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION**

25           **A.  Standards for Class Certification**

26           Congress has expressly recognized the propriety of a class action under the FDCPA by

27  providing special damage provisions and criteria in 15 U.S.C. §§ 1692k(a) and (b) for FDCPA

28  class action cases.  For a class to be certified, plaintiffs must satisfy all four requirements of

1  Fed.R.Civ.P., Rule 23(a), and at least one of the three categories of Fed.R.Civ.P., Rule 23(b).

2  *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689

3  (1997); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); *Mantolet v.*

4  *Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).  Each subclass must also satisfy these same

5  requirements.  *Betts v. Reliance Collection Agency,* 659 F.2d 1000, 1005 (9th Cir. 1981).

6  　　　　As discussed in the introduction, *supra,* courts have granted class certification in four

7  cases that are substantially similar to the instant case.  *See Liles v. American Corrective*

8  *Counseling Services, Inc.,* 231 F.R.D. 565; *Hamilton v. Am. Corrective Counseling Serv*., 2007

9  U.S. Dist. LEXIS 11488, *Schwarm v. Craighead*, 233 F.R.D. 655.  *Gradisher v. Check*

10  *Enforcement Unit, Inc*., 203 F.R.D. 271 (W.D. Mich. 2001).  Those cases are directly on point to

11  the present case.  Here each class or subclass also meets all the requirements of Rule 23(a).  The

12  umbrella class and subclasses may be certified under either Rule 23(b)(2) or Rule 23(b)(3).

13  　**B.  Plaintiffs Satisfy the Requirements Set Forth in Rule 23(a)**

14  　　　　Fed.R.Civ.P., Rule 23(a) provides that a member of a class may sue as a representative

15  party if:  (1) the class is so numerous that the joinder of all members of the class is impracticable;

16  (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

17  representative parties are typical of the claims or defenses of the class; and (4) the representative

18  parties will fairly and adequately protect the interests of the class.

19  　**1.  Each Class or Subclass Is so Numerous that Joinder of all Parties Is Impracticable**

20  

21  　　　　Fed.R.Civ.P., Rule 23(a)(1) requires that the class be "so numerous that joinder of all

22  members is impracticable."  *Gay v. Waiters and Dairy Lunchmen's Union*, 549 F.2d. 1330 (9th

23  Cir. 1977);  *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (N.D.Cal. 2003).  Impracticality of

24  joinder is determined not according to a strict numerical test, but upon the circumstances

25  surrounding each case.  *General Tel. Co. v. EEOC,*  446 U.S. 318, 330, 64 L.Ed.2d 319, 100

26  S.Ct. 1698 (1980).  One court has stated that "in light of prevailing precedent, the difficulty

27  inherent in joining as few as 40 class members should raise a presumption that joinder is

28  impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule

1  23(a)(1) on that fact alone." *Amone v. Aveiro*, 226 F.R.D. 677, 684 (D.Haw. 2005), *citing*

2  Newberg and Conte, 1 *Newburg on Class Actions* § 3.6 (4th ed. 2002).

3        In the present case, the information provided by ACCS shows, during the time period

4  encompassed by this lawsuit, that it has mailed dunning letters on more than 900,000 checks

5  written in California.  ACCS Response to Interrogatory No. 31, Exhibit 17.  Subclass one, the

6  FDCPA class, includes 667,574 of these checks, since the statute of limitations for FDCPA

7  claims includes checks from December 12, 2000 forward.  *Id.*  All of the checks are

8  encompassed within the time frame of subclass two, the CUBPA class, since the statute of

9  limitations runs back to December 12, 1997.  The  tort classes encompass 760,352 checks, since

10  these claims run back to December 12, 1999.  *Id.*  As a standard practice ACCS pulled bank

11  records on all check writers whose checks meet the eligibility criteria for prosecution and the

12  check writer has not resolved the matter through ACCS' program.  Exhibit 18, ACCS

13  Operational Flow Chart, and Exhibit 17, ACCS Response to Interrogatory No. 19.

14        While the exact size of the bank records subclass is not known at this date, ACCS'

15  electronic records include this information.  Moreover, the court may make common sense

16  assumptions to find support for numerosity.  *Evans v. United States Pipe & Foundry*, 696 F.2d

17  925, 930 (11th Cir. 1983).  *See also* 3 *Newberg on Class Actions* §7.22, "[w]here the exact size

18  of the class is unknown, but it is general knowledge or common sense that it is large, the court

19  may assume joinder is impracticable."  Based on sheer numbers alone the umbrella class and

20  subclasses satisfy the numerosity requirement of Rule 23(a)(1).

