1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ELENA DEL CAMPO, ET AL., | ) ) | Case No.: C 01-21151 JW (PVT) |
| Plaintiffs, | ) ) | **ORDER GRANTING PLAINTIFFS' MOTION TO CHALLENGE THE DESIGNATION OF** |
| v. | ) ) | **CERTAIN DOCUMENTS; ORDER DENYING PLAINTIFFS' MOTION TO MODIFY THE** |
| AMERICAN CORRECTIVE COUNSELING SERVICES, INC., ET AL., | ) ) ) | **STIPULATED PROTECTIVE ORDER; AND ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS** |
| Defendants. | ) ) | **[Docket Nos. 597, 599]** |

## I.    INTRODUCTION

Originally, plaintiffs Elena del Campo, Ashorina Medina and Lisa Johnston moved to challenge the confidentiality designations made by defendant American Corrective Counseling Services, Inc. to ten exhibits attached to the deposition transcript of Brett Stohlton. (collectively "plaintiffs"). ("ACCS"). Mr. Stohlton is the chief operating officer of ACCS and testified regarding the company's document retention policies. Additionally, plaintiffs moved to modify the stipulated protective order entered by this court on January 3, 2007. ("January 3, 2007 Stipulated Protective Order"). (Docket No. 290). Prior to the scheduled hearing, defendant ACCS withdrew confidentiality designations for all but two of the exhibits. Defendant contends that the remaining exhibits (which consist of two documents) are protected as trade secrets. Defendant opposes any

1    modification of the stipulated protective order.  On July 29, 2008, the parties appeared for hearing.

2    Having reviewed the papers and considered the arguments of counsel, plaintiffs' motion to challenge

3    the designation of certain documents is granted and plaintiffs' motion to modify the stipulated

4    protective order is denied.[1]  Also, plaintiffs' motion for sanctions is denied.[2]

5    **II.      BACKGROUND**

6           In or around December 2001, plaintiffs filed this class action lawsuit against defendant

7    ACCS and certain officers of the company alleging, *inter alia,* that defendants had operated a bad

8    check restitution program with the Santa Clara County District Attorney's Office which violated the

9    Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*.

10          In an effort to obtain various documents related to the operation of the bad check restitution

11   program administered by ACCS, plaintiffs submitted public records requests to various district

12   attorneys' offices in or around 2002.  (Arons Decl. at 4.).   On May 9, 2008, plaintiffs attached ten of

13   these documents as exhibits to the deposition of Brett Stohlton.  (*Id.* at 2.).  During the course of the

14   deposition, defendants designated all ten of the exhibits as confidential pursuant to the January 3,

15   2007 Stipulated Protective Order.  (*Id.* at 3.).  On June 25, 2008, plaintiffs moved to challenge the

16   confidentiality designations and also moved to modify the terms of the January 7, 2007 Stipulated

17   Protective Order.  Defendants later withdrew the confidentiality designation as to all but two of the

18   exhibits attached to the Stohlton deposition.  Specifically, the two exhibits are identified as Exhibits

19   1 and 2 and consist of Monthly Activity Reports obtained from the Monterey County District

20   Attorney's Office.  Exhibit 1 is a monthly report for June 2005, and Exhibit 2 is a monthly  report

21   for July 2004.  Plaintiffs obtained both exhibits through a public records request.  Each of the reports

22   contains customer names, graphs showing account activity, canceled checks, account and tracking

23   numbers, and check referral information.

24          Plaintiffs argue that the Monthly Activity Reports were obtained through public agencies,

25   making them public documents.  In support of their argument, plaintiffs have filed a number of

26   ───────────────────

27          [1]      The holding of this court is limited to the facts and particular circumstances underlying
     the present motion.

28          [2]      Pursuant to an order dated July 24, 2008, plaintiffs' motion for sanctions was taken under
     submission.  ("July 24, 2008 Order").  (Docket No. 636).

1   similar reports that they have obtained through other public records requests.  Defendants have

2   objected to the submission of the other monthly reports on the grounds that the filing was untimely,

3   and that the other documents are not relevant to the current dispute.  Defendants also oppose

4   modification of the January 3, 2007 Stipulated Protective Order on the grounds that plaintiffs have

5   failed to meet and confer prior to filing their motion.

