UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELENA DEL CAMPO, ET AL.,<br><br>             Plaintiffs,<br><br>      v.<br><br>AMERICAN CORRECTIVE<br>COUNSELING SERVICES, INC., ET AL.,<br><br>             Defendants. | Case No.: C 01-21151 JW (PSG)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO QUASH**<br><br>(Docket No. 1114) |

Defendants Don Mealing, Lynn Hasney and Inc. Fundamentals move to quash a subpoena to third-party National Corrective Group ("NCG"). Plaintiffs Elena Del Campo, Ashorina Medina and Lisa Johnston, on behalf of themselves and others similarly situated, oppose the motion. (collectively "plaintiffs"). On March 22, 2011, the parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel, Defendants' motion to quash is GRANTED.

## I. BACKGROUND

On June 3, 2010, Judge Ware found that Hasney and Mealing were liable under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*[1] However, the court declined to rely on the single database analyst proffered by Plaintiffs to establish the appropriate measure of damages in the

---

[1] *See* Docket No. 877.

ORDER, *page 1*

case. All remedial issues were instead reserved for trial.

On December 13, 2010, a jury returned a verdict largely in favor of Defendants. Plaintiffs had sought $30 million in actual damages. The jury awarded one dollar collectively to Plaintiffs and a statutory penalty of $12,000 against Mealing (despite Plaintiffs' claim that Mealing has a net worth in excess of $18 million).

Shortly after the trial verdict, Plaintiffs served NCG with a subpoena on December 20, 2010 seeking information, *inter alia,* regarding fees collected by Defendant American Corrective Counseling Services, Inc. ("ACCS") from 1997 to 2004. NCG was the successor to ACCS after it declared bankruptcy. It has timely objected to the subpoena but has not moved to quash.

Defendants previously moved for an order determining that discovery is closed. On February 7, 2011, Judge Ware denied the motion on the grounds that the request was premature in light of a forthcoming order addressing certain post-trial motions.[2] A hearing on the post-trial motions is scheduled to be heard on April 18, 2011. The parties dispute the scope of pending issues on equity. Plaintiffs argue that issues of restitution remain unresolved, and Defendants argue that only Plaintiffs' claim for injunctive relief remains unresolved.

Plaintiffs contend that the discovery sought in the subpoena was previously requested from ACCS in December 2008. ACCS provided Plaintiffs with a class list of 1.09 million class member names and addresses, but did not provide any further data before it filed for bankruptcy in January 2009. On April 7, 2009, Plaintiffs served a second subpoena on ACCS seeking computerized class data. However, upon closing of the bankruptcy sale of ACCS' assets to NCG, ACCS transferred its data to NCG. NCG objected to the second subpoena but later produced some of the data Plaintiffs had sought in July 2009.

Prior to trial and during the course of discovery in the case, ACCS and NCG produced in

---

[2] The pending post-trial motions include the following: (1) motion for entry of jury verdict in favor of Hasney (Docket No. 1121); (2) motion for judgment as a matter of law including reconsideration of the June 3, 2010 summary judgment rulings, or alternatively, motion for a jury trial on the issue of liability (Docket No. 1122); (3) post-trial brief re failure to bifurcate issue of restitution (Docket No. 1123); (4) memorandum re right to court trial on equitable issues (Docket No. 1124); (5) motion for new trial, or alternatively, motion to alter or amend judgment concerning liability of Inc. Fundamentals (Docket No. 1125); and (6) renewed motion for judgment as a matter of law, or alternatively, motion for new trial to alter judgment re actual damages (Docket No. 1128).

1  excess of 100,000 pages of documents.

2  Because Defendants disputed the accuracy of the computerized class data at trial, Plaintiffs
3  sought to subpoena from NCG a new computerized class list "consisting of persons to whom ACCS
4  had sent a California district attorney collection letter" in advance of any further trial on issues of
5  equity.

## II.  LEGAL STANDARD

Under Rule 45, any party may serve a subpoena commanding a non-party to attend and testify or to produce designated documents.[3]  Any such subpoena is subject to the relevance requirements set forth in Rule 26(b).[4]  If requested, a court may quash or modify the subpoena for various reasons, including failing to allow reasonable time to comply, requiring a person to travel, who is neither a party nor a party's officer, to travel more than 100 miles from home or business or subjecting a person to undue burden.[5]  A party objecting to a subpoena served on a nonparty must move to quash.[6]  The party who moves to quash has the burden of persuasion.[7]

As a general rule, a party lacks standing under Rule 45(c)(3) to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena.[8]

However, a party may object to Rule 45 subpoenas directed to third parties where the subpoenas affect matters of case management.[9]

---

[3]   Fed. R. Civ. P. 45(a)(1)(A)(iii).

[4]   *See, e.g., Sedaghatpour v. California,* Case No. C 07-1802 WHA (MEJ), 2007 WL 4259214, at *1 (N.D. Cal. Dec 3, 2007).

[5]   Fed. R. Civ. P. 45(c)(3)(A).

[6]   *See id.*

[7]   *See Erickson v. Microaire Surgical Instruments LLC,* Case No. C 08-5745 BHS, 2010 WL 1881946 (W.D. Wash. May 6, 2010).

[8]   *See id.*

[9]   *See, e.g., Methode Electronics, Inc. v. Infineon Technologies Corp.,* Case No. C 99-21142 JW (RS), 2002 WL 33831643, at *1 (N.D. Cal. March 15, 2002).

## III.  DISCUSSION

Plaintiffs dispute whether Defendants have standing to quash the subpoena.  They argue that Defendants have no proprietary, privacy, or other interest in the information sought from NCG.

Here, Defendants are not claiming any privilege as a grounds to quash the subpoena.  Rather, they assert that any further discovery runs afoul of the case's natural conclusion.  In particular, Defendants contend that the trial and verdict resolved most of the matters in the case, except for one discrete issue related to injunctive relief.  Defendants' motion to quash the subpoena, therefore, is based on its affect on case management, a basis explicitly recognized by this court in *Methode Electronics*.  Plaintiffs dispute that the only discrete issue of injunctive relief remains.  Plaintiffs also contend that restitution remains unresolved.  Both parties do not appear to dispute the relevance of the discovery sought.

In light of an explicit determination by the presiding judge rejecting a motion to close discovery as premature, the undersigned must conclude that discovery has yet to be foreclosed.  But there appears little reason for any further discovery to proceed until Judge Ware has ruled on the propriety of any restitution proceeding that, as Plaintiffs' counsel conceded at oral argument, would provide the only justification for the discovery sought.  Accordingly, Defendants' motion to quash is GRANTED without prejudice to Plaintiffs' re-serving the subpoena if restitution proceedings are authorized by the presiding judge.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to quash is GRANTED.

IT IS SO ORDERED.

Dated:     March 24, 2011

_____
PAUL S. GREWAL
United States Magistrate Judge