BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Robert M. Bramson (Bar No. 102006)
Jenelle Welling (Bar No. 209480)
2125 Oak Grove Road, Suite 120
Walnut Creek, California  94598
Telephone: (925) 945-0200
rbramson@bramsonplutzik.com
jwelling@bramsonplutzik.com

O. Randolph Bragg, (IL Bar. No. 06221983)
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington, Suite 900
Chicago, IL   60602
Telephone: (312) 372-8822

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA BAKER, ELENA DEL CAMPO, ASHORINA MEDINA,  and LISA JOHNSTON on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DON R. MEALING, INC. FUNDAMENTALS, and LYNN R. HASNEY,<br><br>Defendants. | Civil Case No.  01-21151 SI<br><br>CLASS ACTION<br><br>**THIRD AMENDED CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT AND THE CALIFORNIA UNFAIR COMPETITION LAW**<br><br>JURY TRIAL DEMANDED |

## I.    INTRODUCTION

1.  Plaintiffs Elena Baker, Elena del Campo, Ashorina Medina, and Lisa Johnston bring this action on behalf of themselves and all others similarly situated, and on behalf of the general public against defendants in connection with defendants' activities related to American Corrective Counseling Services, Inc. [ACCS].  In collecting on checks that have been dishonored, ACCS masquerades as the district attorney, threatening check writers with arrest, prosecution and jail, if they do not pay the unlawful collection fees often exceeding $170.00 per check.  This collection scheme violates the check writers' right to be free from abusive, fraudulent and unfair debt collection practices.  ACCS operates in over a dozen California counties, and in counties throughout the United States.  The most effective means to force defendants to stop violating the law is through this class action, seeking declaratory and injunctive relief, restitution and damages.

## II.    JURISDICTION

2.  Jurisdiction of this Court arises under 28 U.S.C. §1331, 15 U.S.C. §1692k(d), and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

## III.    PARTIES

3.  Plaintiffs are each natural persons who wrote one or more checks that were allegedly dishonored upon presentment and which one of more of the defendants sought to collect.

4.  American Corrective Counseling Services, Inc. was a corporation engaged in the business of collecting dishonored checks, with its principal place of business located at 180 Avenida La Pata, San Clemente, California.

5.  Defendant Don R. Mealing was employed as the president of ACCS through November 2004.  He actively participated in the operations of ACCS.  Defendant Mealing founded and controlled ACCS.  He created ACCS to operate bad check restitution programs in California and throughout the United States.  He designed, developed, and implemented the bad ACCS check restitution program.  In concert with defendant Lynn

1  R. Hasney, Mealing created the other corporate defendant herein in furtherance of

2  ACCS' check restitution business.  At all times relevant herein, he and defendant Lynn R.

3  Hasney had ultimate authority to adopt, approve and modify the business practices of the

4  corporate defendant.

5       6.  Defendant Lynn R. Hasney, is or was employed by ACCS as executive vice

6  president of operations.  She actively participated in the operations of ACCS through

7  November 2004.

8       7.  Defendant Inc. Fundamentals is a business entity formed, owned and

9  controlled by defendant Mealing, with its principal place of business located at 180

10  Avenida La Pata, San Clemente, California.  Inc. Fundamentals is an alter ego of

11  defendant Mealing, through which he participated with defendant Hasney to direct,

12  manage and control the business activities and procedures of ACCS.   Inc. Fundamentals

13  worked in concert with defendant Mealing, ACCS, and Hasney, in the operation of the

14  collection business that is the subject of this lawsuit.

15       8.  Formerly-named defendant Fundamental Performance Strategies is a business

16  entity formed, owned and controlled by defendants Mealing and/or Hasney, with its

17  principal place of business located at 180 Avenida La Pata, San Clemente, California.

18  Fundamental Performance Strategies is an alter ego of defendants Mealing and Hasney.

19  Using shell corporations, defendants Mealing and Hasney operated through Fundamental

20  Performance Strategies to direct, manage and control the business activities and

21  procedures of ACCS.  Fundamental Performance Strategies works in concert with

22  defendant Mealing, ACCS, and the other defendants, in the operation of the collection

23  business that is the subject of this lawsuit.

24       9.  Formerly-named defendant Fulfillment Unlimited, Inc. is a business entity

25  formed, owned and controlled by defendants Mealing and/or Hasney, with its principal

26  place of business located at 180 Avenida La Pata, San Clemente, California.  Fulfillment

27  Unlimited, Inc. is an alter ego of defendants Mealing and Hasney, and is a shell

28  corporation that they created to perform the printing and mailing functions that are an

integral part of ACCS' check restitution business.  Fulfillment Unlimited, Inc. worked in concert with defendant Mealing, ACCS, and the other defendants, in the operation of the collection business that is the subject of this lawsuit.

10. The principal purpose of all defendants was the collection of debts using the mails and telephone. These defendants regularly collected and attempted to collect debts alleged to be due another and are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6).

11.  Defendants are not employees of the District Attorney of Santa Clara County, or of any other California government entity.

IV.   <strong>FACTUAL ALLEGATIONS</strong>

12.   ACCS operated "district attorney bad check restitution" programs in over a dozen California counties, including in the Counties of Santa Clara, Contra Costa, Los Angeles, Monterey, Merced, Orange, Riverside, San Bernardino, San Diego, San Joaquin, Stanislaus and El Dorado.

13.  Case Coordinators working for ACCS acted as *de facto* collectors.  Their primary function was to collect money from check writers, using the phones and the mail.

14.  The practices and procedures used by ACCS in the Santa Clara County Bad Check Restitution Program and the Sonoma County Bad Check Restitution Program are the same, or similar to, those followed in all bad check restitution programs which ACCS operates in California.

15.  ACCS, maintained all physical files, financial records, documentation, reports, computer files, etc. regarding debtors in bad check restitution programs in California.

16.  ACCS received a portion of the money that it collected in all of the bad check restitution programs which ACCS operated in California.

17.  Each California district attorney office with whom ACCS had contracts received a portion of the fees that ACCS collected in the bad check restitution programs with that county.

18.  All defendants receive compensation drawn from the money that ACCS collected in bad check restitution programs in California.

<u>Named Plaintiffs' Experiences</u>

**Elena Baker**

19.  Elena Baker is a natural person residing in San Bernardino County, California. On or about December 8, 2000, though with sufficient cash on hand to pay for the purchases, Dr. Baker wrote check number 1350 in the amount of $57.35 to her local Target store to purchase personal, family, or household goods.  She expected the check to clear and had never previously bounced a check.  The check, however, did not clear upon presentment.

20.  She never received any communications from Target regarding her check. Upon receiving notice from her bank that the check did not clear, she deposited sufficient additional funds into her bank account to cover the check and associated overdraft fees.

21.  Approximately two months later, she received a letter from ACCS titled "OFFICIAL NOTICE" purportedly sent from the San Bernardino County District Attorneys' Office stating that the District Attorneys' Office had received a "CRIME REPORT" alleging that Dr. Baker had violated Penal Code 476(a).  The letter demanded payment of the check amount of $57.35 plus $110 in various fees, including an administrative fee and a class fee.  Based on the content of the letter, Dr. Baker was frightened that she might be arrested if she did not comply with the demands stated in the letter.

