BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Robert M. Bramson (Bar No. 102006)
Jenelle Welling (Bar No. 209480)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA   94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
rbramson@bramsonplutzik.com
jwelling@bramsonplutizk.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA DEL CAMPO, et al., on behalf of themselves and all others similarly situated,,<br><br>Plaintiffs,<br><br>v.<br><br>DON MEALING, et al.,<br><br>Defendants.<br><br>And Consolidated Action No. C 03-2611 | Case No. C 01-21151 SI<br><br>**UNOPPOSED MOTION FOR APPROVAL OF STIPULATED DECERTIFICATION OF CLASS AND ALLOCATION OF SETTLEMENT FUNDS**<br><br>Hearing Date:    May 30, 2014<br>Time:              9:00 a.m.<br>Location:         Courtroom 10 |

UNOPPOSED MOTION FOR APPROVAL OF STIPULATED DECERTIFICATION OF
CLASS
CASE NO.: C 01-21151 SI
70938

1

**MOTION FOR APPROVAL OF STIPULATED DECERTIFICATION OF CLASS**

2

To all parties and their attorneys of record, please take notice that on May 30, 2014, at 9:00

3

a.m. in Courtroom 10 located at 450 Golden Gate Ave., San Francisco, California, plaintiffs Elena

4

del Campo, Ashorina Medina and Lisa Johnston will move for approval of the parties' stipulated

5

decertification of the class in this action and for allocation of settlement funds between

6

reimbursement of expenses to counsel and to the National Consumer Law Center as *cy pres.*  The

7

motion will be based on this notice, the supporting papers submitted herewith, and all other papers

8

and evidence previously submitted in this action.

9

**MEMORANDUM OF POINTS AND AUTHORITIES**

10

After 13 years of litigation – and the intervening bankruptcy of the principal corporate

11

defendant, ACCS – it has become apparent that the remaining defendants do not have sufficient

12

financial wherewithal to satisfy even a modest judgment, much less the multi-million dollar

13

judgment to which the class would be entitled if successful at trial.  Proceeding to trial under these

14

circumstances cannot accomplish anything for the class.  If plaintiffs were to lose at trial, class

15

members would be bound by the adverse judgment.  If plaintiffs were to win at trial, any recovery

16

on the judgment would be insufficient to distribute anything to class members.

17

Sadly, then, plaintiffs and class counsel have concluded that the litigation should be brought

18

to an end in a manner that will not release any claims by the absent class members.  The parties

19

have negotiated a settlement which includes a stipulation that the class be decertified.  Plaintiffs

20

move for approval of that stipulation and an order decertifying the class.

21

The settlement also provides that the remaining settlement funds, after payment to the

22

named plaintiffs in this and another parallel case are paid, will be used to repay counsel for

23

unreimbursed out-of-pocket litigation expenses and/or to the National Consumer Law Center as *cy*

24

*pres*, with the Court directing the allocation between those two recipients.  Plaintiffs request the

25

Court to make that allocation (assuming it approves the stipulated decertification of the class).

26

27

28

UNOPPOSED MOTION FOR APPROVAL OF STIPULATED DECERTIFICATION OF
CLASS
CASE NO.: C 01-21151 SI
70938

1

1

**I.  STATEMENT OF THE CASE**

2

    **A.**    **Procedural Background**

3

        This is a consolidated case between *del Campo v. Kennedy*, Case No. 01-21151 JW and

4

*Medina v. Mealing*, Case No. 03-2611 JW.  In the original suit (filed December 11, 2001),

5

plaintiff del Campo filed a class action against defendant American Corrective Counseling

6

Services, (ACCS), defendants Mealing and Hasney, and other defendants for violations of her

7

Due Process rights pursuant to Section 1983, the California Constitution article I, section 7, the

8

Fair Debt Collection Practices Act (FDCPA) and the California Unfair Competition Law

9

(UCL) ).  (Dkt. No. 2.)  Plaintiff alleged that defendants' "check restitution program" was

10

check collection conducted in the guise of law enforcement.  Defendants denied these

11

allegations.  (Dkt. Nos. 40, 41.)  In May 2002, the Court granted Defendants' motion to

12

dismiss the Section 1983 and California Constitution causes of action with prejudice. (Dkt. No.