21       **2.  There Are Questions of Law and Fact Common to the Class and Subclasses**

22        Fed.R.Civ.P., Rule 23(a)(2) requires that there be a common question of law or fact.  The

23  Ninth Circuit construes commonality liberally.  *Hanlon v. Chrysler Corp*, 150 F.3d 1011,  1019

24  (9th Cir. 1998).  Commonality is satisfied when there are underlying facts or legal theories

25  common throughout the class, even if the common facts support different legal theories or

26  common legal theories rest on different facts.  Not all factual or legal questions raised in the

27  litigation need be common so long as at least one issue is common to all class members.  *Id.*  "A

28  sufficient nexus is established if the claims or defenses of the class and the class representatives

1   arise from the same event or pattern or practice and are based on the same legal theory."

2   *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

3         Common questions of law and fact arise where defendants have engaged in standardized

4   conduct towards members of the proposed class by mailing them form demand letters that

5   contain the alleged violations.  *Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541, 544-547

6   (N.D.Cal. 2005).  Commonality typically manifests "where... the defendants have engaged in

7   standardized conduct towards members of the proposed class by mailing to them allegedly illegal

8   form letters." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998).  *See also Irwin v. Mascott,* 96

9   F.Supp.2d 968, 982 (N.D.Cal. 1999), certification granted of a class consisting of those persons

10  to whom defendants had sent dunning letters containing the same or similar demands as those

11  sent to the class representatives.  *Id.*, at 982; *Ballard v. Equifax Check Servs.*, 186 F.R.D. 589,

12  595 (E.D.Cal. 1999), commonality requirement met where defendant had sent class members

13  "standardized collection letters."

14         In *Schwarm v. Craighead*, 233 F.R.D. 655, 661, which is indistinguishable from the

15  instant case, where the debt collector mailed standardized demand letters on district attorney

16  letterhead, allegedly pursuant to Penal Code §§ 1001.60 et seq., the court ruled that there were

17  "common questions of both law and fact."  "Because defendants have engaged in standardized

18  practices of sending form letters to putative class members regarding dishonored checks, there is

19  a common factual basis for all class members."  *Id.*  Further, the court held that plaintiff's legal

20  claims arise from this common set of facts.  The court rejected defendants' argument that

21  commonality did not exist because "different letters were sent in different counties and the oral

22  communications between [defendant] and check writers are not uniform," stating that "[t]his

23  argument . . is nothing more than an allegation of "divergent factual predicates," which does not

24  defeat commonality.  See *Hanlon,* 150 F.3d at 1019."[8]  Here, as in *Schwarm*, there are common

25  _____

26         8.  Other courts have recognized that the legal issues arising from a debt collectors' standard
    collection practices are the same for each class member.  *See e.g., Bracamonte v. Eskanos & Adler,*
27  2004 U.S. Dist. LEXIS 8520 at *14-*15 (N.D.Cal. 2004); *Littledove v. JBC & Assocs.,* 2001 U.S.
    Dist. LEXIS 139 at *16.

28

1  questions of both law and fact based on defendants' standardized practice of sending form

2  collection letters.