6   **III.      DISCUSSION**

7            A.      Exhibits 1 and 2

8            As an initial matter, plaintiffs obtained Exhibits 1 and 2 through their own independent

9   efforts.  The exhibits were not obtained during the course of discovery.  Instead, plaintiffs procured

10  Exhibits 1 and 2 through a public records request submitted to the Monterey County District

11  Attorney's Office.  Beginning in 2002, plaintiffs used this investigatory practice throughout the

12  litigation (and in other litigation throughout the country), securing over 250 similar reports from

13  various District Attorney offices located in Florida, California, and Illinois.  Because the monthly

14  reports are available to the public, plaintiffs contend that confidentiality designations are not

15  warranted here.

16          Defendant argues that each exhibit is a  trade secret and should be designated as

17  "Confidential" even if the Monterey County District Attorney's Office produced them pursuant to a

18  public records request.  Exhibit 1 was generated in June 2005 and Exhibit 2 was generated in July

19  2004. (collectively "Monterey Reports.").  The Monterey Reports contain "specific financial and

20  performance metrics about bad check restitution programs administered by ACCS" and include

21  information such as "the volume of business that ACCS conducts with its district attorney client on a

22  monthly basis, the revenues generated by ACCS for the client, the identities of victims that sent

23  checks to the bad check restitution program, and a description of ACCS's strategy on an ongoing

24  basis."  Defendant argues that disclosure of the reports would compromise its competitive advantage

25  and cause irreparable harm.  For example, a competitor could use information obtained from the

26  reports "to direct [] sales efforts to victims that showed favorable metrics, e.g., where the number of

27  bad checks submitted by a particular victim was increasing."  Moreover, defendant notes that

28  governing contracts between ACCS and the Monterey County District Attorney's Office contain

1   confidentiality provisions which are applicable to the Monterey Reports.  Finally, defendant

2   contends that it was unaware that plaintiffs had obtained the Monterey Reports through public

3   records requests until Mr. Stohlton's deposition was held on May 9, 2008.

4          Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or

5   person from annoyance, embarrassment, oppression, or undue burden or expense," based on an

6   enumerated, but not exhaustive, list of reasons.  FED. R. CIV. P. 26(c).  At issue is section (G), which

7   allows a court to "requir[e] that a trade secret or other confidential research, development, or

8   commercial information not be revealed or be revealed only is a specified way."  (*Id.*)

9          "'The owner of a trade secret has the privilege to refuse to disclose the secret, and to prevent

10  another from disclosing it.'"  *Upjohn Co.*, *v. Hygenia Biological Lab.*,151 F.R.D. 355, 358 (E.D.

11  Cal. 1993) (citing Cal. Evid. Code § 1060).  The party asserting the trade secret privilege must show

12  that the information sought is a trade secret, and that disclosure of the secret might be harmful.  (*Id.*)

13  "A party asserting good cause bears the burden, for each particular document it seeks to protect, of

14  showing that specific prejudice or harm will result if no protective order is granted."  *Foltz v. State*

15  *Farm Mut. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003) (internal citations omitted).  Indeed,

16  "'broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not

17  satisfy the Rule 26(c) test.'"  *Id.*  "'The courts have not given trade secrets automatic and complete

18  immunity against disclosure, but have in each case weighed their claim to privacy against the need

19  for disclosure.  Frequently, they have been afforded a limited protection.'"  *Upjohn Co.,* 151 F.R.D.

20  at 358.

21         Defendant's reliance on *Masonite Corp. v. County of Mendocino Air Quality Managment*

22  *Dist.,* 42 Cal. App. 4th 436 (1996) is misplaced.  Setting aside for a moment that *Masonite* is not

23  binding upon this court, a plaintiff corporation there sought to enjoin a public agency from

24  continuing to disclose a trade secret through public report to an environmental group.  Pursuant to a

25  state health and safety code regulation, plaintiff corporation was required to file certain emissions

26  data with the local air quality management district.  Plaintiff corporation had asked the district to

27  maintain the confidentiality of the trade secrets provided in its filings.  Upon learning that an