22.  Dr. Baker paid the face amount of her check to the address provided in the letter.  She disputed that she had committed a crime, but received a letter denying her dispute and demanding she fulfill all requirements of the District Attorneys' Bad Check Restitution Program.  On or about April 5, 2001, Dr. Baker wrote a check in the amount of $110.00 and mailed it to the address provided.

23.  As demanded by the letter, Dr. Baker called the telephone number provided to schedule her attendance at a "class".  However, all of the classes were set for weekends,

which were not possible for her because she provided full-time care to her special needs child on the weekends.  The person representing the District Attorneys' Office told her she could complete a study at home course if she paid an additional fee.  On May 29, 2001, Dr. Baker paid an additional $25.

24.  Upon receiving the course materials, Dr. Baker completed the required materials, made copies of her work, and returned the completed book to what she believed to be an address for the San Bernardino County District Attorneys' Office.  Even though she had completed the course work and returned the required documentation, she received a threatening phone call in which the "representative" of the District Attorneys' Office told her that the District Attorney would prosecute her if she did not attend the class.  She explained that she had taken the class and that she had copies of the worksheets from the study at home course.  She also continued to receive letters threatening prosecution if she did not fully comply with the demands.

25.  Letters purportedly from the San Bernardino District Attorneys' Office continued to threaten prosecution and demand that she fulfill the class requirement, which she had already done.  She was forced to demonstrate again that she had completed the home study course and fulfilled all demands.

**Elena del Campo**

    **a.  Check No. 1610 to Fry's Electronics**

26.  Plaintiff Elena M. del Campo is a natural person residing in San Mateo County, California.  On or about June 11, 2001 plaintiff Elena del Campo wrote check number 1610 in the amount of $95.02 to the Fry's Electronics Store in Palo Alto, California, [Fry's], for the purchase of goods for personal use.  This check did not clear upon presentment.

27.  Ms. del Campo learned a few days later that her check had not cleared and she contacted Fry's in order to pay the check.  Ms. del Campo was told by a Fry's employee that the check was not yet in the Fry's computer system, and that therefore Ms.

1   del Campo's payment could not be accepted.  She was directed to wait for a verbal or

2   written payment request from Fry's.

3        28.  Fry's did not contact Ms. del Campo.  However, in October 2001 Ms. del

4   Campo received a three-page document dated October 3, 2001, purportedly sent by the

5   Santa Clara County District Attorney.  The letter was entitled "OFFICIAL NOTICE" on

6   letterhead of Santa Clara County District Attorney and George Kennedy, District Attorney,

7   over the signature of "Bruce D. Raye, Criminal Investigator," and concerned check no.

8   1610, which Ms. del Campo had written to Fry's.  The letter contains demands for

9   payment of the check amount, plus $170.00 in various fees.  The total amount demanded

10  is $265.02.  A copy of this letter is attached to this Complaint as Exhibit 1.

11       29.  On or about October 17, 2001 Ms. del Campo mailed payment in the amount

12  of $95.02 to the address provided in Exhibit 1, as payment to Fry's Electronics for check

13  no. 1610.

14       30.  Without any notice either to Fry's Electronics or to Ms. del Campo, ACCS

15  converted 50% of the $95.02 which Ms. del Campo sent for its own use.

16       31.  ACCS sent Fry's Electronics $47.51, representing 50% of the amount paid by

17  Ms. del Campo.  ACCS reported to Fry's Electronics that Ms. del Campo had paid only

18  $47.51.

19       32.  As a result of ACCS' conversion of 50% of the money that Ms. del Campo

20  sent as payment for check no 1610, Ms. del Campo still has an unsatisfied debt to Fry's

21  and Fry's has been deprived of $47.51 that Ms. del Campo intended to be paid to Fry's.

22       33.  In November 2001 Ms. del Campo received a second letter, purportedly from

23  the Santa Clara County District Attorney, signed by "R.D. Davis, Case Coordinator."  This

24  letter is dated November 7, 2001 and is entitled "NOTICE OF FAILURE TO COMPLY."

25  The letter included the statement:

26      Your failure to respond may not result in the filing of this incident report by the
        District Attorney in MUNICIPAL COURT!

27  A copy of this letter is attached to this Complaint as Exhibit 2.

28

34.  On or about December 7, 2001 Ms. del Campo received a third letter, purportedly from the Santa Clara County District Attorney, signed by "R.D. Davis, Case Coordinator."  This letter is dated December 5, 2001 and is entitled "OFFICIAL NOTICE." This third letter contains a demand for $170.00, which is the total of the fees originally demanded in the initial letter to Ms. del Campo. This letter includes the statement:

> **Failure to contact this office may now result in criminal prosecution proceedings being pursued.**

A copy of this letter is attached to this Complaint as Exhibit 3.

### b. Check No. 1813 to Fry's Electronics and Check No. 1657 to South Peninsula Veterinary Emergency Clinic

35.  On or about May 26, 2001 Ms. del Campo wrote a check to Fry's Electronics for personal goods, in the amount of $81.99.  The check was subsequently dishonored.

36.  On or about December 9, 2001 Ms. del Campo wrote a check in the amount of $240.00 to the South Peninsula Veterinary Emergency Clinic for payment of services rendered to her household pet.  The check was subsequently dishonored.

37.  In May 2002, Ms. del Campo received a letter, dated May 28, 2002, purportedly from the Santa Clara County District Attorney, demanding $536.99 in payment of the two checks.  The total amount demanded was calculated by adding the check amounts and then assessing charges of $35.00 in administrative fees per check, $10.00 in bank charges per check, and a class fee of $125.00.  A true and correct copy of that letter is attached to this Complaint as Exhibit 4.

38.  In July 2002, Ms. del Campo received a letter, dated July 1, 2002, purportedly from the Santa Clara County District Attorney, presumably in connection with the two checks described in the preceding paragraph, titled **NOTICE OF FAILURE TO COMPLY**. The letter included the statement:

> IF YOU WISH TO AVOID POTENTIAL ARREST AND PROSECUTION, YOU NEED TO CALL THIS OFFICE IMMEDIATELY!

A true and correct copy of that letter is attached to this Complaint as Exhibit 5.

39.  On or about July 20, 2002, Ms. del Campo paid ACCS 411.99, in payment of the check amounts, the bank service charge fees and the administrative fees.  Ms. del Campo did not seek to enroll in the bad check restitution program or pay the class fee for the program.

40.  Plaintiff del Campo alleges, on information and belief, that ACCS paid the South Peninsula Veterinary Emergency Clinic $142.50 and paid Fry's Electronics $63.44, withholding the remaining balance of $205.94 for its own profit, without notifying either merchant of its action.  As a result, plaintiff del Campo still has unsatisfied debts to these two merchants.

**Ashorina Medina**

41.  Plaintiff Ashorina Medina is a natural person residing in Santa Clara County, California.  Ashorina Medina wrote check no. 125 in the amount of $250.00 to the Humane Society of Santa Clara County, for the adoption of two dogs for her personal use.  This check did not clear upon presentment.