13

23.)  At the same time, the Court denied defendants' motion to dismiss the FDCPA and UCL

14

claims, ruling that on the facts alleged, ACCS was a debt collector, covered by both the

15

FDCPA and UCL. (*Id.*)

16

        In October 2002, the case was stayed for three years, pursuant to an order of an Iowa

17

district court, which had preliminarily approved a nationwide settlement.  (Dkt. No. 86.)  In

18

2005, the Iowa court withdrew approval of the settlement and the stay in this action was lifted

19

in September 2005.  (Dkt. No. 145.)  In February 2006, the case was consolidated with *Medina*

20

*v. ACCS*, filed in the Northern District of California in 2003.  (Dkt. No. 161.)

21

        During 2006, defendants filed multiple motions to dismiss (Dkt. Nos. 174, 200, 208, 211),

22

which were granted in part and denied in part.  (Dkt. No. 274.)  The Court again found that no valid

23

Section 1983 or California Constitutional claims (which had been reintroduced into the case by

24

way of the separate *Medina* complaint) could be stated and dismissed District Attorney George

25

Kennedy from the case.  However, the Court denied the motion as to the FDCPA, UCL and

26

misrepresentation counts.  (*Id.*)  The case then entered the discovery phase.

27

        On December 3, 2008, the Court granted Plaintiffs' motion for class certification. (Dkt.

28

No. 705.)  But shortly thereafter, on January 19, 2009, ACCS filed for Chapter 11 Bankruptcy

1    and all claims against ACCS were stayed pursuant to the automatic stay provisions of the

2    Bankruptcy Code.  (Dkt. No. 724.)   The case proceeded against the remaining individual

3    defendants, Don Mealing and Lynn Hasney, and against a corporate entity, Inc. Fundamentals,

4    which Mr. Mealing controlled.  However, the relevant period for potential liability for these

5    defendants was limited to the timeframe prior to their sale of ACCS to third-parties in

6    November 2004.

7          In 2010, the Court ruled on cross-motions for summary judgment, denying defendants'

8    motions *in toto* and granting plaintiffs' motions as to the FDCPA liability of defendants

9    Mealing and Hasney.  (Dkt. 877.)  The remaining issues were set for trial, which commenced

10   on December 10, 2010.  The jury returned verdicts largely favorable to defendants, awarding

11   only $12,000 in total damages to the class.  (Dkt. No. 1107.)  By post-trial motion, however,

12   the Court vacated the verdicts and the prior summary judgment rulings and ordered all issues to

13   be resolved by re-trial.  (Dkt. No. 1177.)

14         The Court thereafter granted defendants motion to disqualify all but one of the class

15   counsel who had represented plaintiffs up to that point due to conflict with another class action.

16   (Dkt. No. 1227.)  Following denial of review of that decision by the Ninth Circuit and Judge

17   Ware's retirement, the case was reassigned to a new judge and with new counsel representing

18   plaintiffs and the class.

19         A new set of cross-motions for summary judgment were filed and denied in 2013.

20   (Dkt. Nos. 1291, 1294 and 1321.)   In January 2014, yet another set of cross-motions for

21   summary judgment were filed along with a motion for decertification filed by defendants.

22   (Dkt. Nos. 1351, 1354 and 1355.)  Those motions remain pending.

23         **B.      Class Certification Proceedings**

24         The 2008 class certification order included certification of both Rule 23(b)(2) and (b)(3)

25   classes, with the (b)(3) class limited to those individuals who had paid any amount to ACCS after

26   receiving one of the allegedly-impermissible communications.  (Dkt. No. 705.)  In early 2010, the

27   Court approved a stipulated proposal by the parties to provide notice of the certification to the Rule

28   23(b)(3) class members only.  (Dkt. No. 819.)  Notice by first class mail was sent to 179,241 class

1    members.  (Dkt. No. 859.)  Because the class period covered the time period 2000 - 2004, the

2    addresses available from ACCS' records were at least six years old at the time of that mailing.