3      In this case the Court has ruled already on a number of the parties' common legal issues.

4  These include:  (1) "Plaintiffs' obligations to honor checks written to pay for "personal, family,

5  or household purposes" qualify as "debt" within the definition of § 1692(a)(5)."  *Del Campo v.*

6  *Kennedy*, 491 F.Supp.2d  891, 903 (N.D.Cal. 2006).  (2) "ACCS is a private actor attempting to

7  take action to collect a debt against private individuals in order to compensate third party

8  creditors, and thus, is bound by the requirements of the FDCPA."  *Id.*  (3) "ACCS is a private

9  organization with a government contract; it is not a government agency or employee. The

10  provisions of the FDCPA are extremely broad, and there is no exemption for a private actor due

11  to the existence of a contract with a local government, regardless of its underlying purpose or

12  motive."  *Id.*  (4) "[U]under the plain language of the FDCPA, an individual can be considered a

13  "debt collector" and be held personally liable without piercing the corporate veil for those acts if

14  the individual materially participated in the debt collection activities."  *Id.*  (5) "[T]he question of

15  [an individual debt collector's] liability turns on whether the Individual Defendants' activities

16  were sufficient to be considered "material participation."  *Id.* at 904. (6) "Whether ACCS is

17  liable under the FDCPA will be determined based on the representations in its form letters, not

18  any other particular check writer's fraudulent intent when writing a check*."  Del Campo v.*

19  *Kennedy*, 2007 U.S. Dist. LEXIS 12387, *8 (February 8, 2007).  (7) "Under the FDCPA, a debt

20  collector may not, inter alia, threaten to take any action that cannot legally be taken or is not

21  intended to be taken. 15 U.S.C. § 1692e(5).  A defendant violates this subsection by rarely, or

22  never, following through on its threats to sue; threats to sue must be accompanied by a

23  particularized intention to sue a given debtor if he or she does not pay. *U.S. v. Nat'l Fin. Servs.,*

24  *98 F.3d 131, 137-39 (4th Cir. 1996)*."  *Id.* at *9.  (8) The issues relevant to the FDCPA

25  determination are (1) the debt collector's knowledge of whether recipients could be prosecuted *at*

26  *the time the letters were sent* and (2) the debt collector's intent to take legal action at that time.

27  Whether or not a particular individual could have been prosecuted, based on their notice of the

28  bad checks or the amount of time they had to make good on the debt before being contacted by

1   ACCS, is not relevant to the FDCPA issues in this case.  *Id.*  (9) "The federal courts determine

2   whether a party is subject to FDCPA requirements by analyzing the party's collection activity

3   rather than the conduct or recidivism rate of a particular check writer.  *See, e.g. Gradisher v.*

4   *Check Enforcement Unit*, 133 F.Supp.2d 988, 990-91 (W.D. Mich. 2001), *Liles v. Am.*

5   *Corrective Counseling Servs.,*  131 F.Supp.2d 1114, 1118-19 (S.D. Iowa 2001)."  *Id.*, at *9-*10.

6   (10) A plaintiff's check writing practices are not relevant to whether ACCS is exempt from

7   complying with the FDCPA.  *Id.*, at *11.  (11) "As a private actor, attempting to take action

8   against Plaintiff, a private individual, in order to compensate a private third-party creditor,

9   partially or completely, for a private debt owed by Plaintiff to that third-party, ACCS is bound by

10  the requirements of the FDCPA . . . Although the FDCPA exempts from its requirements officers

11  and employees of state governments, ACCS is a private organization with a government

12  contract; it is not a government agency or employee. The existence of a contract with a local

13  government, regardless of its underlying purpose or motive, cannot exempt a private actor from

14  the provisions and requirements of the FDCPA.  *Order Granting in Part and Denying in Part*

15  *Defendants' Motion to Dismiss* at 5-6, Docket Item No. 23.

16          ACCS' initial letter to plaintiffs and all putative class members is entitled "Official

17  Notice" and is printed on district attorney letterhead.  The "Official Notice" includes a threat of

18  criminal prosecution, a demand for a $35.00 "Admin Fee", a "Program Fee" ranging from

19  $100.00 to $165.00, and a "Returned Item Fee" of $10.00.  Each "Official Notice" fails to inform

20  plaintiffs and putative class members that it is from a debt collector, and fails to advise putative

21  class members of their rights under the FDCPA, 15 U.S.C. §§1692e and g.  Thus, the first form

22  letter includes all of the elements of the claims against defendants.  The second and third

23  demands that ACCS mails if the check writer fails to pay, seek payment of all unpaid amounts

24  that ACCS has demanded and threatens criminal charges if its demands are not met.  In addition,

25  if a putative class member wishes to make payments, ACCS charges a $25.00 scheduling fee.  If

26  a putative class member pays late, ACCS charges a $10.00 late fee.