28  environmental group was seeking uncensored versions of its filings, plaintiff corporation sought a

temporary restraining order and later a preliminary injunction.  In sum, the trial court denied the

preliminary injunction.  The Court of Appeal reversed the trial court which had denied "plaintiff

[corporation's] motion for preliminary injunction to prevent disclosure of 'emission factors' and the

information inadvertently disclosed by public agencies." ( *Id.*).  Specifically, the court noted that

"'data used to calculate emission data are not emission data'" and if classified as trade secrets, "must

be protected."  (*Id.*).  Additionally, the Court of Appeal found that inadvertent disclosure by public

agencies to environmental groups did not constitute a waiver by plaintiff corporation.  It stated that

"[v]oluntary disclosure of information as a public record, even if mistaken, constitutes a valid

waiver of trade secret protection."  (*Id.* at 455.).

　　　　Here, defendant ACCS has not shown that the information contained in the Monterey

Reports constitutes trade secrets.  Additionally, defendant ACCS has not shown any specific

prejudice or harm that will result if no protective order is granted.  Instead, defendant ACCS has

broadly alleged that certain of its competitors may employ the information contained in the

Monterey Reports to gain a business advantage with victims of bad checks.  For example, defendant

proffers no explanation whatsoever for the specific harm or prejudice that results from reports at

least 3-4 years old.  Defendant also has not shown any efforts it has taken to enforce the

confidentiality provisions in the governing contracts to avoid further harm (even in the four months

since it discovered that the reports were being produced pursuant to public records requests).

Defendant merely states that "ACCS has endeavored to keep its monthly reports to district attorneys

strictly confidential."  (Stohlton Decl., ¶ 11.).  Finally, neither of the Monterey Reports produced

under seal has been stamped "Proprietary and Confidential" as is customary with ACCS policy.[3]

(Stohlton Decl., ¶ 16.).  Accordingly, plaintiffs' motion to challenge the confidentiality designations

of Exhibits 1 and 2 is granted.  Specific financial information, including bank account and routing

information located on the bank check, may be redacted on page 3 of Exhibit 2.

　　　　B.　　Modification of Stipulated Protective Order

　　　　Plaintiffs have proposed modifying the January 3, 2007 Stipulated Protective Order in a

---

[3]　　In connection with the motion to dispute the confidentiality designations of Exhibits 1 and 2 to Brett Stohlton's deposition, plaintiffs have lodged the two exhibits with the court.

manner that would shift  the filing burden to the party seeking to maintain confidentiality of certain documents.  Plaintiffs suggest their proposal would cause the designating party to scrutinize at the outset whether a particular documents warrants protection.  Defendant first argues that plaintiffs failed to meet and confer regarding their motion to modify the protective order.  Section 6.2 of the Protective Order requires the parties to meet and confer before modifying the order.  Defendant next argues that  plaintiffs' burden shifting proposal would likely inundate this court with many more motions and cause a waste of judicial resources.  Having reviewed the papers and considered the arguments of counsel, plaintiffs' motion to modify the Stipulated Protective Order is denied.

       C.     Sanctions

Pursuant to Rule 37(b)(2), plaintiffs have moved for sanctions as a result of defendant ACCS's improper and unjustifiable designation of certain documents as discussed above.  Plaintiffs argue that the designations were "clearly unjustified" especially in light of how the documents were obtained and given their availability to the public.  Defendant complains that plaintiffs have failed to meet and confer as required by the protective order and the local rules in this district.  Moreover, defendant ACCS's original designation of ten exhibits was later reduced to two exhibits during plaintiffs' described "case development process."  Additionally, plaintiffs' motives in seeking to challenge the designation of certain exhibits identified above is related to lobbying efforts in the California legislature rather than anything to do with the merits of the above-captioned action. Having reviewed the papers and considered the arguments of counsel, plaintiffs' motion for sanctions is denied.

**IV.    CONCLUSION**

For the foregoing reasons, plaintiffs' motion to challenge the designation of Exhibits 1 and 2 is granted and plaintiffs' motions to modify the January 3, 2007 Stipulated Protective Order is denied.  Additionally, plaintiffs' motion for sanctions is denied.

IT IS SO ORDERED.

Date:     *September 8, 2008*

_____
PATRICIA V. TRUMBULL
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28