42.  In March 2003, Ms. Medina received a letter dated March 3, 2003, purportedly sent by the Santa Clara County District Attorney.  The letter was entitled "OFFICIAL NOTICE" on letterhead of Santa Clara County District Attorney and George Kennedy, District Attorney, and concerned the unpaid check which Ms. Medina had written to the Humane Society.  The letter contains demands for payment of the check amount, plus $170.00 in various fees.   The total amount demanded is $420.00.  A copy of this letter is attached to this Complaint as Exhibit 6.

43.  In March 2003, Ms. Medina received a second letter, purportedly from the Santa Clara County District Attorney, with a signature block for "Mr. Green, Case Coordinator."  This letter is dated March 24, 2003 and is entitled "OFFICIAL NOTICE." The letter includes a demand for $420.00 and contains the statement:

**Failure to contact this office may now result in criminal prosecution proceedings being pursued.**

A copy of this letter is attached to this Complaint as Exhibit 7.

44.  After receiving Exhibits 6 and 7, Ms. Medina paid $210.00 to the "Santa Clara County District Attorney Bad Check Restitution Program."

45.  On information and belief, Ms. Medina alleges that, without notifying either the merchant or her, ACCS converted 50% of her $210.00 payment to its own use, and reported to the Humane Society of Santa Clara County that she had paid only $105.00. As a result, Ms. Medina still owes the Humane Society $145.00.

46.  In May 2003, Ms. Medina received a letter, dated May 27, 2003, purportedly from the Santa Clara County District Attorney, from "Mr. Green, Case Coordinator."  This letter is dated May 27, 2003.   This letter contains the statement:

PLEASE CONTACT THIS OFFICE TO AVOID CRIMINAL PROSECUTION. A copy of this letter is attached to this Complaint as Exhibit 8.

**Lisa Johnston**

47.  Plaintiff Lisa Johnston is a natural person residing in Santa Clara County, California Prior to April 22,, 2002 Lisa Johnston wrote a check for personal, family or household purposes that allegedly did not clear.  Prior to April 22, 2002 Lisa Johnston was contacted by ACCS, purporting to be a branch of the Santa Clara County District Attorney's office, demanding payment of the check amount plus fees.

48.  As of April 22, 2002, ACCS claimed that Ms. Johnston owed $211.74.

49.  Between April 2002 and July 2002, according to ACCS, Ms. Johnston paid her balance down to $161.16.  Between July 2002 and January 2003, Ms. Johnston made periodic payments of $5.00 and $10.00, totaling an additional $60.00.

50.  Defendants assessed additional fees, and deducted its own fees from the amount paid towards the check, without Ms. Johnston's knowledge or consent.

51.  Prior to January 2003 defendants sent Ms. Johnston a series of its standard computer-generated form letters.

52.  In January 2003, Ms. Johnston received a letter dated January 23, 2003, purportedly sent by the District Attorney of Santa Clara County.  The letter contains a demand for a "Case Balance" of $111.16, and contains the statement:

**Failure to contact this office may now result in criminal prosecution proceedings being pursued.**

A copy of this letter is attached to this Complaint as Exhibit 12.

53.  On or about May 28, 2003 defendants sent Ms. Johnston a letter purporting to be from Mr. Kramer, a Case Coordinator with the Santa Clara County District Attorney's Office.  That letter, titled **NOTICE OF FAILURE TO COMPLY**, includes the statement:

Your failure to respond NOW may result in the referral of this crime report for CRIMINAL PROSECUTION.

A copy of this letter is attached to this Complaint as Exhibit 13.

54.  On or about June 9, 2003 ACCS sent Ms. Johnston a letter purporting to be from Mr. Kramer, a Case Coordinator with the Santa Clara County District Attorney's Office.  That letter, titled ATTENTION: LISA JOHNSTON, includes the statement:

Due to your failure to complete the requirements of the District Attorneys' Bad Check Restitution Program . . . we are now initiating formal prosecution proceedings against you.  Criminal charges of PC 476(a) . . .are being prepared. . . .

A copy of this letter is attached to this Complaint as Exhibit 14.

V.    **FACTS COMMON TO ALL PLAINTIFFS**

55.  ACCS and  defendants generally treated plaintiffs the same way that they treat all check writers from whom they attempt to collect money.

56.  The checks which are referred to ACCS come mostly from retail merchants, such as Walmart, COSTCO, Safeway, Fry's and Target, as well as small retail merchants, such as Glass 4 Less.

57.  Merchants refer checks for collection, and usually do not intend to claim that the check writer committed a crime. They do not intend to claim that the check writer has

committed a crime.  Many merchants transmit check information only, and do not provide defendants with any information that is not on the face of the check.

58.  When a merchant submits a check to defendants, defendants direct the merchant not to communicate with the check writer.

59.  When ACCS and defendants contact a check writer, defendants order the check writer not to communicate with the merchant.

60.  ACCS and defendants commence collection procedures knowing that there is not probable cause to conclude that the check writer has written a returned check with criminal intent.

61.  Check writers who call the District Attorney Bad Check Restitution Program to question the letters believe that they are speaking with neutral employees of the district attorney who will provide truthful information.  Check writers are not told that they are talking to employees of a private company, and that both the employee and the company profits directly from the money collected from check writers.  Check writers who explain that the check was returned because of a mistake made by the check writer or by the bank are told that the check writer is nonetheless liable, and must pay the money being demanded to avoid the possibility of prosecution.

62.  Despite knowing that merchants rarely, if ever, incur a $10 bank charge as a result of a returned check, defendants always demand that the check writer pay a $10 bank charge.

63.  The letters sent by ACCS and defendants are purportedly sent by a California district attorney.  However, although a district attorney has generally authorized ACCS to operate a check restitution program in which it uses computer-generated form letters, the district attorney does not specifically know what the letters say, or when and how they are used.  Employees at the district attorney's offices do not supervise the preparation or mailing of the correspondence to check writers, or other communications with check writers.  This lack of supervision is typical in the business relationship between ACCS and the California district attorneys with which it contracts.

64.  Plaintiffs allege, on information and belief, that in connection with checks written by one or all of the plaintiffs,  ACCS  sought private bank account information from the banks on which the checks were drawn, under the false pretense that it was a district attorney investigating a crime report.

65.  The letters sent to plaintiffs contain numerous material misrepresentations and omissions, including, but not limited to, the following:

a.  The district attorney operates and controls a Bad Check Restitution program.

b.  The letter was prepared and mailed by the district attorney, and is official correspondence from a criminal investigator employed by the district attorney.

c.  Communications to the toll-free phone number and address printed on the letter will be received and considered by the district attorney.

d.  The payee of the check has made an "Incident Report" against the check writer alleging a violation of Penal Code § 476a.

e.  The check writer must enroll in a misdemeanor diversion program to avoid probable criminal prosecution.

f.  As a condition of participating in a misdemeanor diversion program the check writer is lawfully obligated to pay the check amount, plus a $35.00 administrative fee, a $10.00 returned item fee pay a class fee of $125.00 or more, and attend a "Financial Accountability Class,".

g.  If the check writer does not participate in the diversion program, there is likelihood that she will be criminally prosecuted.

h.  In order to avoid probable prosecution, the check writer must pay all fees and attend the diversion class.

i.  The district attorney may prosecute an alleged violation of Penal Code § 476a, without considering the statute of limitations has run.

j.  The "bad check restitution program" meets California statutory requirements.