3    Those addresses are now at least ten years old.

4           In 2013, the Court granted plaintiffs' motion to modify the definition of the certified class

5    (Dkt. No. 1312), limiting the class to the Rule 23(b)(3) individuals.  (Dkt. No. 1322.)

6           **C.      The Terms of the Individual Settlement Agreement**

7           Faced with the loss of ACCS as a defendant and the poor financial circumstances of the

8    remaining defendants (*see* Declaration of Don Mealing and Declaration of Lynn Hasney, submitted

9    herewith), plaintiffs seek to have the class decertified.  Assuming the Court approves the stipulated

10   decertification, a negotiated settlement of plaintiffs' individual claims will resolve this case.  The

11   terms of the individual settlement are as follows:

12          1.  Defendants will pay $100,000 in cash, plus an additional amount between $125,000 and

13   $150,000 by a combination of a promissory note with payment due by September 1, 2014 and the

14   net proceeds from the sale of a painting;

15          2.  The total amount received will be distributed by payment of $1,000 each to the three

16   plaintiffs in this action (del Campo, Medina and Johnston) and the two plaintiffs in a Florida case

17   alleging similar wrongdoing (Rosario and Phillips), with the remaining funds paid to plaintiffs'

18   counsel as reimbursement for expenses and/or to the National Consumer Law Center as *cy pres*,

19   with the division to be set by the Court;

20          3.  Upon payment of the total amounts due, this case, the Florida case and a case filed in

21   Utah state court challenging the transfer of certain assets by Mr. Mealing, will all be dismissed

22   with prejudice.

23          The settlement agreement is attached as Exhibit 1 to the Declaration of  Robert M.

24   Bramson, submitted with this motion.

25                          **II.  POINTS AND AUTHORITIES**

26          **A.      Legal Standards**

27          Rule 23(c)(1)(C) provides that a class certification order "may be altered or amended before

28   final judgment".  The Court has broad discretion to alter or vacate an earlier certification order in

UNOPPOSED MOTION FOR APPROVAL OF STIPULATED DECERTIFICATION OF CLASS          4
CASE NO.: C 01-21151 SI
70938

1    light of new circumstances.  *Gen. Tel. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *Wang*

2    *v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013) ("Rule 23 provides district courts

3    with broad authority at various stages in the litigation to revisit class certification determinations

4    and to redefine or decertify classes as appropriate.").

5            Rule 23(e) provides that "claims, issues, or defenses of a certified class may be settled,

6    voluntarily dismissed, or compromised only with the court's approval".  Thus, though the parties

7    here are stipulating to decertification of the class, that stipulation requires approval by the Court to

8    become effective.  However, because neither the decertification of the class nor the individual

9    settlement to follow will bind the class members or release any of their claims, several of the

10   subsections of Rule 23(e) are not applicable:  notice to the class is not mandatory (Rule 23(e)(1)),

11   the Court need not hold a hearing and determine whether the individual settlement is "fair,

12   reasonable and adequate" (Rule 23(e)(2)), and the Court need not consider whether a second opt

13   out opportunity should be allowed (Rule 23(e)(4)).

14           One sub- section of Rule 23(e) is clearly applicable here – subs. (e)(3) requires that parties

15   seeking approval of the dismissal or compromise of class claims identify any agreements made in

16   in connection with the proposal.  In the present context, the only such agreement is the parties'

17   negotiated settlement of the plaintiffs' individual claims.  Because the parties do not seek to bind

18   the class, the Court need not determine whether the settlement terms are "fair, adequate and

19   reasonable"; however, the terms may properly be considered by the Court in deciding whether to

20   approve the stipulated decertification of the class or to require class notice.

21           **B.      Decertification of the Class Should Be Approved**

22           The fundamental question for the Court in considering whether to approve the parties'

23   stipulation to decertify is whether, under all of the circumstances, decertification is fair to the

24   absent class members.

25           If this case proceeds to trial on behalf of the class, all of the defendants' remaining assets

26   will be consumed in funding the defense, leaving nothing left to satisfy a judgment.  Declaration of

27   Don Mealing, ¶8; Declaration of Lynn Hasney, ¶6.  Therefore, proceeding to trial could not benefit

28   the class members even assuming that a successful jury verdict were obtained.  The only other

1   possibility for a classwide resolution would be a settlement between the class and the defendants.