27          ACCS mailed everyone in the Umbrella Class an "Official Notice," and mailed hundreds

28  of thousands of check writers two or more demand letters.  Because defendants have engaged in

1    the standardized practice of sending form letters to putative class members regarding dishonored

2    checks, there is a common factual basis for all class members.  In addition as in *Schwarm,*

3    plaintiffs' legal claims arise from this common set of facts.  Plaintiffs claim that defendants

4    negligently and fraudulently misrepresented information in their communications regarding:  (1)

5    the fact that the communications were not from a law enforcement agency; (2) the character,

6    amount, and legal status of the debt; (3) defendants' failure to provide statutorily required

7    language on their dunning notices; and (4) the fact that defendants could not themselves

8    prosecute putative plaintiffs for failure to respond.  Other legal questions common to the putative

9    plaintiffs are plaintiffs' claims that defendants sent letters and attempted to collect upon the debt,

10   without a probable cause determination or a referral by the DA, and defendants invaded class

11   members' privacy rights by requesting and obtaining their bank records.

12            Further, defendants have asserted a common defense that they are not subject to the

13   FDCPA and that they are authorized to engage in their standardized practices by the BCDA and

14   their contracts with California district attorneys.

15            While there are individual questions of law and fact involving damages, the common

16   questions of law and fact arising from defendants' form dunning letters predominate over any

17   questions affecting only individual class members.  *Schwarm v. Craighead*, 233 F.R.D. at 661.

18   Since all claims arise from ACCS' uniform collection practices, plaintiffs have satisfied the

19   commonality requirement of Rule 23(a)(2).

20        **3.  Plaintiffs' Claims Are Typical of the Claims of the Class**

21            Fed.R.Civ.P., Rule 23(a)(3) requires that the claims of the named plaintiffs be typical of

22   the claims of the class.  The typicality requirement ensures that the named plaintiffs' claims and

23   the class claims are so interrelated that the interests of the class members will be fairly and

24   adequately protected in their absence."  *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 156, 102 S. Ct.

25   2364, 72 L. Ed. 2d 740 (1982).  The purpose of typicality is to "assure that the interest of the

26   named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976

27   F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class

28   representative, and not to the specific facts from which it arose or the relief sought."

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

*Armstrong v. Davis,* 275 F.3d at 869.  *See also, Keele v. Wexler,* 149 F.3d at 595; *Abels v. JBC Legal Group, P.C.,* 227 F.R.D at 545.

In the instant case, defendants sent named plaintiffs the same or substantially similar form letters that defendants sent to the class as a whole.  All letters are printed on district attorney letterhead.  All letters demand the same categories of fees from each named plaintiff and each putative class member and threaten criminal proceedings if the amounts are not paid.  None of defendants' dunning letters warn that they are from a debt collector or provide the advisement of rights required by 15 U.S.C. §1692g.

Consequently, all putative class members have the same or similar injury arising from the use of district attorney letterhead, charging the same allegedly unlawful fees,  making the same threats and failing to provide the same FDCPA statutorily required language.    Finally, it is through this same course of conduct that the alleged injuries arose.  Since plaintiffs' claims are reasonably coextensive with those of the class, plaintiffs satisfy the typicality requirement of Rule 23(a)(3).

### 4.   Named Plaintiffs and Class Counsel Will Fairly and Adequately Represent the Interests of the Class and Subclasses

The fourth and final Rule 23(a) requirement — adequacy — requires:  (1) that the proposed representatives do not have conflicts of interest with the proposed class; and (2) that plaintiffs are represented by qualified counsel.  *Hanlon v. Chrysler Corp,*150 F.3d at 1020.  The adequacy of representation requirement serves two functions.  Like the commonality and typicality requirements, it assures that shared interests between the representative plaintiffs and the class as a whole are present, but it also functions to ensure the absence of conflicts.  *Amchem Products, Inc. v. Windsor,* 521 U.S. at 625-26.  To serve as representatives, the named plaintiffs must have common interests with class members and a lack of interests adverse to class

1    members.  They must also vigorously prosecute the interests of the class through qualified

2    counsel.  *East Texas Motor Freight System Inc. v. Rodriguez,* 431 U.S. 395, 403-405, 52 L.Ed.2d

3    453, 97 S.Ct. 1891 (1977).  This standard requires similarity, not identity, of interests.  It does

4    not preclude some unique interests; it only precludes adverse interests.  Rule 23(a)(4) also

5    requires that the named plaintiffs provide fair and adequate protection for the interests of the

6    class.