66.  The true facts are as follows:

a.  The Bad Check Restitution Program is operated for profit by ACCS with little or no supervision by the district attorney.

b.  The form letters are prepared and sent by ACCS, not by employees of the district attorney.

c.  The address and phone number on the form letters are contact points with ACCS, not for the district attorney.  ACCS representatives who are contacted by check writers disguise the fact that they are employees of a private company and represent that they are employees of the district attorney.

d.  Generally, merchants refer checks to the "check restitution program" simply for collection, not for possible prosecution.  Check payees do not generally allege that check writers have violated Penal Code § 476a.  California Penal Code § 476a requires proof that: *(1) the check writer passed a check knowing that it would not clear; and (2) at the time the check writer passed the check, he or she had an intent to defraud the payee of the check.*

e.  Prior to ACCS sending the form demand letters, the district attorney has not conducted any review of the facts, or determined that there is probable cause to believe that the check writer has violated Penal Code § 476a.

f. The district attorney rarely reviews the facts concerning a dishonored check handled by ACCS at any point.  In those few instances where the district attorney conducts a criminal investigation, this does not take place until ACCS has exhausted its collection efforts.

g. The district attorney rarely, if ever, initiates criminal prosecution where the check writer does not enroll in the bad check restitution program, even where the check writer does not pay the check.

h.  The check writer is not lawfully obligated to pay all the charges demanded.

i. The district attorney will not initiate a prosecution pursuant to Penal Code § 476a when the statute of limitations has run.

j. ACCS will not consider referring an account to the district attorney for prosecution review, when a check writer has paid all the fees that defendants demanded, but has not attended the diversion class.

k. The "bad check restitution program" does not meet California statutory requirements.

67.  Although a district attorney may provide blanket authorization to ACCS to conduct the Bad Check Restitution Program in the district attorney's name, the district attorney does not provide any meaningful supervision of, or control over, ACCS' actions.

68.  The district attorneys allow ACCS to send form letters in the name of the district attorney, without specifically knowing what the letters say, or when and how they are used.

69.  The district attorneys allow ACCS to collect unlawful check charges and then share in the proceeds of those collections.

70.  The district attorneys refer all payee inquiries concerning dishonored checks to ACCS, without first making any investigation.

71.  The district attorneys refer checks that have not cleared to the Bad Check Restitution Program without first determining whether there is probable cause to believe there has been a violation of Penal Code § 476a.

72.   The district attorneys allow ACCS to operate a "bad check restitution program" despite actual and constructive knowledge that the program, as operated by ACCS, does not meet the requirements of Penal Code §§ 1001.60, *et seq.,* and is otherwise being conducted unlawfully.

## VI.   **PRACTICES AND POLICIES OF ACCS**

73.  ACCS operates county "bad check restitution programs" in association with a number of California counties.

74.  It is or was the practice and policy of ACCS and defendants to prepare and cause to be sent letters containing numerous false representations, and to impersonate the district attorney in responding to check writer and check recipient inquiries.

75.  It is or was the practice and policy of ACCS and defendants to send collection letters without providing the validation notice required by 15 U.S.C.§1692g(a).

76.  It is or was the practice and policy of ACCS and defendants to send collection letters without including the debt collection warning required by 15 U.S.C. §1692e(11).

77.  It is or was the practice and policy of ACCS and   defendants to send collection letters without the intent or legal authority to open a criminal investigation.

78.  It is or was the practice and policy of ACCS and defendants to send collection letters falsely stating or implying that there is a probability that the check writer will be criminally prosecuted unless he or she submits to the Bad Check Restitution Program and pays all fees being demanded.

79.  It is or was the practice and policy of ACCS and defendants to send collection letters misrepresenting the character, amount, or legal status of the alleged debt.

80.  It is or was the practice and policy of ACCS, masquerading as a law enforcement agency, to order both the merchant and the check writer that they may not communicate with each other directly.  The purpose of this order is to assure that check writer payments are made through ACCS, thus allowing ACCS to deduct its fees prior to the merchant receiving full payment.

81.  It is or was the practice and policy of ACCS and defendants to seek check charges that are not authorized by law.

82.  It was or is the practice and policy of ACCS to withhold up to 50% of the amount paid by the check writer when less than the total demanded by ACCS is paid, without disclosing to either the merchant or the check writer that it has withheld any portion of the check writer's payment.

83.  It is or was the practice and policy of ACCS to obtain information from banks concerning check writers by falsely certifying that it is a district attorney investigating a crime report.

## VII.  CLASS ACTION ALLEGATIONS

84.  This action is brought as a class action, as follows:

**Umbrella class:**  All persons to whom ACCS mailed at least one demand letter purporting to be from a district attorney's office in California, attempting to collect a dishonored check, which was not returned as undeliverable,  and from whom ACCS collected money in the name of a government entity.

Sub-class 1: [UCL class]:  All members of the umbrella class from whom ACCS collected money on or after December 12, 1997.

Sub-class 2: [FDCPA class]:  All members of the umbrella class, from whom ACCS collected money on or after December 12, 2000 for checks written for personal, family, or household purposes.

85.  Plaintiff alleges that the umbrella class, and each sub-class is so numerous that joinder of all members is impractical.  The umbrella class contains in excess of 100,000 class members.  Each of the sub-classes includes thousands of class members.

86.  There are questions of law and fact common to the class, including, but not limited to, the following:

a.  Whether defendants made demands on all class members that are the same or similar to the demands made to the plaintiffs.

b.  Whether defendants simulate or falsely represent that its collection letters are authorized, issued, or approved by the official of any state;

c.  Whether the collection activities of ACCS and defendants are governed by the FDCPA.

d.  Whether the collection activities of ACCS and defendants are unfair, fraudulent or unlawful.

e.  Whether ACCS and defendants failed to provide the validation notice, expressly required by the FDCPA

f.  Whether ACCS and defendants failed to provide the debt collection warning expressly required by the FDCPA.

g.  Whether ACCS and defendants threatened to take any action that cannot legally be taken or that is not intended to be taken.

h.  Whether ACCS and defendants falsely represented the character, amount, or legal status of the debt.

i.  Whether ACCS and defendants represented or implied that nonpayment of the debt will result in the arrest or criminal prosecution of the check writer when such action is not intended.

j.  Whether ACCS and defendants collected or attempted to collect fees that are not authorized by law.

k.  Whether ACCS and defendants gave the false representation or implication that documents are legal process.

l.  Whether ACCS and defendants used any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

87.  Plaintiffs' claims are typical of the claims of the potential class members.  All claims of plaintiff and the class are based on the same facts and legal theory.