2   But given the defendants' limited resources and the size of the class, it has been impossible to

3   negotiate for a sufficient amount to allow for any distribution to class members.  (Declaration of

4   Robert M. Bramson, ¶¶3-6.)  There are 180,000 class members -- the cost of class notice and the

5   administration of any settlement involving mailing of checks to class members would exceed the

6   total which could have been recovered by settlement.  Such a settlement would not benefit class

7   members, who would be releasing their claims in exchange for no compensation.

8          Under these circumstances, decertification of the class – while far from ideal – is the best

9   available option.

10          The other aspect of fairness to the class which the Court should consider is the individual

11   settlement which has been negotiated (predicated upon the Court's approval of decertification).

12   The terms of that settlement do not reveal any unfairness to the class.

13          Under the settlement, the plaintiffs will not be recovering any amount for their actual

14   damages, even though each of them did pay some amount to ACCS as a result of the challenged

15   activity.  The plaintiffs will each receive $1,000, which is the amount specified for maximum

16   statutory damages recoverable by an individual plaintiff or class representative in an FDCPA case.

17   15 USC §1692k(a)(2).  If this case proceeded as a class action, the class members would be limited

18   in any recovery of statutory damages to their *pro rata* share of 1% of the defendants' current net

19   worth.  Because that net worth is no more than a few hundred thousand dollars, the largest recovery

20   of classwide statutory damages would be only $3,000 or so for the entire class (less than $.02 per

21   class member).

22          As for the remaining settlement amount (between $220,000 and $245,000), it will be

23   divided between reimbursement of litigation expenses advanced by counsel and *cy pres*

24   distribution, with the Court deciding upon the exact division.  Plaintiffs' counsel has advanced

25   *more* than $245,000 in case expenses in this litigation and would have the right to recover those

26   expenses out of any recovery from the class, were any such recovery obtained.  So the recovery of

27   part of those expenses out of an individual settlement, following decertification, is certainly fair to

28

UNOPPOSED MOTION FOR APPROVAL OF STIPULATED DECERTIFICATION OF CLASS           6
CASE NO.: C 01-21151 SI
70938

1   the class.  And despite having incurred millions of dollars in lodestar over the course of this

2   lengthy litigation, plaintiffs' counsel will not be receiving any amount in attorneys' fees.

3      To the extent that the distribution is to the designated *cy pres* recipient, such a distribution

4   is – again – essentially what the class could hope to achieve if the class is *not* decertified, i.e. an

5   indirect benefit by payment to a public interest organization.

6      **C.**  **The Court Should Not Require Class Notice Of The**
      **Decertification**

7

8      Rule 23(e)(1), requiring notice to the class of any dismissal or settlement of class claims

9   which would bind class members, does not apply here.  Neither decertification nor a subsequent

10  individual settlement will bind class members or release any of their claims.

11     Rule 23(d)(1)(B)(i) provides general discretionary authority to order class notice about "any

12  step in the action".  Therefore, the Court could order that the class be provided notice of

13  decertification.  However, under the circumstances of this case, plaintiffs submit that no such

14  additional class notice should be required.

15      &bull;  The class period runs from 1997 (for the California UCL claim) or 2000 (for the

16        FDCPA claim) through 2004.  Thus, the addresses in ACCS' database are between

17        17 and 10 years old.  The class is comprised of individuals who bounced checks and

18        who are a relatively low-income, mobile population.   The lack of current addresses

19        is particularly problematic where, as here, no social security number of other unique

20        identifier for the class members is available.  Given these two facts, the reality is

21        that only a small percentage of any mailed notice to class members would actually

22        be received by them at a current address.  Thus, ordering notice of decertification

23        would largely be a futile effort, even if otherwise warranted.

24      &bull;  The cost of disseminating an additional class notice would be significant.  Four

25        years ago, the notice of class certification given by mailed postcards cost $65,000.