7          Named plaintiffs are qualified as class representatives.  Their declarations establish that

8    they have a basic understanding of the basis for the lawsuit and their obligations as class

9    representatives.[9]  The claims of the representative plaintiffs are the same as the claims of the

10   class, arising out of the same form letters sent to the class.  They are seeking all available relief,

11   including declaratory and injunctive relief, and actual and statutory damages.  Given the identical

12   nature of the claims between the representative plaintiffs and the class members, there is no

13   potential for conflicting interests in this action.  *See*, *Abels v. JBC Legal Group, P.C.,* 227 F.R.D

14   at 545.

15         Plaintiffs are represented by experienced counsel, Paul Arons and Sharon Grace, Law

16   Offices of Paul Arons, O. Randolph Bragg, Horwitz & Horwitz & Associates; Deepak Gupta,

17   Public Citizen Litigation Group; Lester A. Perry, Hoole & King; and Ronald Wilcox, Law Office

18   of Ronald Wilcox.[10]  These counsel have been recognized in other courts as experienced

19   litigation attorneys qualified as class counsel.  *Hamilton v. American Corrective Counseling*

20   *Serv.,* 2007 U.S. Dist. LEXIS 11488; *Irwin v. Mascott,* 96 F. Supp. 2d at 983; *Swanson v. Mid*

21   *Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999); *Newman v. CheckRite*, 912 F.Supp. 1354

22   (E.D.Cal. 1995); *Ditty v. CheckRite* 182 F.R.D. 639, 642 (D. Utah 1998); *Borcherdine-Dittloff v.*

23

24         9.  *See* Declarations of Elena del Campo, Ashorina Medina, Lisa Johnston, and Lois Artz
     supporting this motion, filed herewith.  Plaintiffs' counsel is moving to withdraw from
25   representing plaintiff Miriam Campos, with whom they have lost contact.  She will remain a
     member of the class, if the motion is granted.
26

27         10.  *See* Declarations of Paul Arons, Sharon Grace, O. Randolph Bragg, Deepak Gupta.
     Lester Perry and Ronald Wilcox, filed in support of this motion.

28

1  *Transworld Systems, Inc.*, 185 F.R.D. 558, 563-64 (W.D. Wis. 1999); *Abels v. JBC Legal Group,*

2  *P.C.,* 227 F.R.D. 541; *Hunt v. Check Recovery Services,* 241 F.R.D. 505 (N.D.Cal. 2007);

3  *Littledove v. JBC & Assocs.,* 2001 U.S. Dist. LEXIS 139, *12 (E.D.Cal. Jan. 11, 2001). Hence,

4  all counsel have demonstrated that they are qualified, experienced and generally able to conduct

5  the proposed litigation.  They should therefore be appointed as class counsel.  Thus, named

6  plaintiffs satisfy the requirements of Rule 23(a)(4) through their own adequacy and through the

7  adequacy of their counsel.

8  **II.   PLAINTIFFS REQUEST THE COURT TO CERTIFY A HYBRID CLASS**
   **ACTION, WITH THE ISSUES OF INJUNCTIVE AND DECLARATORY**
9  **RELIEF, LIABILITY AND STATUTORY DAMAGES CERTIFIED**
   **PURSUANT TO RULE 23(b)(2), AND ACTUAL DAMAGES CERTIFIED**
10 **PURSUANT TO RULE 23(b)(3)**

11      **A.  The Issues of Injunctive and Declaratory Relief, Liability and Statutory**
12          **Damages May Be Certified under Rule 23(b)(2)**

13      An action may be maintained as a class action under Rule 23(b)(2) if:

14      the party opposing the class has acted or refused to act on grounds generally
        applicable to the class, thereby making appropriate final injunctive relief or
15      corresponding declaratory relief with respect to the class as a whole. . . .