88.  Plaintiffs will fairly and adequately protect the interests of the class.  They have retained counsel who are experienced in handling class actions as well as FDCPA, and UCL claims.  Neither plaintiffs nor their counsels have any interests that may conflict with the interests of the class.

89.  Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory and injunctive relief with respect to the class as a whole.

90.  Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.  The questions of law and fact common to the members of the classes predominate over any questions affecting an individual member.

b.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

91.  Plaintiffs request certification of a class pursuant to Rule 23(b)(2), or, in the alternative, a hybrid class combining the elements of Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for declaratory and equitable relief, including injunctive relief and restitution.

## VIII.   SECOND CLAIM FOR RELIEF
## (FAIR DEBT COLLECTION PRACTICES ACT)

92.  Plaintiffs incorporate by reference all previous paragraphs as though set forth herein.

93.  ACCS and defendants have engaged in multiple violations  of the FDCPA including, but are not limited to, the following:

a.  The initial ACCS letter to check writers, of which Exhibit 1 is an example, does not contain the validation notice required by 15 U.S.C. §1692g(a), nor is the validation notice provided within five days of the initial communication.

b.  None of the collection letters that ACCS and defendants send contain the debt collection warning required by 15 U.S.C. §1692e(11).

c.  The collection letters sent by ACCS and defendants contain false, deceptive and misleading implications or representations concerning ACCS' affiliation with criminal justice powers of California district attorneys in the counties in which ACCS operates, in violation of 15 U.S.C. §1692e(1).

d.  ACCS and defendants violate 15 U.S.C. §1692e(2)(A) by misrepresenting the character, amount, and legal status of the debt.

e.  ACCS and defendants violate 15 U.S.C. §1692e(4) by representing that failure to pay all amounts being demanded will result in the arrest or imprisonment of the check writer, despite the fact that none of the defendants have the authority to initiate an arrest, and that it is unlikely that a check writer will be arrested, even if the check writer pays nothing, or pays less than the full amount demanded.

1        f.  ACCS and defendants violate 15 U.S.C. §1692e(5) by threatening action that is

2  not intended to be taken or cannot legally be taken.

3        g.  ACCS and defendants violate 15 U.S.C. §1692e(9) in that the overall

4  appearance of the defendant's communications which gives the impression it is an official

5  communication from the office of a California district attorney.

6        h.  ACCS and defendants violate 15 U.S.C. §1692e(14) by using a name other

7  than their own, *i.e.* – the name of the district attorney of the county in which the

8  dishonored check was written.

9        i.  ACCS and defendants violate 15 U.S.C. §§ 1692f and 1692f(1) by requesting

10  amounts which are not authorized by contract or by California law.

11        WHEREFORE, relief is requested as set forth below.

12

13                    IX.  **THIRD CLAIM FOR RELIEF**
           **(CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.)**

14        94.  Plaintiffs incorporate by reference all previous paragraphs as though set forth

15  herein.

16        95.  The California Unfair Business Practices Act, [UCL], Cal. Business &

17  Professions Code §§17200, *et seq.*, prohibits unlawful, unfair or fraudulent business acts

18  or practices.  The UCL provides that a Court may order injunctive relief and restitution to

19  affected members of the general public as remedies for any violations of the UCL.

20        96.  ACCS and defendants have committed unlawful, unfair or fraudulent acts or

21  practices in sending the demand letters, making the demands and collecting check fees,

22  engaging in the unauthorized practice of law, converting money intended for merchants

23  to its own use, and invading the privacy of check writers, as described herein, in violation

24  of the Cal. Bus. & Prof. Code §17200 *et seq.*

25        97.  The acts and practices complained of herein constitute unfair business

26  practices because these acts and practices are patently unfair and substantially injurious

27  to the general public and offensive to established California public policy.

28

---

98.  The acts and practices complained of herein constitute unfair business practices because these acts and practices are likely to deceive the general public as to their legal rights and obligations with respect to the collection of their alleged debts.

99.  The acts and practices complained of herein constitute unfair business practices because these acts and practices are unlawful under federal law and state law, including, but not limited to, the federal and state constitutions, Cal. Penal Code § 518 and the Fair Debt Collection Practices Act.

100.  The acts and practices complained of herein constitute unfair business practices because these acts and practices are fraudulent.

101.  Plaintiffs are entitled under the UCL to enjoin these acts and practices and to obtain restitution of all funds obtained by ACCS and defendants by reason of and through the use of these unlawful, unfair and fraudulent acts and practices.  Pursuant to the UCL, plaintiffs hereby request declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, real or personal, which may have been acquired by defendants by means of such unlawful, unfair and fraudulent business practices.

102.  In addition, pursuant to Cal. Code of Civil Procedure §1021.5, plaintiff is entitled to recover reasonable attorneys' fees, costs and expenses incurred in bringing this action.

WHEREFORE, relief is requested as set forth below.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure of all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that judgment be entered for them and the class against defendants for:

1      1.  Declaratory relief that ACCS's and defendants' collection practices described

2  herein violated, the FDCPA and the UCL;

3      2. A preliminary and permanent injunction enjoining the defendants, their officers,

4  employees, agents and all those acting in concert with them from, as follows:

5      a.  prohibiting defendants participating in the collection of checks pursuant to Cal.

6  Penal Code §§ 1001.60, *et seq.*, unless all requirements of the statute have been met;

7      b.  prohibiting defendants from communicating with check writers without

8  disclosing in each communication that it is a debt collector, not a district attorney's office;

9      c.  prohibiting defendants from seeking to collect, or collecting, any unlawful check

10  charges, including, but not limited to, program fees and returned check fees that are not

11  remitted to the payee;  and

12      d.  prohibiting defendants from making false representations in their

13  communications with check writers.

14      3.  Actual damages;

15      4.   Restitution;

16      5.  Statutory damages pursuant to 15 U.S.C. §1692k;

17      6.  Punitive and exemplary damages;

18      7.  Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1692k, and Cal.

19  Code of Civil Procedure § 1021.5; and

20      8.  Such other and further relief as the Court deems proper.

21

22  DATED: September 9, 2013                    BRAMSON, PLUTZIK, MAHLER &
                                               BIRKHAEUSER

23

24                                             By: ___/s/___ Robert M. Bramson
                                                   Attorneys for Plaintiffs

25

26

27

28

Seq 562 Tray 0047

## PART 1 - PROGRAM ENROLLMENT

Page 2

IF YOU WISH TO ENROLL IN THE DISTRICT ATTORNEY'S BAD CHECK RESTITUTION PROGRAM, COMPLETE THE ENROLLMENT FORM BELOW:

**ENROLLMENT FORM**　　　　Case # SCC 102496-00
*(Please Return This Page With Your Payment)*

Name: ELENA M DEL CAMPO　　　　**TOTAL BALANCE DUE:**　**$265.02**

Address: _____　　Phone: _____

_____　　　　　　DL#: _____

City/State/Zip _____　　SS#: _____
☐ *Is this a new address?*

*Select Payment Option Below:*

☐ I wish to PAY IN FULL by November 3, 2001 and deduct $25.00 from the Program Fee. I have deducted $25.00 from the TOTAL BALANCE DUE and I am enclosing $240.02.