26        At that time, the US Postal Service charge for mailing a postcard was $.28.  Today,

27        it is $.34[1], increasing the cost for the 180,000 class size by at least $10,000 to

28  [1] http://about.usps.com/who-we-are/postal-history/postcard-rates.pdf

1   $75,000 or more.  As noted above, the address database is many years' out-of-date,

2   meaning that much or most of this cost will be simply wasted.

3   • The settlement negotiated between the parties requires defendants to pay a total

4   amount between $225,000 and $250,000..  After the five plaintiffs receive their

5   $1,000 payments, $220,000 - $245,000 will used for reimbursement of counsel for

6   out-of-pocket litigation expenses and payment of a *cy pres* award.  Since plaintiffs'

7   counsel have incurred over $285,000 in total out of pocket expenses to date

8   (Bramson Declaration, ¶¶10-13; Bragg Declaration, ¶¶2-6), counsel will take a

9   minimum $40,000 out-of-pocket loss (not to mention no payment whatsoever for

10   attorneys' fees incurred in the 13 years of litigation) even if the Court decides not

11   allocate any amount to the *cy pres* recipient.  Under these circumstances, it is

12   submitted that any marginal benefit to the class members in an additional class

13   notice should be balanced against the unfairness to counsel in suffering further loss

14   from the $75,000+ expense of that notice.

15

16   **III.  ALLOCATION OF FUNDS BETWEEN EXPENSE REIMBURSEMENT AND CY PRES**

17   The settlement agreement between the parties provides that, after the five $1,000 payments

18   to the named plaintiffs are paid, the remaining amount (which, assuming full payment by

19   defendants of all amounts required under the settlement, will be between $220,000 and $245,000)

20   will be used for reimbursement to plaintiffs' counsel for out-of-pocket expenses and for *cy pres* to

21   the National Consumer Law Center ("NCLC").  The division between those two purposes is to be

22   directed by the Court.

23   Plaintiffs' counsel have incurred over $285,000 in out-of-pocket expenses in prosecuting

24   this litigation.  (Bramson Decl., ¶¶10-13; Bragg Declaration, ¶¶2-6.)  Obviously, plaintiffs' counsel

25   have an interest in receiving reimbursement for as much of those expenses as possible.  At the

26   same time, plaintiffs and their counsel believe that a *cy pres* payment to the NCLC would be

27   appropriate under the circumstances as a means to at least provide **some** indirect benefit to the class

28   members on whose behalf this litigation was prosecuted for over a decade, and for whom the case

1    has sadly failed to achieve any monetary recovery.  Therefore, plaintiffs do not advocate for any

2    particular division of the available funds between these two purposes.

3            The NCLC is an appropriate recipient of any *cy pres* distribution from this case.  The

4    NCLC has been approved as a *cy pres* recipient on over 380 prior occasions.  (Bramson Decl., Exh.

5    3 at 1.)  The organization has been in existence since 1969, assisting and advocating for low

6    income consumers, with particular focus on fair debt collection issues.  (Bramson Decl., Exh. 3.)

7    Indeed, the NCLC's treatise entitled Fair Debt Collection was cited as authority by the United

8    States Supreme Court in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573,

9    591 at fn. 12, 599 at fn. 16, 605 (2010).

10                                    **IV.  CONCLUSION**

11           For the foregoing reasons, plaintiffs request that the Court approve the stipulated

12   decertification of the class in this action and specify the division of available settlement funds

13   between reimbursement of plaintiffs' counsel and the NCLC as *cy pres* recipient.

14

15                                           Respectfully submitted,

16

17

Dated:  May 21, 2014                          BRAMSON, PLUTZIK, MAHLER &
18                                            BIRKHAEUSER, LLP

19

20                                            _____/s/_____
                                              Robert M. Bramson
21                                            Attorneys for Plaintiff

22                                            O. Randolph Bragg, (IL Bar. No. 06221983)
                                              HORWITZ, HORWITZ & ASSOCIATES
23                                            25 East Washington, Suite 900
                                              Chicago, IL 60602
24                                            Telephone: (312) 372-8822

25

26

27

28

UNOPPOSED MOTION FOR APPROVAL OF STIPULATED DECERTIFICATION OF CLASS          9
CASE NO.: C 01-21151 SI
70938