16      The archetypal case for Rule 23(b)(2) certification is one where policies applicable to a

17 large number of persons are challenged as unlawful.  Certification under Rule 23(b)(2) is

18 appropriate where declaratory or injunctive relief is predominant, and monetary damages are

19 incidental.  Rule 23(b)(2) certification is appropriate even in actions where plaintiffs' claim for

20 declaratory and injunctive relief is accompanied by damages or retroactive relief claims.  *Molski*

21 *v. Gleich*, 318 F.3d 937, 950 (9th Cir. 2003); *Probe v. State Teachers' Retirement System*, 780

22 F.2d 776, 780 (9th Cir. 1986); *Arnold v. United Artists Theater Circuit, Inc.*, 158 F.R.D. 439

23 (N.D. Cal. 1994).

24      In *Probe*, the court certified a class under Rule 23(b)(2), where male plaintiffs sought

25 injunctive and declaratory relief concerning a retirement plan's use of sex-based mortality tables

26 in calculating the benefits due under the plan, even though plaintiffs also sought individual

27 damages and retroactive monetary relief.  In *Arnold v. United Artists Theater Circuit, Inc.*, 158

28 F.R.D. 439, plaintiffs alleged that United Artists theaters failed to make their theaters accessible

1   to handicapped individuals, in violation of federal and state civil rights laws.  The court certified

2   a class action under Rule 23(b)(2), even though plaintiffs sought individual damages for class

3   members.  The court reasoned that "the cohesiveness of the class and the homogeneity of the

4   members' interests [are] the salient factors on which the availability of the (b)(2) class action

5   form hinges. . . ."  Since calculation of damages did not involve "a complicated, individual-

6   specific calculus," certification under Rule 23(b)(2) was proper.[11]  *Id.* 451-453.

7        Indeed, some courts take the view that if the Rule 23(a) prerequisites have been met and

8   injunctive relief has been requested, the action should be allowed to proceed under subdivision

9   (b)(2).  Wright, Miller & Kane, 7AA *Federal Practice and Procedure* § 1784.1, at 348 (3d ed.

10  2005).  Courts have followed this approach in FDCPA cases.

11       In addition, this case meets the requirements for issuing a declaratory judgment.  The

12  principal criteria guiding the policy in favor of rendering declaratory judgments are:  (1) when

13  the judgment will serve a useful purpose in clarifying and settling of legal relations between the

14  parties; and (2) when it will terminate and afford relief from the uncertainty, insecurity, and

15  controversy giving rise to the proceeding. *Gammon v. G.C. Services Ltd. Partnership,* 162

16  F.R.D. at 320.  *See also Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir. 1986); W. Schwarzer,

17  *Federal Civil Procedure Before Trial,* § 10:5 (2006). In the instant case, a declaratory judgment

18  would settle the issue of the legality of defendants' behavior with respect to the entire class.

19  Given that the very purpose of class actions is to promote judicial efficiency and economy, the

20  Court finds that Plaintiff's request for declaratory judgment to be appropriate. *See Gen. Tel. Co.*

21  *v. Falcon,* 457 U.S. at 149.

22

23  _____

24       11.  In *Arnold*, the court granted class certification on the issue of damages arising from
     actual theater visits, because that damages issue could be resolved by proof of the inadequate
25   access in particular movie theaters in defendant's movie theater chain, and the amount of
     damages could be calculated based on evidence of the number of visits that each plaintiff had
26   made to a theater with inadequate access.  The court did not certify for class treatment damages
     arising from the claim that inadequate disabled access deterred visits to the movie theater,
27   because proof of "deterrence" damages would have required the resolution of individual-specific
     issues, which would substantially increase the complexity of the case.  158 F.R.D. at 453.