☐ I am requesting an automatic payment extension. I am enclosing $132.51 which is 1/2 of the total balance and the remaining balance of $132.51 will be paid by December 2, 2001.

**ALL PAYMENTS MUST BE POSTMARKED BY THE DATES INDICATED!** For additional information regarding payments, please call (800) 931-9720.

**Make payments payable to:**
**Santa Clara County District Attorney**　　NOTE: Mail payments by MONEY ORDER, or
**1765 Landess Ave. PMB 150**　　　　　　**CASHIER'S CHECK ONLY!**
**Milpitas, CA 95035-7019**　　　　　　　**NO PERSONAL CHECKS ACCEPTED!**
*(This is not a walk-in office)*

### FINANCIAL ACCOUNTABILITY CLASS SCHEDULE INFORMATION

Please indicate which Class you wish to attend by placing the #1 in front of the class date. Please choose an alternate date by placing #2 in front of that date in case your first choice is not available as classes are subject to availability. Classes are scheduled on a first come first serve basis.

____ Saturday November 17, 2001 8:00 am - 4:30 pm.　____ Saturday December 1, 2001 8:00 am - 4:30 pm

OUR OFFICE WILL MAIL CONFIRMATION OF YOUR CLASS, ALONG WITH DIRECTIONS TO THE CLASS LOCATION. Please bring your confirmation letter, a pen or pencil, and picture indentification for admittance to the class. Should you not receive confirmation of your requested class by ten (10) working days prior to class, please call (800) 931-9720.

*Special Note: If you have a medical condition that may prevent your attendance in class, please mail in a note from your physician stating your condition and treatment prognosis BEFORE your payment deadline.*

By my signature I hereby enroll in the Bad Check Restitution Program and agree to all terms and conditions.

_____　　　　SCC 102496　　100301
ELENA M DEL CAMPO

# EXHIBIT 1



Seq. 562 Rev 0017
**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# OFFICIAL NOTICE

llıldılıllıldıdılllındılllndılldlndılld
ELENA M DEL CAMPO
PO BOX 292
REDWOOD CITY CA 94064-0292

Date of Notice: 10/03/01

Case #: SCC 102496-00

**PLEASE READ THIS NOTICE CAREFULLY.** The Santa Clara County District Attorney's Office has received an INCIDENT REPORT  alleging you have violated Penal Code 476(a) of the California State Statute; Passing a Worthless Check.    A conviction under this statute is punishable by up to six (6) months in county jail and up to $1,000 in fines. See **PART 2** of the Information pages attached to this Notice about the party(s) filing this crime report.

**YOU MAY AVOID A COURT APPEARANCE if you agree to enroll in the Santa Clara County District Attorney's Bad Check Restitution Program.**  California Penal Code Sections 1001.60-1001.65 authorize District Attorneys to make this offer to individuals that comply with the following Program requirements:

  1. Complete the Santa Clara County District Attorney's mandatory one-day educational class
     on Financial Accountability.

  2. Pay FULL restitution for all reported checks, PLUS all applicable administrative, returned item,
     and program fees.

Program enrollment is OPTIONAL.  You may wish to consult an attorney to obtain legal advice about your rights in regards to this matter. The District Attorney is extending an opportunity to participate in a pre-trial misdemeanor diversion program as an alternative to appearing in court. The District Attorney does not require you to enter any form of plea in exchange for Program participation, and participation is NOT an admission of guilt.

The Bad Check Restitution Program is designed to bring a fast resolution to this matter.  Program completion requires payment of the appropriate restitution and fees and attendance at a one-day class, typically 8:00am - 4:30pm on a Saturday. If you successfully comply, you will receive a notice of completion from the District Attorney and  THERE WILL BE NO CRIMINAL, POLICE, OR COURT RECORD OF THIS MATTER!

WARNING - Completion of the Bad Check Restitution Program is valid ONLY if you comply with ALL District Attorney requirements. Failure to comply with payment of restitution and fees, or class attendance may subject you to criminal court proceedings.

For Program enrollment and payment information, please review PART 1 of the next page. If you believe you received this Notice in error,   please read PART 3 of the instructions before calling this office.

Signed,

Bruce D. Raye
**Bruce D. Raye**
Criminal Investigator
Santa Clara County District Attorney's Office

# EXHIBIT 1

Seq: 662 Tray: 0017

## PART 2 - INCIDENT REPORT INFORMATION

Page 3

| VICTIM | CASE # | CHECK # | CHECK AMOUNT | RETURNED ITEM FEE | ADMIN FEE | TOTAL THIS CHECK |
|--------|--------|---------|--------------|-------------------|-----------|------------------|
| FRYS ELECTRONICS #03 | 102496 | 1610 | $95.02 | $10.00 | $35.00 | $140.02 |

PROGRAM FEE: $125.00

**TOTAL BALANCE DUE:** $265.02

*NOTE: You may deduct $25.00 from the Program Fee if your FULL PAYMENT is POSTMARKED by: November 3, 2001.*

**Do not attempt to contact the business or party who filed the Report.
THIS CASE MUST NOW BE RESOLVED THROUGH THIS OFFICE!**

## PART 3 - IMPORTANT INFORMATION     Please Read Carefully

● **IF YOU BELIEVE YOU RECEIVED THIS NOTICE IN ERROR**

STEP 1 • Review your records CAREFULLY.

STEP 2 - Call the District Attorney's Bad Check Restitution Program Office at **(800) 931-9720**.

STEP 3 - Ask for a Case Coordinator, explain the error.

STEP 4 - The Case Coordinator will ask you to mail in documentation of the error. If you did not write the check(s), you will be asked to go to your bank to obtain and sign an affidavit that you did not write the check(s) in question. In most cases, you will also be required to file a police report if you believe the check(s) were stolen or forged. With cases involving stop payments on checks, or performance disputes, please consult a Case Coordinator for more information.

STEP 5 - Mail in your case documentation to the: **Santa Clara County District Attorney
Bad Check Restitution Program
1765 Landess Ave. PMB 150
Milpitas, CA 95035-7019**

Note: Personal bankruptcies DO NOT void responsibility in a criminal matter. Contact our office for details, or consult an attorney.

● **IF YOU BELIEVE YOU WERE NOT PROPERLY NOTIFIED**

The District Attorney's Office accepts ONLY bad check incident reports from those businesses, or parties that have DOCUMENTED attempts to notify you according to California State law. In addition to notification from the party you issued the check to, banks routinely send customers notice of returned items. Non-sufficient funds checks also appear on your monthly account statement. **CHECK YOUR RECORDS CAREFULLY BEFORE CONTACTING THIS OFFICE.**

● **IF YOU HAVE ALREADY PAID THE MERCHANT, OR FILING PARTY**

Please mail documentation that the merchant or filing party received payment BEFORE the date of this Notice. Allow the Office fourteen (14) days to process your information before calling. Our Office will determine the appropriate course of action and contact you by phone and/or letter.

● **IF YOU WANT TO APPEAR IN COURT**

If you want to contest this action and appear in court, you may want to consult an attorney. Contact this office and inform us of your decision. The District Attorney's Office or Court will send additional information and instructions on how to prepare for a Court appearance.