28

1    A hybrid class action is appropriate where a broad class is entitled to a declaratory

2  judgment or injunctive relief, and a narrower class is entitled to monetary damages.  In fact,

3  district courts in the Ninth Circuit have not hesitated to certify hybrid class actions in cases like

4  this, where plaintiffs seek class-wide injunctive relief, declaratory relief and monetary damages

5  where defendants' alleged unlawful collection practices are based on form letters.  This Court

6  certified a hybrid debt collection action based on form letters in *Abels v. JBC Legal Group P.C.*,

7  227 F.R.D. at 544-547.  *See also, Schwarm v. Craighead*, 233 F.R.D. at 663, certifying the issues

8  of liability, injunctive and declaratory relief and statutory damages under Rule 23(b)(2); *Hunt v.*

9  *Check Recovery Services,* 241 F.R.D. at 513, 515, granting Rule 23(b)(2) certification on the

10  issues of liability, declaratory relief, and statutory damages under the FDCPA, and limiting

11  certification under Rule 23(b)(3) to actual damages; *Ballard v. Equifax Check Servs,* 186 F.R.D.

12  at 596; certifying the FDCPA class under Rule 23(b)(2) on the issues of liability, declaratory

13  relief, and statutory damages but reserving certification of actual damages for certification under

14  Rule 23(b)(3); *Littledove v. JBC & Assocs.,* 2001 U.S. Dist. LEXIS 139, *14-*17, same; *Irwin v.*

15  *Mascott,* 96 F.Supp.2d at 981-982, same.

16    Like the cases cited above, defendants in the present case have acted or refused to act on

17  grounds generally applicable to the class, thereby making final injunctive relief or corresponding

18  declaratory relief appropriate with respect to the class as a whole.  The declaratory relief sought

19  in this action would declare, among other things, that defendants' collection practices of mailing

20  letters on district attorney letterhead; relying on a criminal diversion statute without a finding of

21  probable cause and failing to follow the mandatory statutory requirements of the BCDA;

22  threatening criminal proceedings; requesting check writer's bank records; and demanding an

23  "Admin Fee," a "Program Fee" and a "Returned Item Fee" violate the FDCPA and constitute

24  unlawful business practices.  Injunctive relief would prohibit defendants from continuing the

25  enumerated unlawful practices.  This relief, if granted, will affect far more people and have far

26  greater consequences over a longer period of time than monetary damages, since it will protect

27  class members who have not paid all of defendants' demands, and the relief would operate

28

prospectively to protect check writers who otherwise may have been subject to defendants' practices.

The hybrid suit may be tried in two stages.  In the first stage, the court determines whether defendants are liable to the class and subclasses, and determines whether declaratory and injunctive relief should be granted.  In this case, a determination would be made as to whether defendants' collection practices violate the FDCPA or state constitutional prohibition against invasion of privacy, or whether defendants' made fraudulent or negligent misrepresentations to class members. If violations are found, the Court would proceed to stage two to determine actual damages, if defendants' refuse to stipulate to actual damages based on their computerized records.  All class members entitled to actual damages pursuant to the Court's liability rulings would be part of the Rule 23(b)(3) class.  These class members would be allowed the opportunity to either opt out of the proceedings, so that they could pursue relief in their own private right of action, or could proceed to a determination of their actual damages.  *Simon v. World Omni Leasing*, 146 F.R.D. 197, 202-203 (S.D.Ala. 1992).

### B. Plaintiffs Meet the Requirements for Rule 23(b)(3) Certification Limited to Class Members Who Have Actual Damages

#### 1. Common Questions of Law or Fact Predominate

Fed.R.Civ.P., Rule 23(b)(3) provides that class certification is appropriate where the court finds that questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  In this action, common issues of law and fact predominate over individual issues.  "Predominance is a test readily met in certain cases alleging consumer .... fraud. . " *Amchem Prod. Inc. v. Windsor,* 521 U.S. 591 at 624.  In FDCPA actions, a common nucleus of operative fact is typically found where "defendants have engaged in standardized conduct toward members of the proposed class by mailing to them allegedly illegal form letters or documents." In *Liles v. American Corrective Counseling Services, Inc.,* 231 F.R.D. at 575, the district court found the predominance requirement satisfied, stating:

1
2
3
4

> The primary disputed issues are whether defendants' communications with plaintiffs were improper under the FDCPA; and if so, the appropriate remedies. The first of these issues is common to all class members, as are the statutory damages to which each class member is entitled. Although *actual* damages must be determined on an individual basis, this fact does not override the overwhelming predominance of common issues.