**FOR ADDITIONAL INFORMATION CALL  (800) 931-9720**



# EXHIBIT 1

Seq: 848 Tray: 0016

**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# NOTICE OF FAILURE TO COMPLY

·Il.l..l.,ll.,.ll.,.l,.,lll.,,,l,.ll,l.,,l,ll,l,,,l,l,ll.ll

ELENA M DEL CAMPO
PO BOX 292
REDWOOD CITY CA 94064-0292

Date of Notice: 11/07/01

Case #: SCC 102496-16

OUR RECORDS INDICATE THAT YOU HAVE FAILED TO RESPOND TO A
PREVIOUS NOTICE REGARDING AN INCIDENT REPORT FILED WITH
THIS OFFICE.

Your failure to respond may now result in the filing of this incident report
by the District Attorney in MUNICIPAL COURT!

CALL THIS OFFICE IMMEDIATELY TO OBTAIN INSTRUCTIONS ON
SCHEDULING YOUR EDUCATION CLASS, AND PAYING THE BALANCE OF
YOUR CASE IF YOU WISH TO PREVENT THIS ACTION! CALL
**(800) 931-9720.**

Office hours: Monday - Friday 8:00 am - 6:00 pm.

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Sincerely,

**R. D. Davis**
Case Coordinator

Document 115

# EXHIBIT 2



Seq 633 Tray. 0017

**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# OFFICIAL NOTICE

Iluluhilluhluhluhilluhlluhilluhluhluhilullli
ELENA M DEL CAMPO
PO BOX 292
REDWOOD CITY CA 94064-0292

Date of Notice: 12/05/01

Case #: SCC 102496-16



Please contact this office prior to 12/19/01 regarding incident reports
involving California Penal Code Section 476(a); "Passing a Worthless Check". Prior
attempts to resolve this situation have been unsuccessful.

**Failure to contact this office may now result in criminal prosecution**
**proceedings being pursued.** The amount below reflects the total balance to
discharge your incident report as of the date of this letter.

### CASE BALANCE: $170.00

If you wish to prevent any further action against you by this office, call
**(800) 931-9720** during the hours listed below. After hours, please leave
a message on how we may contact you regarding the disposition of your case.

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Office hours: Monday - Friday 8:00 am - 6:00 pm.

Thank you for your immediate response to this letter!

Sincerely,

**R. D. Davis**
Case Coordinator

Document 118

# EXHIBIT 3



Seq 585 Tray: 0042

**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# CASE INFORMATION

ELENA DELCAMPO
PO BOX 292
REDWOOD CITY CA 94064-0292

Date of Notice: 05/28/02

Case #: SCC 118706-00

Per your request, the amount needed, as of the date of this letter, to clear the bad check incident report(s) that has been filed with this office is:

### CASE BALANCE: $536.99

If you have not completed the Check Writer Education Class that is required, you will need to do so in order for the District Attorney to discharge this incident report.

You may reach us at **(800) 931-9720.**

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Thank you for your cooperation.

Document 124

# EXHIBIT 4



Seq: 745 Tray: 0025

**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# NOTICE OF FAILURE TO COMPLY

ELENA M DELCAMPO
PO BOX 292
REDWOOD CITY CA 94064-0292

Date of Notice: 07/01/02

Case #: SCC 99921-16

fry's BB

OUR RECORDS INDICATE YOU HAVE FAILED TO RESPOND TO A PREVIOUS
NOTICE REGARDING A BAD CHECK CRIME REPORT FILED WITH THIS OFFICE.

Your failure to respond NOW may result in the referral of this crime report for
CRIMINAL PROSECUTION.

IF YOU WISH TO AVOID POTENTIAL ARREST AND PROSECUTION, YOU
NEED TO CALL THIS OFFICE IMMEDIATELY!

You may reach us at **(800) 931-9720.**

Office hours: Monday - Friday 8:00 am - 6:00 pm.

After hours, you may leave a message on how we may contact you regarding
the disposition of your case.

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Sincerely,

**Mrs. Lopez - Extension 3165**
Case Coordinator

Document 119

# EXHIBIT 5

Seq  3468 Tray  0016

**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

George Kennedy
District Attorney

# OFFICIAL NOTICE

IlluululuullluulluulliulIdululululllluulluululululul
ASHORINA MEDINA
502 VERANO CT
SAN JOSE CA 95111-3850

Date of Notice: 03/03/03

Case #: SCC 142724-00

**PLEASE READ THIS NOTICE CAREFULLY. The Santa Clara County District Attorney's Office has received an INCIDENT REPORT** alleging you have violated Penal Code 476(a) of the California State Statute; Passing a Worthless Check. A conviction under this statute is punishable by up to six (8) months in county jail and up to $1,000 in fines. See **PART 2** of the information pages attached to this Notice about the party(s) filing this crime report.

YOU MAY AVOID A COURT APPEARANCE if you agree to enroll in the Santa Clara County District Attorney's Bad Check Restitution Program. California Penal Code Sections 1001.60-1001.65 authorize District Attorneys to make this offer to individuals that comply with the following Program requirements:

1. **Complete the Santa Clara County District Attorney's mandatory one-day educational class on Financial Accountability.**

2. **Pay FULL restitution for all reported checks, PLUS all applicable administrative, returned item, and program fees.**

**Program enrollment is OPTIONAL.** You may wish to consult an attorney to obtain legal advice about your rights in regards to this matter. The District Attorney is extending an opportunity to participate in a pre-trial misdemeanor diversion program as an alternative to appearing in court. The District Attorney does not require you to enter any form of plea in exchange for Program participation, and participation is NOT an admission of guilt.

**The Bad Check Restitution Program is designed to bring a fast resolution to this matter.** Program completion requires payment of the appropriate restitution and fees and attendance in a one-day class, typically 8:00am - 4:30pm on a Saturday. If you successfully comply, you will receive a notice of completion from the District Attorney and **THERE WILL BE NO CRIMINAL, POLICE, OR COURT RECORD OF THIS MATTER!**

**WARNING - Completion of the Bad Check Restitution Program is valid ONLY if you comply with ALL District Attorney requirements. Failure to comply with payment of restitution and fees, or class attendance may subject you to criminal court proceedings.**

**For Program enrollment and payment information, please review PART 1 of the next page. If you believe you received this Notice in error,** **please read PART 3 of the instructions before calling this office.**

Signed,

Bruce D. Raye
**Bruce D. Raye**
**Criminal Investigator**
**Santa Clara County District Attorney's Office**

# EXHIBIT 6

Seq. 3468 Tray 0016
Case 5:00-cv-21151-JF Document 1324 Filed 09/09/13 Page 31 of 36
Case 5:00-cv-21151-JF Document 1324 Filed 09/09/13 Page 31 of 36

Page 3

# PART 2 - INCIDENT REPORT INFORMATION

| VICTIM | CASE # | CHECK # | CHECK AMOUNT | RETURNED ITEM FEE | ADMIN FEE | TOTAL THIS CHECK |
|---|---|---|---|---|---|---|
| HUMANE SOCIETY OF SANTA CLARA | 142724 | 262 | $250.00 | $10.00 | $35.00 | $295.00 |

**PROGRAM FEE:**     $125.00

## TOTAL BALANCE DUE:     $420.00

*NOTE: You may deduct $25.00 from the Program Fee if your FULL PAYMENT is POSTMARKED by: April 3, 2003.*

**Do not attempt to contact the business or party who filed the Report.
THIS CASE MUST NOW BE RESOLVED THROUGH THIS OFFICE!**

# PART 3 - IMPORTANT INFORMATION     Please Read Carefully

●   **IF YOU BELIEVE YOU RECEIVED THIS NOTICE IN ERROR**

STEP 1 -   Review your records CAREFULLY.