5

"The significant issue of whether the collection letters violate the FDCPA outweighs the

6

individualized damages issues." *Hamilton v. American Corrective Counseling Serv.,* 2007 U.S.

7

Dist. LEXIS 11488 at *16-*17, citing *Liles.* As in *Liles* and *Hamilton,* the present case is based

8

on the legality of defendants' collection conduct, as reflected in the representations and demands

9

in ACCS' dunning letters. The only individual issues are ministerial, *e.g.*, identifying and

10

locating class members, and calculating damages, which can all be resolved by reviewing

11

defendants' computerized collection records. In this case, it is clear that the class' factual and

12

legal issues, as well as the issues of law, predominate over any individual questions.

13
14

### 2. A Class Action Is Superior to other Available Methods to Resolve this Controversy

15

To determine if a class action is superior, a court will balance the merits of a class action

16

against alternative methods of adjudication, in terms of fairness and efficiency. The Court is

17

required to determine the best available method for resolving the controversy and must "consider

18

the interests of the individual members in controlling their own litigation, the desirability of

19

concentrating the litigation in the particular form, and the manageability of the class action."

20

*Ballard v. Equifax Check Servs.,* 186 F.R.D. at 600. In deciding the "best" available method, a

21

court may properly consider the "...inability of the poor or uninformed to enforce their rights,

22

and the improbability that large numbers of class members would possess the initiative to litigate

23

individually." *Haynes v. Logan Furniture Mart. Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

24

A class action is also superior to the litigation of the putative members' individual claims.

25

Not only are most individual consumers unaware of their rights under the FDCPA, but also the

26

size of the individual claims is "usually so small there is little incentive to sue individually."

27

*Schwarm,* 233 F.R.D. at 664, *citing Ballard,* 186 F.R.D. at 600 ("[c]lass action certifications to

28

enforce compliance with consumer protection laws are desirable and should be encouraged.")

1   As in *Schwarm* and *Ballard,* certification of the present action is the superior method to resolve

2   the controversy presented here.

3                                              **CONCLUSION**

4          The proposed umbrella class and subclasses each meet all of the requirements of

5   Fed.R.Civ.P., Rule 23(a), as well as the requirements of Fed.R.Civ.P., Rule 23(b)(2)and (b)(3).

6   Plaintiffs request the Court to certify the issues of liability, declaratory and injunctive relief and

7   statutory damages under Rule 23(b)(2), and the issue of actual damages under Rule 23(b)(3).

8   Plaintiffs Elena del Campo, Ashorina Medina, Lisa Johnston, and Lois Artz request that the

9   Court appoint each of them to represent the umbrella class and subclasses one through four.

10  Plaintiffs also request the Court to appoint Paul Arons, Sharon Grace, Deepak Gupta, Rand

11  Bragg, Lester Perry and Ronald Wilcox as class counsel.

12  Dated:  June 2, 2008                          Respectfully submitted,

13                                               LAW OFFICES OF PAUL ARONS

14

15                                        By   s/Paul Arons_____
                                               Paul Arons
16                                             Attorneys for Named Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Additional Plaintiff's Counsel:

Deepak Gupta, D.C. Bar #495451
(*pro hac vice*)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
Tel:  (202) 588-1000
Fax: (202) 588-7795
dgupta@citizen.org

O. Randolph Bragg, IL. Bar #06221983
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington, Suite 900
Chicago, IL 60602
Tel:  (312) 372-8822
Fax: (312) 372-1673
rand@horwitzlaw.com

Ronald Wilcox, State Bar #176601
LAW OFFICE OF RONALD WILCOX
2160 The Alameda, 1ˢᵗ Flr., Suite F
San Jose, CA 95126
Tel:  (408) 296-0400
Fax: (408) 296-0486

Lester A. Perry (2571)
Hoole & King
4276 South Highland Drive
Salt Lake City, Utah 84124
Telephone: (801) 272-7556
Fax: (801) 272-7557
E-mail: lap@hooleking.com