STEP 2 -   Call the District Attorney's Bad Check Restitution Program Office at **(800) 931-9720.**

STEP 3 -   Ask for a Case Coordinator, explain the error.

STEP 4 -   The Case Coordinator will ask you to mail in documentation of the error. If you did not write the check(s), you will be asked to go to your bank to obtain and sign an affidavit that you did not write the check(s) in question. In most cases, you will also be required to file a police report if you believe the check(s) were stolen or forged. With cases involving stop payments on checks, or performance disputes, please consult a Case Coordinator for more information.

STEP 5 -   Mail in your case documentation to the:    **Santa Clara County District Attorney
Bad Check Restitution Program
1765 Landess Ave. PMB 150
Milpitas, CA 95035-7019**

**Note: Personal bankruptcies DO NOT void responsibility in a criminal matter. Contact our office for details, or consult an attorney.**

●   **IF YOU BELIEVE YOU WERE NOT PROPERLY NOTIFIED**

The District Attorney's Office accepts ONLY bad check incident reports from those businesses, or parties that have documented ATTEMPTS to notify you according to California State law. In addition to notification from the party you issued the check to, banks routinely send customers notice of returned items. Non-sufficient funds checks also appear on your monthly account statement. CHECK YOUR RECORDS CAREFULLY BEFORE CONTACTING THIS OFFICE.

●   **IF YOU HAVE ALREADY PAID THE MERCHANT, OR FILING PARTY**

<u>Please mail documentation that the merchant or filing party received payment BEFORE the date of this Notice.</u> Allow the Office fourteen (14) days to process your information before calling. Our Office will determine the appropriate course of action and contact you by phone and/or letter.

●   **IF YOU WANT TO APPEAR IN COURT**

If you want to contest this action and appear in court, **you may want to consult an attorney.** Contact this office and inform us of your decision. The District Attorney's Office or Court will send additional information and instructions on how to prepare for a Court appearance.

## FOR ADDITIONAL INFORMATION CALL   (800) 931-9720

# EXHIBIT 6

Seq 3515 Tray 0018

**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# OFFICIAL NOTICE

Date of Notice: 03/24/03

Case #: SCC 142724-47



ASHORINA MEDINA
502 VERANO CT
SAN JOSE CA 95111-3850

Please contact this office prior to 04/07/03 regarding incident reports involving California Penal Code Section 476(a); "Passing a Worthless Check". Prior attempts to resolve this situation have been unsuccessful.

**Failure to contact this office may now result in criminal prosecution proceedings being pursued.** The amount below reflects the total balance to discharge your incident report as of the date of this letter.

### CASE BALANCE: $420.00

If you wish to prevent any further action against you by this office, call **(800) 931-9720** during the hours listed below. After hours, please leave a message on how we may contact you regarding the disposition of your case.

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Office hours: Monday - Friday 8:00 am - 6:00 pm.

Thank you for your immediate response to this letter!

Sincerely,

**Mr. Green - Extension 3193**
Case Coordinator

Document 118

# EXHIBIT 7



◉◉ 6sq 2226 Tray 0041

**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# ATTENTION: IMPORTANT INFORMATION NOTICE

Date of Notice: 05/27/03

Case #: SCC 142724-47

|||||||||||||||||||||||||||||||||||
ASHORINA MEDINA
502 VERANO CT
SAN JOSE CA 95111-3850

Important information is needed to clear the incident report on file with this office.

PLEASE CONTACT THIS OFFICE TO AVOID CRIMINAL PROSECUTION.

You may reach us at **(800) 931-9720.**

Office hours: Monday - Friday 8:00 am - 6:00 pm.

Thank you for your immediate response to this letter!

Sincerely,

**Mr. Green - Extension 3193**
Case Coordinator

Document 121

# EXHIBIT 8



Seq 2944 Tray 0019

**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# CASE INFORMATION

LISA JOHNSTON
736 MILLER AVE
CUPERTINO CA 95014-4640

Date of Notice: 01/02/03

Case #: SCC 116382-77

Per your request, the amount needed, as of the date of this letter, to clear the
bad check incident report(s) that has been filed with this office is:

## CASE BALANCE: $121.16

If you have not completed the Check Writer Education Class that is required, you
will need to do so in order for the District Attorney to discharge this incident
report.

You may reach us at **(800) 931-9720.**

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Thank you for your cooperation.

Sincerely,

**Mr. Kramer - Extension 3191**
Case Coordinator

Document 124

# EXHIBIT 12



Seq  503 Tray  0016

**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

George Kennedy
District Attorney

# NOTICE OF FAILURE TO COMPLY

Date of Notice: 05/28/03

LISA JOHNSTON
736 MILLER AVE
CUPERTINO CA 95014-4640

Case #: SCC 116382-77

OUR RECORDS INDICATE YOU HAVE FAILED TO RESPOND TO A PREVIOUS
NOTICE REGARDING A BAD CHECK CRIME REPORT FILED WITH THIS OFFICE.

Your failure to respond NOW may result in the referral of this crime report for
CRIMINAL PROSECUTION.

IF YOU WISH TO AVOID POTENTIAL ARREST AND PROSECUTION, YOU
NEED TO CALL THIS OFFICE IMMEDIATELY!

You may reach us at  **(800) 931-9720.**

Office hours: Monday - Friday 8:00 am - 6:00 pm

After hours, you may leave a message on how we may contact you regarding
the disposition of your case.

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Sincerely,

**Mr. Kramer - Extension 3191**
Case Coordinator

Document 119

# EXHIBIT 13



**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# ATTENTION: LISA JOHNSTON

Date of Notice: 06/09/03

Case #: SCC 116382-77

IlluldIIIuulllduldulllludulllluullulIululd
LISA JOHNSTON
736 MILLER AVE
CUPERTINO CA 95014-4640

Due to your failure to complete the requirements of the District Attorney's Bad Check Restitution Program as specified in previous notices, we are now initiating formal prosecution proceedings against you. Criminal charges of PC 476(a), "Passing a Worthless Check", are being prepared for review by a deputy prosecutor.

If you desire to halt this action, or if you believe there has been an error, contact this office at **(800) 931-9720 within 24 hours** upon receipt of this notice.

Office hours: Monday - Friday 8:00 am - 6:00 pm.

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Sincerely,

**Mr. Kramer - Extension 3191**
Case Coordinator

Document 146

# EXHIBIT 14